LIPPES MATHIAS LLP
Attn:   John A. Mueller, Esq.
        Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
jmueller@lippes.com
rscherer@lippes.com

· *Counsel to FCP Entertainment Partners, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | CHAPTER 11 (SUBCHAPTER V) |
| HAL LUFTIG COMPANY INC., | CASE NO. 22-11617 (JPM) |
| DEBTOR. | |

**OBJECTION TO CONFIRMATION OF**
**SMALL BUSINESS PLAN OF REORGANIZATION**

COMES NOW FCP Entertainment Partners, LLC ("FCP"), by and through its counsel, LIPPES MATHIAS LLP, and pursuant to Section 1129 of Title 11 of the United States Code ("Bankruptcy Code"), hereby submits this objection ("Objection") to confirmation of the proposed Small Business Plan of Reorganization (along with the filed Plan Supplement, the "Plan") filed by the debtor, Hal Luftig Company, Inc. ("Debtor") [Docket Nos. 55 and 63], and respectfully represents:

**I.     INTRODUCTION**

The issue before the Bankruptcy Court is whether the approval of *extraordinary* relief is appropriate; namely, the nonconsensual release of FCP's direct third-party claims against the Debtor's *non-debtor* principal, Hal Luftig. FCP's direct claims against Mr. Luftig are not speculative but unequivocal and based on the federal court-entered Judgment in which the Debtor

1

and Mr. Luftig are joint and several co-Judgment Debtors.[1] This case is not *Purdue*, *Boy Scouts*, or any of the other high-profile (and predominantly mass tort) cases involving nonconsensual third-party releases where the vast majority of the creditors supported the plan with only a few opponents. This is a narrow dispute between a single creditor and judgment debtor, who is trying to exploit and manipulate the bankruptcy process to avoid liability under the Judgment without having to seek individual bankruptcy protection. Rather than posting a bond and contesting the Judgment via appeal, or filing for personal bankruptcy, Mr. Luftig is trying to obtain immense financial benefits and escape personal liability through the bankruptcy of an entity that he wholly owns and solely controls. The Luftig Release is a clear and obvious abuse of the Bankruptcy Code and every public policy that supports it.

The Plan's unfair and inequitable treatment of FCP is obvious when one compares the net economic impact on FCP versus Mr. Luftig:

- The Plan will result in a **net *loss* of $1,792,776 for FCP**. FCP holds the Judgment against both the Debtor and Mr. Luftig and has an allowed unsecured claim against the Debtor's estate in the amount of $2,862,776. Assuming the Debtor can even meet the projections for Disposable Income, FCP will only receive a total of 37%, or $1,070,000, over the 5-year course of the Plan and have no further recourse on the Judgment because of the proposed Luftig Release.[2]

- Despite the fact he is a multi-million-dollar debtor on the FCP Judgment, **the Plan will reward Mr. Luftig with a net *gain* of $4,462,776**. This amount is based on Mr. Luftig's limited total costs of $650,000 [Luftig Cash Contribution/$500,000 +

---

[1] Any capitalized term not defined herein shall have the meaning ascribed to it in the
[2] *See* Docket No. 63, p. 5.

Luftig Settlement Payment/$50,000 + Back-stop Commitment/$100,000 (*could be $0)] versus benefits totaling $5,112,776 [Base Salary/$1,050,000 + Preference Liability Release/$200,000 + FCP Judgment Release/$2,862,776 + Luftig Secured Note/$1,000,000].

From a practical standpoint, the Luftig Release is unjust, unfair, and improper. From a legal standpoint, the Luftig Release falls woefully short of satisfying the 2nd Circuit standard for approval of nonconsensual releases of direct third-party claims. FCP respectfully requests that the Bankruptcy Court: (i) deny confirmation of the Debtor's Plan; and (ii) dismiss with prejudice the Debtor's pending adversary proceeding against FCP (the "Hal AP"),[3] as Mr. Luftig is not entitled to any further stay protections.

## II.    CONTROLLING LAW

On May 30, 2023, the 2nd Circuit Court of Appeals issued its long-awaited *In re Purdue Pharma, et al.* ruling, a true and accurate copy of which is attached hereto as **Exhibit A** ("Purdue Opinion"). The Purdue Opinion holds that the Bankruptcy Code does, under narrow and extraordinary circumstances, permit nonconsensual releases of third-party direct claims against non-debtors. Thus, the procedural question is no longer at issue in this matter. However, although the Purdue Opinion does grant this Court authority to approve the Luftig Release, the Court should only do so under extraordinary circumstances and only after a showing that the Purdue factors have been met. The second issue addressed in the Purdue Opinion is directly on-point and controlling in this matter – whether the inclusion of such nonconsensual releases "is equitable and appropriate under the specific factual circumstances." Purdue Opinion, p. 13, l. 8-10.

---

[3] Adv. Pro. No. 22-01176 (JPM).

A. *Factor Test*

The Purdue Opinion establishes guidance in that "bankruptcy courts should look to the following seven factors before imposing nonconsensual third-party releases." *Id.* at p. 64, l. 1-2.

(i) "whether there is an identity of interests between the debtors and released third parties, including indemnification relationships";

(ii) "whether claims against the debtor and non-debtor are factually and legally intertwined";

(iii) "whether the scope of the releases is appropriate";

(iv) "whether the releases are essential to the reorganization, in that the debtor needs the claim to be settled in order for the *res* to be allocated, **rather than because the released party is somehow manipulating the process to its own advantage**";

(v) "whether the non-debtor contributed substantial assets to the reorganization";

(vi) "whether the impacted class of creditors 'overwhelmingly' voted in support of the plan with the releases"; and

(vii) "whether the plan provides for the fair payment of enjoined claims."

*Id.* at p. 64-66 (emphasis added).

The Purdue Opinion evaluates each factor based on relevant criteria established in Second Circuit case law, against the strong backdrop of its reinforced view that "third-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring, nor are they a participation trophy or [a] gold star for doing a good job." *Id.* at p. 63 (citing *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 726-27 (Bankr. S.D.N.Y. 2019)); *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) ("A nondebtor release in

4

a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan[.]").

The first two factors are not at issue here given the nature of the FCP Judgment.

The Purdue Opinion evaluates the third and fourth factors together, as the two were interrelated. Purdue Opinion at pp. 70-72. The third factor, whether the scope of the release is appropriate, is judged by whether the "breadth" of the release is "necessary to the Plan." *Id.* at 65 (citing Metromedia, 416 F.3d at 143 (finding that no inquiry was made into whether the breadth of the plan, covering numerous third parties and releasing "any and all claims" of Metromedia was necessary to the plan)). Similarly, the fourth factor examines whether the releases are essential to the reorganization such that there is "little likelihood of a plan's success," without them. *Id.* (citing *In re Master Mortg. Inv. Fund*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)). Courts have evaluated this factor by asking if the possibility of reorganization remains in the absence of the release. *See Master Mortgage*, 168 B.R. at 938.

The Purdue Opinion held that the subject releases were essential to the plan for two reasons centering around avoiding the complete depletion of the bankruptcy estate *while ensuring fair distribution to claimants*. Purdue Opinion at pp. 70-71. First, without the releases, the debtors would have faced numerous indemnity and contribution claims brought by the non-debtors which would have depleted the estate and taken years to resolve. *Id.* at 70. Second, the bankruptcy estate itself was insufficient to fund the priority claim, which without the subject releases, would have completely depleted the debtor's estate, leaving thousands of claims unresolved. *Id.* Thus, the court found the subject releases necessary to the reorganization to prevent a single claimant from disproportionately recovering while prohibiting the fair distribution of the entire estate. *Id.* at 70-71. The court further clarified that because the non-debtor's financial contribution was not the sole

5

reason to implement the subject releases, and that because the justification went beyond a simple *quid pro quo* transaction, the scope of the releases was appropriate, and as such the releases were essential to the reorganization. *Id.* at 72. *See also In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008) ("It is, however, 'precisely this conditioning of financial participation by non-debtors on releases that is subject to the sort of abuse foreseen in *Metromedia*.'") (citing *In re Karta Corp.*, 342 B.R. 45, 55 (S.D.N.Y. 2006)).

The fifth factor, whether the non-debtor is contributing substantial assets to the reorganization, is determined not by comparing the contribution to the non-debtor's net worth but evaluating the impact of the contribution on the distribution of the estate and the debtor's reorganization. Purdue Opinion at p. 72. Said differently, where the estate receives substantial consideration, this factor may weigh in favor of the release. *See In re Purdue Pharma L.P.*, 633 B.R. 53, 106 (Bankr. S.D.N.Y. 2021); *Metromedia*, 416 F.3d at 142; *Master Mortgage*, 168 B.R. at 987 (holding that the non-debtor's contribution was substantial in that it allowed for distributions to other creditors); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002). *See also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) (applying a similar analysis to equitable considerations regarding class settlement) ("When approving a settlement of a class action, a district judge need not ensure that the defendant designate a particular *source* of its assets to satisfy the class claims. Rather, the district court need only examine whether the *amount* recovered by the class was fair in light of the [equitable factors].") (emphasis in original).

As the contribution in *Purdue* allowed for the fair distribution of the estate and allowed for the recovery of additional claimants, its impact on the reorganization was substantial and the Second Circuit affirmed this Court's reasoning in concluding so. Purdue Opinion at p. 73. Of

6

course, the financial contribution in *Purdue*, the largest contribution of its kind in history, is substantial in and of itself. *See* Purdue Opinion at p. 74.

The sixth factor, whether the impacted class of creditors consent to the plan while incorporating third-party release is evaluated based on whether an "overwhelming" amount of creditor vote to confirm the plan. *Id.* at p. 66. The *Purdue* court referenced 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) to determine that 75% of creditors voting in favor of the plan is the *bare minimum* to constitute an "overwhelming" approval. *Id.* The court found that with over 95% of the personal injury class voting to accept the plan, and the main challenge on appeal was that of the Trustee who did not have a financial stake in the litigation, the plan was overwhelmingly approved. *Id.* at 74.

The final factor focuses on the fair payment of enjoined claims such that the non-debtor's financial contribution permits the fair resolution of same. *Id.* at 67. The court looks not to the amount of the final payment, but whether such payment is fair considering the circumstances. *Id.* While a provision imposing a non-consensual third-party release must be implemented against a backdrop of equity that runs through all of the factors, the Purdue Opinion concedes (at 75) that as the valuation of the total claims far exceeded the total amount available between the debtors and non-debtors, "the vast size of the claims against the Debtors and the vast number of claimants creates the need for the plan's intricate settlements." *Id.* at pp. 74-75 (citing *In re Purdue Pharma L.P.*, 633 B.R. at 93.

### B. *Required Factual Findings*

The Purdue Opinion further holds that bankruptcy courts must go beyond a basic application of the above-listed factors:

7

> Although consideration of each factor is required, it is not necessarily sufficient—there may even be cases in which all factors are present, but the inclusion of third-party releases in a plan of reorganization should not be approved. Further, as contemplated by *Dow Corning*, **the bankruptcy court is required to support each of these factors with specific and detailed findings**. For the bankruptcy court to make such findings, extensive discovery into the facts surrounding the claims against the released parties will most often be required.
>
> *Id.* at p. 67, l. 4-11 (emphasis added) (citing *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002)).

### C. *Principles of Equity*

In referencing the broad equitable powers under Section 105 of the Bankruptcy Code, the Purdue Opinion lays out the final component of the legal analysis – a provision imposing nonconsensual releases of third-party direct claims against non-debtors "must be imposed against a backdrop of equity…[and] [g]iven the potential for abuse, **courts should exercise particular care when evaluating these types of releases**." *Id.* at p. 67-68, l. 12-2 (emphasis added) (citations omitted).

### D. *11 U.S.C. § 502(e)(1)(B)*

Section 502(e)(1)(B) of the Bankruptcy Code provides that a court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Courts, including the Bankruptcy Court for the Southern District of New York, interpreting Section 502(e)(1)(B) consider: (1) whether the claim in question is for reimbursement, contribution, or indemnification; (2) whether the claimant is co-liable with the debtor on the claim of a third party; and (3) whether the claim remains contingent at the time that claims are allowed or disallowed. *In re Lyondell Chem. Co.*, 442 B.R. 236, 243 (Bankr.

8

S.D.N.Y. 2011). *See also In re Caribbean Petroleum Corp.*, 2012 WL 1899322, at *3 (Bankr. D. Del. May 24, 2012) (finding that a claim for indemnification is "functionally the same as [a] claim [ ] for reimbursement or contribution").

Co-liability of a debtor and a third party is broadly construed, encompassing "all possibilities for shared liability, whether judicially, contractually or statutorily created." *See In re Caribbean Petroleum Corp.*, 2012 WL 1899322, at *2. A third-party claim for contribution, reimbursement or indemnification is considered contingent if it is "a claim which has not yet accrued and which is dependent upon some future event that may never happen," at the time of allowance or disallowance. *Denke v. PNC Bank, N.A. (In re Denke)*, 524 B.R. 644, 655 (Bankr. E.D. Va. 2015). Indeed, courts construe these types of claims to remain contingent until the co-liable third party has both incurred liability and made payments in satisfaction thereof. *See In re Caribbean Petroleum Corp.*, 2012 WL 1899322, at *3 (citing *In re APCO Liquidating Trust*, 370 B.R. 625, 631 (Bankr. D. Del. 2007); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr. D. Del. 2001); *Aetna Cas. and Sur. Co. v. Georgia Tubing Co.*, 1995 WL 429018, at *2 (S.D.N.Y. July 20, 2005); *In re Global Indus. Tech., Inc.*, 327 B.R. 230, 233 (Bankr. W.D. Pa. 2005)).

### III.    LEGAL ARGUMENT

An application of the Purdue Opinion to this case makes it abundantly clear that the Luftig Release is improper and lacks any foundation in fact or law.

### A. *Application of Factors*

(i) <u>Identity of Interests</u> – The Debtor and Mr. Luftig will presumably rely on the Luftig Indemnification Claim as satisfying this factor. The Debtor's

bylaws are referenced as the basis for indemnification but are not filed with the Proof of Claim or Plan.[4]

(ii) <u>Factually/Legally Intertwined</u> – This is the *only* factor that the Luftig Release satisfies since the FCP Judgment is against both the Debtor and Mr. Luftig.

(iii) <u>Appropriate Scope</u> – While the Luftig Release appears limited in scope, it is not. First, it applies to "all claims" that the FCP Parties may have against Mr. Luftig. While the Judgment is known, the FCP Parties could have other claims against Mr. Luftig that are unknown at this time. Second, it includes a "mutual non-disparagement provision which will bind the Debtor, Mr. Luftig, and the FCP Parties."[5] As such, the Luftig Release will result in not only a nonconsensual release of claims, but also places new obligations on FCP that could create future liability if the Debtor and/or Mr. Luftig decide a violation has occurred.

(iv) <u>Essential to Plan</u> – If the Luftig Release and contributions from Mr. Luftig were removed, the Plan would be easily confirmable. The Plan forecasts the Debtor's Disposable Income at $550,000, which is more than sufficient for a plan of reorganization. Further, the Luftig Release is the exact situation that the Purdue Opinion warns against – "the released party is somehow manipulating the process to its own advantage."[6] Mr. Luftig is clearly the largest benefactor and winner under the Plan, not FCP or any of the Debtor's

---

[4] *See* Claim No. 2.
[5] *See* Docket No. 55, p. 19.
[6] *See* Purdue Opinion at p. 65, l. 9-15.

10

other creditors. Reality is that the Plan is essential <u>to</u> Mr. Luftig, not the other way around, as it frees him of millions in liability for minimal cost and no meaningful scrutiny or oversight.

(v) <u>Substantial Contribution</u> – The Debtor and Mr. Luftig will argue that the Luftig Cash Contribution is substantial in the context of the Plan. However, that argument ignores all the other economic and legal benefits that Mr. Luftig is going to derive from the Plan (substantial salary, relief from personal liability, etc.). Most critically, there is no justification for the Debtor improving Mr. Luftig's position as a creditor by granting the Luftig Secured Note – to the potential detriment of all other creditors.

(vi) <u>Overwhelming Support</u> – The Debtor clearly fails to satisfy this factor as FCP is the only impacted creditor and does not support the Luftig Release. Section 524 of the Bankruptcy Code defines "overwhelmingly" as a minimum of 75% and the Purdue Opinion views that level of approval as the "bare minimum"[7]…0% is not overwhelming.

(vii) <u>Fair Payment</u> – FCP hoping for payments totaling only 37%, coupled with the loss of all rights to enforce the Judgment via the Luftig Release, does not constitute a fair payment.

B. *No Discovery or Factual Support*

As of the date of this Objection, the Debtor and Mr. Luftig have not provided any evidence to support the Luftig Release and satisfy the factors detailed above. Further, there is no discovery

---

[7] *Id.* at p. 66, l. 3-9.

for the Bankruptcy Court to rely upon in making the required factual findings. Some of the most important unresolved questions include, but are not limited to, the following:

(i) Has any objective/third party analyzed the Debtor's bylaws and validity of the Luftig Indemnification Claim?

(ii) What are the terms and legal basis for bootstrapping the non-disparagement provision onto the Luftig Release?

(iii) Has any objective/third party analyzed the preferential transfer claim against Mr. Luftig? Also, claims under Section 502(h) of the Bankruptcy Code are generally waived as part of a preference settlement so why is the Debtor allowing the Luftig Settlement Claim?

(iv) How was Mr. Luftig's salary negotiated and is it commensurate to the industry?

(v) How were the terms of the Luftig Secured Note negotiated – did the Debtor have independent legal counsel?

(vi) Has any objective/third party analyzed the validity of the Luftig Deferred Compensation Claim or Luftig Note Claim?

### C. *Luftig Release Inequitable*

FCP pursued its legal rights and incurred all the associated costs, with an arbitrator eventually finding both the Debtor and Mr. Luftig liable to FCP for a substantial sum. The Plan and Luftig Release now seek to flip that result, with the *non-debtor* Mr. Luftig avoiding millions in liabilities and reaping unwarranted financial benefits. Approval of the Luftig Release will set a terrible precedent and open the door for widespread abuse of the bankruptcy process. What value will a personal guaranty have if the individual can escape liability, not by filing their own

bankruptcy, but simply tagging along the business's bankruptcy? Simply put, no aspect of the Luftig Release is equitable or fair to the lone impaired creditor, FCP.

### D. *Luftig's Unliquidated Claim for Indemnification Should be Disallowed*

Pursuant to the Debtor's by-laws, Luftig filed an unliquidated claim for indemnification, identified as POC No. 2 on the Bankruptcy Court's claims register. As a matter of law, Luftig's claim for indemnification must be disallowed. By its nature, Luftig's unliquidated claim for indemnification is exactly the type of claim contemplated by Section 502(e)(1)(B), given that it is a contingent claim for indemnification stemming from the Debtor and Luftig's co-liability.

Given that the Debtor and Luftig's joint and several liability is judicially created, Luftig, as claimant, is sufficiently co-liable with the Debtor with respect to FCP's claim pursuant to Section 502(e)(1)(B). Luftig's claim is similarly contingent as it is a claim which has not yet accrued and which is dependent upon some future event that may never happen, existing at the time of allowance or disallowance. Further, while Luftig has incurred liability, there have been no payments made in satisfaction of such liability to date.

Accordingly, as Luftig's unliquidated claim for indemnification arises out of his co-liability with the Debtor and is contingent at the time of allowance or disallowance, the Court must disallow the claim. As a result of the statutorily disallowed claim for indemnification, the Court must prohibit Luftig from voting in favor of confirmation of the Plan.

### E. *The Debtor's Adversary Proceeding Should be Dismissed*

On December 1, 2022, the Debtor commenced the Hal AP seeking an extension of the automatic stay under Section 362(a) of the Bankruptcy Code to Mr. Luftig, which the Bankruptcy Court granted via Order entered on January 5, 2023 [Hal AP Docket No. 22]. The Order states that Mr. Luftig's stay protections expire "upon the closing of the case, dismissal of the case, or grant

or denial of [the Debtor's] discharge." *Id*. As set forth herein, the Plan cannot be confirmed with the Luftig Release so Mr. Luftig's protections under the automatic stay are longer appropriate, and the Hal AP should be dismissed with prejudice.

## IV. CONCLUSION

For all the reasons set forth above, FCP respectfully requests that the Bankruptcy Court enter an Order: (i) denying confirmation of the Debtor's Plan; (ii) dismissing with prejudice the Hal AP; and (iii) granting such other relief deemed proper.

Dated: July 5, 2023
      Buffalo, New York

**LIPPES MATHIAS LLP**

      */s/ John A. Mueller*
John A. Mueller, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
jmueller@lippes.com
rscherer@lippes.com

· *Counsel to FCP Entertainment Partners, LLC*

To:    All parties receiving CM/ECF notice

14