UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re

HAL LUFTIG COMPANY, INC.,

                                    Debtor.

------------------------------------------------------------ x

Chapter 11

Case No. 22-11617 (JPM)

## OBJECTION OF THE UNITED STATES TRUSTEE TO BANKRUPTCY COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

# TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………………………… 1

BACKGROUND ……………………………………………………………………………3

    General Background …………………………………………………………………...3

    The Proposed Plan ………………………………………………………………… 4

OBJECTION ………………………………………………………………………… 9

    The Bankruptcy Court erred in finding that this is a Rare or Exceptional Case for purposes

    of Satisfying the Metromedia Standards for Approval of Non-Debtor Third Party Releases

    ………………………………………………………………………………………… 9

    The Purdue Factors …………………………………………………………………… …9

        The Luftig Release is Not Essential to a Reorganization …………………… ….12

        The Luftig Contribution is Not Substantial …………………………..… ….14

        There is No Creditor Support for the Release ……………………………… ….15

        The Payment is Not Fair ……………………………………………………..17

        Weighing the Factors …………………………………………………..……..18

CONCLUSION ………………………………………………………………………… 19

# TABLE OF AUTHORITIES

**Cases**

*In Re Purdue Pharma L.P.* , 69 F.4th 45 (2d Cir. 2023) *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. (23A87), 2023 WL 5116031 (U.S. Aug. 10, 2023) …………... 2, 11-17

*In re SunEdison,* 576 B.R. 453 (S.D.N.Y. Bankr. 2017) …………………………..……………. 9

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136 (2d Cir. 2005) …………………………………………………….……... 9, 11

*In re DBSD N. Am., Inc.*, 419 B.R. 179 (Bankr. S.D.N.Y. 2009) ……………………………… 10

*In re Motors Liquidation Co.,* 477 B.R. 198 (Bankr. S.D.N.Y. 2011) …………………………. 10

*In re Charter Commc'ns*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) ………………………….. 10, 11

*Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160 (5th Cir. 1993) …………………………………………………………………….... 10

*In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) …………………………………………………………………….................. 10, 11

*Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 799 (1996)…………………………………. 15

*Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) …………………………………………………………………………………………….... 16

*Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982) …………………………………………16

*Duke Power Co. v. Carolina Env't Study Grp., Inc.,* 438 U.S. 59 (1978)………………………16

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In re

HAL LUFTIG COMPANY, INC.,

Chapter 11

Case No. 22-11617 (JPM)

Debtor.

------------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO BANKRUPTCY COURT'S
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

TO:    THE HONORABLE JOHN P. MASTANDO III,
       UNITED STATES BANKRUPTCY JUDGE:

  William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection")

to the Bankruptcy Court's Findings of Fact and Conclusions of Law that are contained in the

Bankruptcy Court's Memorandum Opinion and Order on Confirmation of a Small Business

Reorganization Under Chapter 11 (the "Findings"), Bankruptcy Court Docket ECF No. 115.  In

support of the Objection, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

  The United States Trustee objects to the Findings of Fact and Conclusions of Law rendered

by the Bankruptcy Court as the United States Trustee believes the Bankruptcy Court erred in its

application of Second Circuit law to the facts of this case.  Here, there is no dispute that the

Debtor's Proposed Plan of reorganization (the "Proposed Plan") contains a nonconsensual, non-

debtor third-party release.  In return for a cash payment and certain other concessions, a non-

debtor, Hal Luftig – the Debtor's President and sole shareholder – will receive a release of all

1

claims held by FCP (defined below), the Debtor's largest creditor.   This release was nonconsensual as the record is clear that no creditor, including FCP, affirmatively consented to this release.

The nonconsensual non-debtor third-party release in the Proposed Plan exemplifies the abuse that concerned the Second Circuit in *In Re Purdue Pharma L.P.* ("*Purdue*"), 69 F.4th 45 (2d Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. (23A87), 2023 WL 5116031 (U.S. Aug. 10, 2023). In *Purdue,* the Second Circuit held that third-party releases only are permitted in rare and unusual cases.   There is nothing in the record that supports a finding that this is a rare and unusual case.   Furthermore, the Second Circuit cautioned that these releases should only be granted where, among other things, the release is essential to the Proposed Plan, the non-debtor makes a substantial contribution to the reorganization, the affected creditors have overwhelmingly voted in support of the Proposed Plan with the release, and the debtor provides evidence that the Proposed Plan provides for fair payment of the enjoined claims.   Those factors are not present here.

The Debtor's expert acknowledged at the hearing that the release is not essential to confirm a Proposed Plan. The non-debtor is not making a substantial contribution.   The affected creditors *unanimously* objected to the Proposed Plan with the nonconsensual third-party release. And finally, the Debtor has not established that the Proposed Plan provides fair payment of the enjoined claims.   A proper review of the facts herein would lead to the conclusion that the nonconsensual third-party releases herein should have been rejected.   Accordingly, and as discussed below, the Bankruptcy Court's findings of fact and conclusions of law should be rejected by this Court.

## BACKGROUND

<u>General Background</u>

1.      On December 1, 2022, (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of the United States Code. Bankruptcy Docket ECF No. 1.

2.      In its Petition the Debtor checked the box electing to proceed as a small business debtor under Subchapter v of chapter 11. *Id.*

3.      On the Petition Date, Charles Persing was appointed as Subchapter V trustee. Bankruptcy Docket No. ECF No. 9.

4.      The Debtor is a theatrical producing company that develops, acquires, presents, and promotes theatrical plays, musicals, and similar works of theater on stage and in other media. Declaration of Hal Luftig Under Local Rule 1007-1 (the "Declaration") at ₱ 4, Bankruptcy Docket ECF No. 5

5.      Other than the Debtor's President and sole shareholder Hal Luftig ("Luftig"), the Debtor has 2 employees. *Id.* at ₱ 44.

6.      The Debtor commenced this case because of an unfavorable arbitration award against both the Debtor and its President and sole shareholder Hal Luftig ("Luftig") brought by Warren Trepp ("Trepp") through his wholly owned entity FCP Entertainment Partners, LLC ("FCP"), a former business partner and investor in the Debtor. *Id.* at ₱ 7.

7.      More specifically, on April 1, 2022, the arbitrator issued a final award (the "Final Award") finding that: (i) the Debtor and Luftig were jointly and severally liable for breach of contract in the amount of approximately $2.6 million, *id.* at ¶¶ 28–29; (ii) the breach of fiduciary

duty claim against Luftig in his individual capacity was dismissed, *id*. at ¶ 29; and (iii) the

Debtor and Luftig were obligated to pay 55% of the net income from *Kinky Boots* to FCP. *Id*. at

¶ 30. On October 26, 2022, the District Court confirmed the Final Award. *Id*. at ¶ 33. On

November 2, 2022, the District Court entered a Clerk's Final Judgement, the enforcement of

which was automatically stayed until December 2, 2022. *Id*. at ¶¶ 34–38. Luftig filed an appeal

of the confirmation of the Final Award (the "Appeal"), but the Debtor did not. *Id*. at ¶¶ 39–40.

8.      On May 31, 2023, the bankruptcy court approved a Stipulation and Order whereby

the Debtor and FCP agreed the amount of FCP's claim *against the Debtor's estate* is

$2,862.776.00. Bankruptcy Docket No. ECF No. 81. The Stipulation and Order did not address

FCP's claim against Luftig.

<u>The Proposed Plan</u>

9.      On March 1, 2023, the Debtor filed its Small Business Proposed Plan of

Reorganization (the "Proposed Plan"). Bankruptcy Docket ECF No. 55.

10.     The Life of the Proposed Plan is five years. *Id*. at 1.

11.     As set forth in Article II, the Proposed Plan creates six classes of creditors and

treats each as follows:

| Class | Description | Amount | Treatment | Impairment |
|-------|-------------|--------|-----------|------------|
| Class 1 | Priority wage claims under Section 507(a)(4) | $13,650.00 | Paid in full at the Effective Date | Unimpaired |
| Class 2 | Secured Claims | $163,946.92 | Paid in full at the Effective Date | Unimpaired |
| Class 3 | FCP Claim | $2,862,776.00 | Paid a portion of the Luftig Cash Contribution (as defined below) at the Effective Date plus Pro Rata Share of | Impaired |

4

| | | | the Debtor's Disposable Income over the life of the Proposed Plan | |
|---|---|---|---|---|
| Class 4 | General Unsecured Claims | $328,628.92 (estimated) | Pro Rata Share of Disposable Income over the life of the Proposed Plan | Impaired |
| Class 5 | Insider Claims | Unliquidated | No Distribution | Impaired |
| Class 6 | Equity | N/A | No distribution, but Mr. Luftig retains all equity | Impaired |

Proposed Plan at Article II.

12.     The Proposed Plan will be funded by the Debtor's disposable income for a period of 5 years. *Id*. at 8.

13.     In addition, the Proposed Plan will also be funded by a $500,000 cash contribution by Luftig and a $50,000 payment by Luftig to settle possible avoidance actions. *Id*. Luftig will also agree to (i) subordinate certain allowed claims that he holds against the Debtor, (ii) enter into an employment agreement with the Debtor that provides for his non-exclusive employment for a five-year period (the duration of the Proposed Plan), (iii) to the extent required by the Bankruptcy Court, make a back-stop commitment (contribution of up to $100,000 on the effective date), (iv) dismiss his appeal of the decision confirming the arbitration award; and (v) for the life of the Proposed Plan, not charge the Debtor rent for the space utilized in his home in New York City (collectively, the "Luftig Contribution"). *Id*. at 1 and 17.

14.     In connection with the Employment Agreement, Luftig will receive a $210,000 base salary per year, or $1,050,000 over five years. Proposed Plan Supplement at Exhibit C, Proposed Employment Agreement at Section 5(b) (Compensation), Bankruptcy Docket ECF No.

5

63.

15.     In return for the Luftig Contribution, the Proposed Plan provides Luftig a release (the "Luftig Release") of all claims held by FCP and Trepp, except for any claim or right to payment FCP is entitled to under the Proposed Plan.[1] *Id*. at 12 and 18.

16.     On June 3, 2023, the Debtor filed the Declaration of Brian Ryniker ("Ryniker") a founding member of RK Consultants, LLC, the Debtor's financial advisor, in support of the Proposed Plan (the "Ryniker Declaration"). Bankruptcy Docket ECF No. 86. Annexed to the Ryniker Declaration are both the Debtor's updated Liquidation analysis (the "Liquidation Analysis") and updated Disposable Income analysis (the "Disposable Income Analysis). *Id.* at Exhibits B-1 and Exhibit A-1.

17.     Pursuant to the Disposable Income Analysis, under a Proposed Plan that includes the Luftig Release and Luftig Contribution, general unsecured creditors (excluding FCP and Luftig's insider claims) will receive $27,500 over five years, with the first distribution of $7,500 to general unsecured creditors incurring in the first quarter of 2025. Disposable Income Analysis.

18.     The $27,400 distribution to general unsecured creditors under the Proposed Plan is $14,726 more than unsecured creditors would receive upon the Debtor's liquidation. *Compare* Liquidation Analysis with Disposable Income Analysis

---

[1] As more fully described below, *infra* n.2, at the direction of the bankruptcy court the Luftig Release was amended after the confirmation hearing to limit the release to all claims held by the FCP Parties "as to which any conduct, omission or liability of the Debtor or the Estate is the legal cause or is otherwise a legally relevant factor." First Amended Small Business Proposed Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Amended Proposed Plan"). Amended Proposed Plan at 13, Bankruptcy Docket No. 116.

19.    Three creditors voted on the Proposed Plan.  Declaration of Sheryl P. Giugliano

Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtor's

Proposed Plan (the "Vote Declaration), Bankruptcy Docket ECF No. 90.  Specifically, FCP voted

to reject the Proposed Plan.  Vote Declaration at ⁋ 12.  Two general unsecured creditors who are

not subject to the Luftig Release voted to accept the Proposed Plan.  Id.

20.    The two general unsecured creditors that voted for the Proposed Plan – and are not

subject to the Luftig Release - hold general unsecured claims of $37,500 and $75,000, id., and are

an employee and friend of the Debtor and Luftig, respectively.  Findings at 10 n.10.

21.    Both the United States Trustee and FCP filed objections to the Proposed Plan.

Bankruptcy Docket ECF Nos. 87 and 89.

22.    The United States Trustee's objection concentrated on the Luftig Release.  United

States Trustee Proposed Plan Objection at Bankruptcy Docket No. 87.  Specifically, the United

States Trustee asserted that pursuant to Second Circuit law non-consensual third-party releases

such as the Luftig Release are only permitted in rare and unusual cases, which this case is not.  *Id*.

23.    In addition, the United States Trustee also argued that pursuant to *Purdue*, non-

consensual releases are only allowed where a debtor satisfies a seven factor test including, among

other things, demonstrating that the release is essential to the Proposed Plan, the non-debtor makes

a substantial contribution to the reorganization in return for the release, the affected creditors

overwhelmingly vote in support of the Proposed Plan with the release, and the debtor provides

evidence that the Proposed Plan provides for fair payment of the enjoined claims.  *Id*.  The United

States Trustee contended the Proposed Plan did not satisfy the aforementioned factors set forth in

*Purdue*.  *Id*.

7

24.    On November 22, 2023, in its Memorandum and Decision Confirming the Proposed Plan, this Court issued its Findings of Fact and Conclusions of Law. The Bankruptcy Court initially found that this case presented rare and exceptional circumstances and therefore, under Metromedia, the Luftig Release should be approved. Findings at 61.

25.    Additionally, the Bankruptcy Court determined that the Luftig Release (after modifications required by the Findings) and the Luftig Contribution satisfied the Purdue seven factor test. *Id*. at 40 – 54. Specifically, the Court found that (i) the Luftig Release is essential to the Proposed Plan, *id*. at 46 – 50, (ii) the Luftig Contribution is substantial, *id*. at 50-52, (iii) the requirement for overwhelming support for the Proposed Plan by creditors affected by the Luftig Release was of minimal significance, *id*. at 52 – 54, and (iv) the Proposed Plan provides fair payment to FCP. *Id*. at 56.

26.    Finally, when weighing the factors, the Bankruptcy Court concluded equity supports the approval of the Luftig Release. *Id*. at 59.

27.    Because the Luftig Release included direct claims arising under state law against non-debtors, the Bankruptcy Court held that it was not permitted to render a final decision with respect to the Proposed Plan's confirmation. Findings at 37-38. Accordingly, the Bankruptcy Court issued the Findings to the District Court for that Court's *de novo* review and issuance of a final judgment regarding the Proposed Plan. *Id*.

28.    On November 27, 2023, the Debtor filed a First Amended Small Business Proposed Plan of Reorganization Under Chapter 11 of the Bankruptcy Code to incorporate modifications to

the Proposed Plan and the Luftig Release required by the Findings.[2]  Bankruptcy Docket ECF No.

116.

## OBJECTION

### The Bankruptcy Court erred in finding that this is a Rare or Exceptional Case for purposes of Satisfying the Metromedia Standards for Approval of Non-Debtor Third Party Releases

The Bankruptcy Court found that this is an exceptional case warranting the release

contained in the Proposed Plan because FCP "is apparently willing to: (i) incur the costs

concomitant with further litigation; and (ii) derail a Proposed Plan that would purportedly

optimize its own recovery (and the recovery of every other creditor) in order to either drive the

Debtor into Chapter 7 or drive the Debtor's principal into bankruptcy himself."  Findings at 61.

Although the Bankruptcy Court was correct that the imposition of third-party releases is proper

only in rare and unique circumstances, *see In re SunEdison*, 576 B.R. 453, 461-62 (S.D.N.Y.

Bankr. 2017) (*citing Deutsche Bank AG v. Metromedia Fiber Network*, *Inc*. (*In re Metromedia

Fiber Network, Inc*.), 416 F.3d 136, 141 (2d Cir. 2005) ("*Metromedia*")), the Bankruptcy Court

incorrectly applied the facts herein to reach its erroneous conclusion.

In Metromedia, the Second Circuit articulated at least two reasons for its reluctance to

approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C.
> § 524(g), which authorizes releases in asbestos cases when specified conditions are
> satisfied, including the creation of a trust to satisfy future claims, [and] …Second, a
> non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield
> itself from liability to third parties. In form, it is a release; in effect it may operate as
> a bankruptcy discharge without a filing and without the safeguards of the Code. The

---

[2] To ensure the scope of the Luftig Release is proper and satisfies the third *Purdue* factor, the bankruptcy court required, among other things, the Debtor to modify the Proposed Plan and the Luftig Release such that it only applied to claims "as to which any conduct, omission or liability of the Debtor or the Estate is the legal cause or is otherwise a legally relevant factor." Findings at 46 n. 32.

potential for abuse is heightened when releases afford blanket immunity.

*Id*. at 142. *See also In re DBSD N. Am., Inc.,* 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (footnotes omitted); *In re Motors Liquidation Co.*, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed. But where those circumstances haven't been shown, third-party releases can't be found to be appropriate").

As stated, although the Court found that this is an exceptional case, Findings at 61, the facts demonstrate otherwise. The Debtor is a small business debtor, as that term is defined under section 101(51D) of the Bankruptcy Code, that has opted to proceed as a Subchapter V bankruptcy case. Other than Luftig, the Debtor has only two employees. The Debtor commenced this case because FCP obtained an arbitration award based on breach of contract against both the Debtor and Luftig, jointly and severally. But it is not rare or unusual for the sole shareholder of a small company to be obligated jointly and severally with his business. No evidence was submitted to demonstrate otherwise. *See In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009) (citing *Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown")); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *Briscoe*). In short, this is a typical small business debtor Subchapter V case. There

are no extraordinary or unusual characteristics.  Luftig simply seeks to force an involuntary settlement upon his primary creditor.

The mere fact that FCP seeks to maintain its right to pursue Luftig on its state law claim rather than to accept its 36% distribution under the Proposed Plan is similarly not exceptional, unique, or rare.  No evidence was produced to the contrary.  *See Charter Commc'ns*, 419 B.R. at 243; *Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *46.  Although Luftig may not currently have sufficient funds to pay his creditors in full, rather than accept a 36% dividend, an almost a two-thirds reduction of its claim, FCP may prefer to maintain its claim in the event of an unexpected increase in circumstances or future windfall, allowing for a greater recovery.  FCP may also simply prefer to continue its suit in State Court rather than accepts less than a full payout.  It is FCP's state law claim against a non-debtor, a property right, and FCP should not be punished for failing to agree to give it up for less than full payment.  Accordingly, to allow a non-debtor release in this case – as the Bankruptcy Court's findings of fact have concluded here - would make meaningless the Second Circuit's admonition that a release of claims held by non-debtors against other non-debtors is "a dramatic measure to be used cautiously" and "is only proper in rare cases." *Metromedia*, 416 F.3d at 142-43 (2d Cir. 2005) (internal citation omitted).  Rather, it would deem almost any case in which creditors reject releasing their claims against a non-debtor as a rare and unusual case.

**The Purdue Factors**

The Bankruptcy Court also erred in its application of the factors set forth in Purdue to the facts herein.  According to *Purdue,* given the potential for abuse, third-party releases must be imposed against a backdrop of equity, and courts should exercise particular care when evaluating a non-debtor release.  *Purdue* 69 F.4th at 79.  In evaluating releases, the Second Circuit held that

11

courts must consider the following seven factors to determine if a non-consensual non-debtor release is appropriate:

> First, is there an identity of interest between the debtor and the released third parties?
>
> Second, are the claims against the debtor and non-debtor factually and legally intertwined?
>
> Third, is the scope of the release appropriate?
>
> Fourth, is the release essential to the reorganization?
>
> Fifth, has the non-debtor contributed substantial assets to the reorganization?
>
> Sixth, did the impacted creditors overwhelmingly vote in support of the Proposed Plan? and
>
> Seventh, does the Proposed Plan provide fair payment of enjoined claims?

*Id*. at 78 & 79.

The Second Circuit requires "consideration of each factor" but also cautions that "there may even be cases in which all factors are present, but the inclusion of third-party releases in a Proposed Plan of reorganization should not be approved." *Id*. at 79. The Court also required the bankruptcy court to "support each of these factors with specific and detailed findings." *Id*.

In the instant case, the Court concluded that, after certain modifications, the Proposed Plan satisfied all but one of the factors set forth in *Purdue*. In doing so, the Bankruptcy Court improperly gave little weight to the one factor -- overwhelming creditor support -- which the Proposed Plan did not satisfy. Further, contrary to the Bankruptcy Court's findings, not only does the Proposed Plan fail to satisfy the fourth, fifth, sixth and seventh factors of the Purdue test, equities weigh in favor of denying confirmation.

<u>The Luftig Release is Not Essential to a Reorganization</u>

In the Findings, the Court concluded the Luftig Release satisfied the fourth factor of the *Purdue* test, that the Luftig Release is essential to the Debtor's reorganization. The United States

12

Trustee submits this finding is incorrect.

In rendering its decision in *Purdue*, the Second Circuit held that for a release to be approved it must be essential to confirmation, "it must be the case that, without the release ''there is little likelihood of [a Proposed Plan's] success." *Purdue* 69 F.4th at 78 (citation omitted).

In the instant matter, the Court found that without the Luftig Release, FCP's enforcement of the Final Award against Luftig would likely distract Mr. Luftig and almost certainly cause a reduction in the Debtor's projected income, which would serve only to further deplete the *res*. Findings at 49.   Additionally, the Court found that with the Luftig Release the estate would benefit from (i) the Luftig Contribution; (ii) the Back-Stop Commitment; and (iii) Luftig's "agreement to subordinate in right of payment all of the Insider Claims," including his Indemnification Claim against the Debtor, all of which contribute value to the Debtor's estate. *Id.* Accordingly, the Bankruptcy Court concluded that the Luftig Release was essential to the Debtor's reorganization. *Id*.

The conclusion the Court reached, however, was not backed by the evidence on the record. It is not true that without the release "'there is little likelihood of [a Proposed Plan's] success." *Purdue* 69 F.4th at 78 (citation omitted).  Rather, as the Court noted, the Debtor's own financial advisor testified at the confirmation hearing that "a Proposed Plan of reorganization would be possible based solely on the Debtor's Disposable Income, *i.e.,* without Mr. Luftig making any contribution." Findings at 18.  In fact, the Court agreed with the United States Trustee that the Debtor could confirm a Proposed Plan without the Luftig Release and the concomitant Luftig Contribution, but that such a Proposed Plan simply would not optimize creditor recovery. *Id*. at 50 n.35.

13

Admittedly, without the Luftig Contribution there would be less assets available to the estate. However, as the Debtor's financial advisor testified, the Debtor can still confirm a plan. And, as the Debtor's liquidation analysis demonstrates, there are funds available for unsecured creditors, even under a plan that contemplates the liquidation of the Debtor. Accordingly, the Luftig Release is not essential to a successful reorganization.

_The Luftig Contribution is Not Substantial_

At confirmation, the United States Trustee argued that in comparison to the over $1 million in salary Luftig would draw from the Debtor during the life of the Proposed Plan, the Luftig Contribution was not significant. The Court, however, found that the Luftig Contribution was substantial and satisfied the fifth factor of the _Purdue_ test. Findings at 51-52. The Bankruptcy Court found that the amount of salary Luftig would draw from the Debtor should not weigh against the determination that the Luftig Contribution is substantial because the Bankruptcy Court found the salary to be reasonable. _Id_. at 51-52. Instead, the Bankruptcy Court premised its conclusion on its finding that the Luftig Contribution was substantial because it would enable "the greatest recovery for the Debtor's creditors". _Id_. at 52.

This finding was incorrect. As an initial matter, to the extent that parties may consider Luftig's salary reasonable when considered in the abstract, here, class 4 general unsecured creditors will only receive $27,500 over the life of the Proposed Plan (and nothing until 2025). _See_ Disposable Income Analysis.

Furthermore, the Bankruptcy Court's conclusion that the Luftig Contributions was substantial because it enabled a greater recover to creditors cannot and should not be the basis to permit a non-consensual third-party release. First, it is almost uniformly true that in any situation

14

where a non-debtor provides funds to an estate, distributions to creditors will increase. However, it cannot be that every time a non-debtor contributes to a bankruptcy estate that such contribution will be deemed substantial if the substantial contribution factor under *Purdue* is to have any meaning. Second, it should not be overlooked – as was done here – that the creditor that primarily benefited from the increase in recoveries, FCP, nonetheless objected to the Proposed Plan, despite the increased distribution it would receive. Accordingly, the Proposed Plan does not pass the substantial contribution test set forth in *Purdue*.

<u>There is No Creditor Support for the Release</u>

The Bankruptcy Court gave little, if any, to the sixth factor in the *Purdue* test. In *Purdue* the Second Circuit set a benchmark requiring at least 75% of affected creditors to support a plan with the release and considered a 75% acceptance rate as "the bare minimum." *Purdue* 69 F.4[th] at 78-79. Here, the single affected creditor, FCP, objects to the Proposed Plan.

The Court gave little weight to FCP's objection because (i) under Subchapter V, the Bankruptcy Code itself contemplates the confirmation of a plan without the consent of any creditor and (ii) FCP has not identified—and the Court has not found—a tangible financial harm that would result from the approval of a third-party release. Findings at 53-54. Accordingly, the Court concluded that the lack of "overwhelming creditor support" is a consideration carrying minimal significance under the specific facts of this case. *Id*.

The United States Trustee disagrees with the Court's conclusion. First, although a Subchapter V plan may be confirmed without the consent of any creditor, that is a Code provision concerning the requirements of confirmation of a plan enacted by congress to reflect how a Debtor may reorganize its debts with its creditors. *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793,

799 (1996) (recognizing bankruptcy as "a special remedial scheme . . . [in which] legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process"). It has no bearing on how a non-debtor may extinguish its claims with other non-debtors. The bankruptcy system is not designed to require that creditors vote through a debtor's plan to wipe away debts owed by non-debtors. In fact, when setting the 75% threshold to demonstrate creditor approval of a third-party release the Second Circuit referenced 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb), *Purdue* 69 F.4th at 78, a provision dealing directly with the release of third-party claims. The Second Circuit did not reference (or deem relevant to reference) any provision concerning voting on, or the requirements of, confirmation. *Id.*

Second, the Court's conclusion that FCP does not suffer any financial harm and therefore its lack of consent to the release should be ignored is incorrect. Pursuant to the Luftig Release FCP can no longer pursue claims against Luftig. The loss of that right alone is a harm to FCP. "[L]egal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny." *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 158 (2d Cir. 2016) (citing *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169–70 (2d Cir. 2001)). "Statutory or common law entitlement to be fully compensated through a lawsuit for one's injuries should be considered a species of property" protected by the Due Process Clause. *Barrett v. United States*, 689 F.2d 324, 332 (2d Cir. 1982). *See also Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 94 (1978) (recognizing the deprivation of a "state- created right to recover full compensation for tort injuries" is a cognizable property right subject to due process analysis) (Stewart, J., concurring). Similarly, although Luftig may not currently have sufficient funds to pay FCP more than FCP will receive under the Proposed Plan, rather than accept a 36% dividend - almost a two-thirds reduction in its claim - FCP may prefer to maintain

16

its rights in the event of an unexpected increase in circumstances potentially allowing for a greater payout from Luftig in the future.

Finally, the fact that the Second Circuit set a 75% threshold for creditor consent of third-party releases as a "bare minimum" demonstrates that affected creditors must show strong support for a release before a court can approve them. In this case, there is absolutely no support for the release by the affected parties. Accordingly, the Proposed Plan does not pass the sixth *Purdue* factor test.

### The Payment is Not Fair

Finally, the seventh Purdue factor required the Bankruptcy Court to consider whether the contributed sum permits the fair resolution of the enjoined claims. *Purdue*, 69 F.4th at 79. In regard to this factor, the Bankruptcy Court found that "[g]iven that: (i) the evidence indicates that the Proposed Plan would provide all creditors with more than they would be able to collect from either the Debtor or Mr. Luftig in any other situation; and (ii) the Proposed Plan eliminates the cost and uncertainty of further litigating both the Appeal and the Luftig Indemnification Claim, the Court finds that the Proposed Plan provides for fair and equitable payment of the Released Claims." Finding at 56.

This finding is erroneous. First, as noted above, FCP, the one creditor affected by the Luftig Release and the primary beneficiary of the funds contributed by Luftig, objects to the Proposed Plan. FCP is willing to take less to preserve its approximately $2.8 million claim against Luftig. To allow the Debtor and Luftig to force this release on FCP so that other creditors may ultimately receive only $14,726 more than they would receive if the Debtor were to liquidate is not fair and equitable. *Compare* Liquidation Analysis with Disposable Income Analysis.

17

Second, as previously discussed, the Proposed Plan provides significant benefits to Luftig as well as its creditors. Upon the Debtor's confirmation, Luftig will continue to enjoy the benefit of working for the Debtor and receive a base salary of $210,000 per year over the five-year term of the Proposed Plan, or $1,050,000. Proposed Plan Supplement at Exhibit C, Proposed Employment Agreement at Section 5(b) (Compensation), Bankruptcy Docket ECF No. 63. This amount is greater than any single creditor will receive, including FCP, during the same five-year period. *See* Disposable Income Analysis. Once again, a plan under which the sole insider may receive more funds than the single creditor who is forced to release its claim against that insider is not fair and equitable. Accordingly, the Debtor does not pass the seventh *Purdue* factor test.

<u>Weighing the Factors</u>

In reviewing the seven factors of the Purdue test, the Bankruptcy Court determined that equitable considerations weigh in favor of confirming the Proposed Plan and approving the release because creditors will receive more under the Proposed Plan than under a chapter 7 liquidation. Findings at 59. The United States Trustee disagrees with the Court's analysis in weighing the factors. First, the one creditor that is provided the greatest financial benefit under the Proposed Plan, FCP, objects to the Proposed Plan, providing zero support for the Proposed Plan from creditors impacted by the release. Second, general unsecured creditors, who are not subject to the release, will only receive a net increase of $14,726 *over five years* under the Proposed Plan compared to what they would receive from the liquidation of the Debtor. This is not a significant amount, especially when considering the fact that the first payment will not come until 2025. Third, while the Debtor will continue to be a source of income and employment for Luftig, who will receive a base salary of $1,050,000 during the life of the Proposed Plan, FCP will be stripped

18

of its state law litigation claims against Luftig.  Fourth, Luftig will receive more funds from the

Debtor in salary ($1,050,000) during the life of the Proposed Plan than any creditor, including

FCP, will receive under the Proposed Plan.  Fifth, the Debtor's own financial advisor testified the

Debtor could confirm a Proposed Plan without the release.  In short, because Luftig and FCP were

not able to reach a negotiated settlement, Luftig now seeks to force a settlement on FCP over its

objection.  In considering all this, equities weigh in favor of denying confirmation of the Proposed

Plan.

## **CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests that the Court sustain this

objection, deny confirmation of the Proposed Plan, and grant such other relief as is just.

Dated: New York, New York
         December 6, 2023

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE

                              By:      /s/ Paul Schwartzberg
                                        Paul Schwartzberg
                                        Trial Attorney
                                        Office of United States Trustee
                                        Alexander Hamilton Custom House
                                        One Bowling Green, Room 534
                                        New York, NY 10004-1408
                                        Telephone: (212) 510 - 0521