LIPPES MATHIAS LLP
Attn:   John A. Mueller, Esq.
         Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
jmueller@lippes.com
cfisher@lippes.com

*Counsel to FCP Entertainment Partners, LLC*

**UNITED STATS BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:                                                                    CHAPTER 11 (SUBCHAPTER V)

HAL LUFTIG COMPANY INC.                                 CASE NO. 22-11617 (JPM)

          DEBTOR.

---

**OBJECTION OF FCP ENTERTAINMENT PARTNERS, LLC TO THE PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE UNITED STATES
BANKRUPTCY COURT OF THE SOUTHERN DISTRICT OF NEW YORK PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9033**

FCP Entertainment Partners, LLC ("~~FCP~~"), by and through its counsel Lippes Mathias

LLP, hereby submits its objection ("~~Objection~~"), pursuant to Federal Rule of Bankruptcy

Procedure ("~~FRBP~~") 9003(b), to Hon. John P. Mastando III's, for the United States Bankruptcy

Court of the Southern District of New York ("~~Bankruptcy Court~~"), Proposed Findings of Facts and

Conclusions of Law ("~~Finding(s)~~") contained within the November 22, 2023 Memorandum

Opinion and Order on Confirmation of Small Business Plan of Reorganization Under Chapter 11

("~~Opinion~~"). [ECF Doc. No. 115]. In support of this Objection, FCP respectfully states as follows:

## I.    **PRELIMINARY STATEMENT**

On December 9, 2023, FCP was served with the Opinion by the Clerk of the United States Bankruptcy Court for the Southern District of New York. *See* **Exhibit A**. Pursuant to FRBP 9033(b), FCP hereby files its Objection to the Opinion and the Findings contained therein for the following reasons.

FCP objects to the Findings based on misapplications of Second Circuit precedent. Specifically, FCP objects to the following proposed Findings: (i) the Bankruptcy Court's conclusion that "based on the *Purdue III* factors and equitable considerations, unusual circumstances exist that render the Luftig Release important to the success of the Plan, subject to the modifications thereto described herein"; (ii) the Bankruptcy Court's decision to overrule the original objections to the confirmation of the Debtor's Proposed Plan submitted by the Office for the United States Trustee and FCP; and (iii) the Bankruptcy Court's recommendation that the Proposed Plan be confirmed. (Opinion at 64).

The Bankruptcy Court's Findings improperly grant the non-consensual, non-debtor, third-party release ("Luftig Release") provided for in the Debtor's Proposed Plan of Reorganization, as amended ("Proposed Plan"). The Luftig Release releases and effectively discharges (without Hal Luftig individually filing for bankruptcy relief) all claims of FCP against Hal Luftig ("Luftig"), the principal of Hal Luftig Company, Inc. ("Debtor") in return for Luftig's cash contributions to the Proposed Plan. As the record shows, none of the unrelated creditors entitled to vote on the Proposed Plan's confirmation have consented to the Luftig Release. The Bankruptcy Court asserts that the Findings are based on: (i) the factors enumerated by the Second Circuit under *In re Purdue Pharma L.P.*, 69 F.4th 45 (2nd Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. (23A87), 2023 WL 5116031 (U.S. Aug. 10, 2023) ("*Purdue III*"); and (ii) equitable

considerations which it claims make the circumstances at hand to be unusual. (Opinion at 64). However, neither the *Purdue III* factors nor equity support the Luftig Release.

This case is not unique, unusual, or rare. This is a classic example of a Chapter 11, Subchapter V small business bankruptcy, under which the debt limit is $7,500,000.00. The Debtor has a total debt of $3,148,682.62, the bulk of which is owed to FCP pursuant to the FCP Claim (defined below). In contrast, non-consensual, non-debtor, third-party releases are generally approved only in mass tort cases which have extraordinarily high amounts of unliquidated debt in play, further complicated by the competing claims for insurance coverages. By its very nature, this case (and indeed all Subchapter V bankruptcies) is not sufficiently unique or unusual to permit such releases due to the relatively small amounts of money at play. Instead, this is a small business bankruptcy featuring a dispute with a single creditor. But for the FCP Claim (defined below), there would be no bankruptcy filing. Bankruptcy courts are courts of equity – and in all but the most extreme cases, equity would decidedly be against a non-debtor, third-party from utilizing the bankruptcy forum as a shield from their own personal liability. This is a patent abuse of the bankruptcy system and lacks the rare, unique, or extraordinary circumstances that non-consensual, non-debtor, third-party releases are granted in. Stated categorically, non-consensual third-party releases should never be approved in Subchapter V cases, which definitionally are limited to aggregate claims not exceeding $7,500,000.00. These proceedings are far from exceptional or extraordinary. Unlike Chapter 13 cases, where 11 U.S.C. § 1301 specifically provides for a non-filing, co-debtor stay and plan confirmation protections to the non-filing co-debtor, no such provisions were included in the Subchapter V provisions.

Further, the Bankruptcy Court placed an undue amount of weight on the Declaration of Brian Ryniker [ECF Doc. No. 86] ("Ryniker Declaration") as well as Mr. Ryniker's testimony at

the July 11, 2023 hearing [ECF Doc. No. 97] ("Hearing Transcript"), insofar as his statements pertained to non-debtor Luftig in his personal capacity. Mr. Ryniker, a non-attorney, was brought on by the Debtor to perform a financial and liquidation analysis of the Debtor itself. Any opinions that he offered that pertain to Luftig's finances, or hypothetical future chapter 7 bankruptcies, are outside of the scope of what Mr. Ryniker was permitted to discuss.

Finally, on December 4, 2023, the United States Supreme Court heard oral arguments in *Harrington v. Purdue Pharma L.P.*, which could substantially curtail the ability of bankruptcy plans to contain nonconsensual, non-debtor, third-party releases such as the Luftig Release. Accordingly, FCP requests that the District Cout reserves a decision on this matter until the Supreme Court issues a final ruling on this topic.

## II.   BACKGROUND

A full recitation of the background for this matter is contained in the Office of the United States Trustee's ("Trustee") Objection to the Bankruptcy Court's Findings of Fact and Conclusions of Law ("Trustee's Objection") [ECF Doc. No. 119 at 3-9]. The most relevant background in this matter is as follows:

The Debtor is a theatrical producing company that develops, acquires, presents and promotes theatrical plays, musicals, and similar works of theater on stage and in other media. Declaration of Hal Luftig Under Local Rule 1007-1 ("Luftig Declaration") at ¶ 4 [ECF Doc. No. 5]. Luftig is the Debtor's President and sole shareholder. *Id.* at ¶ 1. This bankruptcy case was commenced due to an unfavorable arbitration award, based on breach of contract, in FCP's favor. *Id.* at 6-7, 26. On April 1, 2023, the arbitrator issued the final award against both the Debtor and Luftig jointly and severally, entitling FCP to $2,638,925.78 ("Final Award"). *Id.* at ¶ 26-28, 33.

The Final Award was confirmed with the U.S. District Court for the Southern District of New York ("S.D.N.Y."). *Id.* at ¶ 33.

On December 1, 2022, as a result of S.D.N.Y.'s confirmation of the Final Award, the Debtor filed the instant Chapter 11 (Subchapter V) bankruptcy. [ECF Doc. No. 1]. Although the Final Award of $2,638,925.78 was against Debtor and Luftig, jointly and severally, Luftig did not file for bankruptcy protection. Instead, Luftig sought protection by way of the Debtor commencing an adversary proceeding under index number 22-01176 and moving for a preliminary injunction extending the automatic stay to cover Luftig. [22-01176 ECF Doc. No. 4]. On January 13, 2023, the court granted that motion and stay relief was extended over Luftig himself during the pendency of the instant Chapter 11 bankruptcy. [22-01176 ECF Doc. No. 23].

On March 1, 2023, the Debtor filed the Proposed Plan [ECF Doc. No. 55], with a supplement filed on March 27, 2023. [ECF Doc. No. 63]. As consideration for the Luftig Release, Luftig would (i) fund an additional $500,000 into the Proposed Plan along with a $50,000 payment to settle possible avoidance actions, (ii) subordinate certain allowed claims that he holds against the Debtor; (iii) enter into an employment agreement with the Debtor that provides for his non-exclusive employment for a period of five (5) years (i.e., duration of the Proposed Plan); (iv) to the extent required by the Bankruptcy Court, make a back-stop commitment (contribution of up to $100,000 on the effective date); (v) dismiss his appeal of the decision confirming the arbitration award; and (vi) for the life of the Proposed Plan, not charge the Debtor rent for the space utilized in his home in New York City (collectively, the "Luftig Contribution"). *Id*. at 1, 17. In exchange for the Luftig Contribution, the Proposed Plan provided for the Luftig Release. *Id.* at 12, 18. On May 31, 2023, the Bankruptcy Court entered a Stipulation and Order Allowing Unsecured Claim

of FCP Entertainment Partners, LLC, which permitted FCP's claim in the amount of $2,862,776 ("FCP Claim"). [ECF Doc. No. 81].

Both FCP and the Trustee objected to confirmation of the Proposed Plan due to the existence of the Luftig Release. [ECF Doc. Nos. 87, 89]. On November 22, 2023, the Bankruptcy Court issued its Opinion in this matter, which contained the Findings at issue herein. [ECF Doc. No. 115]. Those Findings would approve the Luftig Release as being important to the success of the Proposed Plan. *Id.* at 64. At the direction of the Bankruptcy Court, the Debtor submitted an amended Proposed Plan consistent with the Opinion, including the Luftig Release. [ECF Doc. No. 116].

Because the Luftig Release includes direct claims that arise under state law against non-debtors, the Bankruptcy Court held that it was unable to issue a final order confirming the Proposed Plan. (Opinion at 37-38). As such, the Findings were issued to the District Court for their *de novo* review to issue a final judgment. *Id.*

### III.   STANDARD OF REIVEW

Pursuant to FRBP § 9033(d), a district judge that is reviewing a bankruptcy court's proposed findings of fact and conclusions of law is to make their review of the record *de novo*. Under this standard, the district judge is not required to give any deference to findings of the bankruptcy court, and "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *See* FRBP § 9033(d).

## IV.    OBJECTION

The Bankruptcy Court's Findings regarding the Luftig Release are based on a misapplication of the factors enumerated in *Purdue III*.

As a preliminary matter, non-consensual, non-debtor, third-party releases have statutory support in only one, extremely narrow set of circumstances – asbestos litigation. *See* 11 U.S.C. § 524(g)(2)(B). Although courts have subsequently permitted these releases outside of that context, they have only done so with "reluctance." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2nd Cir. 2005). Indeed, these types of releases are generally only present in the mass tort context. This not a mass tort case and falls far outside of the realm in which these releases are generally at play. Unlike mass tort claims, the present bankruptcy proceeding is the result of a single creditor's (FCP) over $2 million claim against the Debtor and Luftig.

In addition, the Findings must be rejected because the Bankruptcy Court failed to support its conclusions for each of the *Purdue III* factors with specific and detailed findings. *Purdue III* at 79.

### A.    THE PURDUE III FACTORS DO NOT RENDER THE LUFTIG RELEASE PERMISSIBLE

In *Purdue III*, the Second Circuit held that a court should assess seven (7) factors when deciding if a non-consensual, non-debtor, third-party release, such as the Luftig Release, may be properly included in a confirmed bankruptcy plan. Each factor must be considered and even where all factors are present and assessed, the Second Circuit has held that there are cases in which a release of this sort should still not be approved. *Purdue III* at 79. Moreover, a bankruptcy court must support their conclusions for each of these factors with specific and detailed findings. *Id.* The *Purdue III* factors are as follows:

1) Whether there exists an identity of interest between the debtor and the released third parties.

2) Whether or not the claims against the debtor and non-debtor are factually and legally intertwined.

3) Whether the scope, or "breadth" of the releases is appropriate and necessary to the plan.

4) Whether the release itself is essential to the reorganization in that the debtor requires the claims at issue to be settled for the estate's property to be allocated.

5) Whether the non-debtor receiving the release has contributed substantial assets to the reorganization.

6) Whether the impacted class of creditors have "overwhelmingly" voted in support of the plan, inclusive of the release.

7) Whether the proposed plan, inclusive of the release, provides for the fair payment of the enjoined claims?

*Id.* at 78-79.

As is relevant to this Objection, the Bankruptcy Court held that the fourth, fifth, sixth, and seventh factors favor the inclusion of the Luftig Release in the Proposed Plan. Contrary to that holding, those factors do in fact not warrant its inclusion and instead, support just the opposite.

**(i)    Impacted Creditors Overwhelmingly Rejected the Proposed Plan**

The sixth factor asks if the impacted class of creditors have "overwhelmingly" voted in support of the release. The Second Circuit has held that a starting point for determining overwhelming support requires, at the "bare minimum," 75% approval of the affected creditors. *Id.* The Bankruptcy Court recognized that there was a lack of overwhelming creditor support for the plan as FCP is unequivocally opposed to its confirmation, rendering 0% affected creditor support. (Opinion at 53). However, the Bankruptcy Court opted to give this factor little to no

weight, barely discussing it. The Bankruptcy Court gave this factor little consideration because: (i) a case "under Subchapter V… contemplates the confirmation of a plan without the consent of any creditor," pursuant to 11 U.S.C. § 1191(b)-(c); and (ii) the Bankruptcy Court did not find any "tangible financial harm that would result from the approval of [the Release]" (Opinion at 53-54).

The Bankruptcy Court utilized an erroneous reading of 11 U.S.C. § 1191(b)-(c) for the position that overwhelming creditor support of a release is not necessary in a Subchapter V plan because those statutory provisions permit the confirmation of a plan even in the absence of creditor support. This conflates confirmation of a plan with the approval of the releases. While a bankruptcy court may confirm a plan even where all creditors object, that does not mean that a **release** may be approved in the face of overwhelming creditor objection. Indeed, the *Purdue III* court noted that this factor looks for creditors that have "voted in support of the plan *with the releases*." *Id.* at 78 (emphasis added). While confirmation of a plan under normal circumstances can be done without creditor approval, the court should still give this factor the weight that it deserves when assessing if a non-consensual third-party release may be a part of that confirmed plan. The question of creditor approval of a release remains an important consideration for the court, separate from their ability to confirm plans over creditor objection. This factor was not afforded the weight that it rightfully deserves in this matter and accordingly, the Bankruptcy Court misapplied it.

Further, the proposition that no financial harm will come to FCP by virtue of the Luftig Release is simply untrue. The Bankruptcy Court stated that they had found no evidence of such financial harm. (Opinion at 54). However, FCP has argued that the granting of the Luftig Release will result in a net loss of $1,792,776 for FCP. [ECF Doc. No. 89 at 2]. The FCP Claim is set at $2,862,776. Under the terms of the Luftig Release, FCP will receive only $1,070,000. This represents a total of 37% over the five-year life of the Proposed Plan and FCP will have no further

recourse to recover on the Final Award. Financial harm is evident and was the impetus for FCP objecting to the Luftig Release in the first place.

FCP is the sole creditor impacted by the Luftig Release and does not consent to its inclusion in the Proposed Plan. There is no support at all for the Luftig Release the affected party. This 0% is completely insufficient for the Luftig Release's inclusion in the Proposed Plan under any metric, let alone by the "bare minimum" 75% approval rate required by *Purdue III*. Proper application of this factor calls for rejection of the Luftig Release as there is absolutely no support from any impacted creditors.

**(ii)    The Proposed Plan Does Not Provide Fair Payment of the Enjoined Claims**

The seventh factor asks whether the release provides for the fair payment of the enjoined claims. The Second Circuit noted that other courts have found these non-consensual releases "permissible when the plan… provided for the full payment of the enjoined claims." *Purdue III*, at 79, *quoting In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2nd Cir. 2005); *see also In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (requiring a plan with a non-consensual third party release to contain a mechanism to pay all or substantially all of the enjoined claims). The *Purdue III* court noted that full payment of a claim may not always be possible. In such a case "the determinative factor is… whether the contributed sum permits the fair resolution of the enjoined claims." *Purdue III*, at 79. However, payment of all or substantially all of enjoined claims is still an important consideration for a court. The *Purdue III* court decided that "as it [was] not possible to require the full payment of all claims, [they] prioritize[d] fair allocation over the full payment over any one claim." *Id.* at 82. Full payment of a claim was not required only because of the sheer number of claims at play in that case, making it literally impossible to provide for full payment of them all. The Bankruptcy Court found that this seventh factor went in favor of

inclusion of the Luftig Release and that the proposed distribution to FCP was indeed fair. However, the Proposed Plan does not provide for fair payment of the claims that FCP may be able to assert against Luftig.

Here, the Bankruptcy Court found that the Luftig Release provided a fair and equitable payment because "(i) the evidence indicates that the Plan would provide all creditors with more than they would be able to collect from either the Debtor or Mr. Luftig in any other situation; and (ii) the Plan eliminates the cost and uncertainty of further litigating both the Appeal and the Luftig Indemnification Claim." (Opinion at 56). These Findings are fundamentally flawed.

As an initial matter, the Luftig Release only provides for payment of 37% of the FCP Claim. On its face, the Luftig Release is unfair as FCP will lose the right to pursue the remainder of the Final Award against a non-debtor. Further, the evidence here does not support a conclusion that the Plan would provide FCP with more than it could otherwise recover from Luftig. The only evidence that the Bankruptcy Court apparently considered in connection to their first point is the Debtor's self-serving Confirmation Declaration. (Opinion at 55-56). This runs contrary to the financial harm that FCP has clearly set forth in their Objection to Confirmation of the Plan and herein. [ECF Doc. No. 89]. By the Luftig Release's very nature, it is causing financial harm upon FCP by virtue of providing them only 37% of what they are entitled to receive. The existence of the Luftig Release clearly causes financial harm.

Further, the Bankruptcy Court believed the payment to be fair and equitable because payment to FCP would be coming out of Luftig's assets, which would be otherwise unavailable to FCP should Luftig himself file for bankruptcy. (Opinion at 55). The very premise is flawed as it presupposes (i) that Luftig will indeed file for bankruptcy if the Luftig Release is not approved, and (ii) that FCP's only recourse to receive full payment is through a bankruptcy proceeding. There

are more ways for FCP to receive payment on the full amount other than putting a claim in through Luftig's hypothetical future bankruptcy. Even if Luftig did file for bankruptcy, FCP would welcome this at it would grant them the ability to examine Luftig's finances much more closely than they are able to currently.

Further, some of the very money that Luftig will be contributing into the Proposed Plan was taken directly out of the Debtor prior to the instant bankruptcy being filed. At least $250,000 was drawn from the Debtor in the 90 days before the Debtor filed for bankruptcy. (Hearing Transcript at 126:23-127:1). Of that $250,000, Luftig has only agreed to return $50,000 as a settlement. Luftig is simply returning money to the Debtor that it may be entitled to anyway pursuant to a preference action.

Finally, there is comparatively low cost and uncertainty involved in litigating FCP's receipt of the funds that they are entitled to. The Final Award was confirmed, and a judgment was awarded to FCP. As FCP has unequivocally been granted the Final Award through arbitration, and the District Court has confirmed the same, there is little uncertainty that the Second Circuit would rule any differently should an appeal ever be taken. Additionally, FCP is willing to take less money through the Proposed Plan to preserve the ability to pursue their claim to whatever remains to be paid of the Final Award.

The Luftig Release forecloses FCP from any right to pursue the funds that it is rightfully entitled to and only grants them one third of their what they would otherwise be able to receive. Accordingly, confirmation of the Proposed Plan is neither fair nor is it equitable and this factor is in favor of rejecting the Luftig Release.

(iii)    **The Luftig Release is Not Essential to the Reorganization**

The fourth *Purdue III* factor requires the court to consider if the release is essential to the reorganization efforts. The primary question that the court is to ask is if "the <u>*debtor*</u> needs the claims to be settled in order for the *res* to be allocated." *Id.* at 78 (emphasis added). In other words, "it must be the case that, without the releases, there is little likelihood of a plan's success." *Id.*, internal quotation marks removed. The Proposed Plan is not contingent on the Luftig Release and for that reason, this factor clearly is in favor of its exclusion.

This factor asks if the debtor needs the claims at issue to be settled, not the third party receiving the release. Any issue that the Bankruptcy Court raises related to Luftig, in his individual capacity, in simply inapplicable to this factor. The Bankruptcy Court found that the Luftig Release was essential because without it, there is a risk that FCP's enforcement of the Final Award against Luftig would endanger the Debtor's ability to generate revenue as Luftig "will be unable to focus on the Debtor's business." (Opinion at 48). However, both the Debtor and the Bankruptcy Court acknowledged that a plan can be confirmed without the Luftig Release and the contributions of money that Luftig will make into the Proposed Plan in exchange for FCP's claims being released. (Opinion at 47). Indeed, the Debtor's own financial advisor testified that the Debtor's reorganization would be possible based solely on the Debtor's disposable income, requiring no contribution from Luftig. (Hearing Transcript at 90:19 – 91:06). If a plan can be confirmed without the existence of a release, then it necessarily follows that the release is not essential. The Bankruptcy Court again relied on a hypothetical by placing far too much weight on Luftig's statements that he would be unable to focus on the Debtor's business if it is not included. As the inquiry into this factor asks if the debtor is able to allocate sufficient property to the estate, the

Bankruptcy Court's consideration of what Luftig would or would not be able to do absent the release is improperly raised.

Further, the issues that supported this factor in *Purdue III* are not found here. In *Purdue III* the Second Circuit found the release to be essential for two reasons. First, they found that without the release, the debtor would be required to litigate an enormous number of indemnity and contribution claims, depleting the *res* of the bankruptcy estate. *Purdue III* at 80. Second, they found that due to the *res* of the bankruptcy estate amounting to $1.8 billion, and the United States government having $2 billion in administrative claims which would be paid out before any victims of the opioid crisis would receive funds, there was not enough money to provide relief to those victims absent a release. *Id.* Neither of these considerations are at play here.

First, the Debtor in the instant case is not going to be subject to anywhere near the number of claims that the *Purdue III* debtor would have been subjected to. Here, there is a single impacted creditor, FCP, who can pursue both the Debtor and Luftig jointly and severally. FCP has one claim, and that one claim can be asserted against more than just the Debtor. Thus, the facts here are the exact opposite of those that existed in *Purdue III*. Second, there is no large grouping of administrative claims being paid out in this instant case which would render all other creditors unable to collect. The *res* will not be depleted in the same way that it would have been in *Purdue III*, and all creditors will receive funds even if the Luftig Release is not included.

Because the Debtor can fully fund a plan without the Luftig Release, the Luftig Release cannot be deemed "essential" to the Proposed Plan. Additionally, the facts of this case are in stark contrast to the facts of *Purdue III*, as the controlling case. Accordingly, this factor goes in favor of excluding the Luftig Release from the Proposed Plan.

### (iv)    Luftig Has Not Contributed Substantial Assets to the Reorganization

The fifth *Purdue III* factor assesses the substantial nature of a released party's contribution, and primarily looks at the "impact of the financial contribution." *Purdue III* at 81. The Bankruptcy Court found that that Luftig Contribution was substantial because it (i) would permit Luftig to continue his work, which would allow the Debtor to make payments to creditors; (ii) does not provide Luftig with an overall net gain; and (iii) enables the greatest recovery for the Debtor's creditors. (Opinion at 51-52). However, these findings are erroneous.

Here, the Luftig Contribution contemplates Luftig funding $500,000 into the Proposed Plan. However, Luftig will stand to gain $1,050,000 over the life of the Proposed Plan in the form of a salary drawn from the Debtor in the amount of $210,000 per year. (Proposed Plan Supplement at Exhibit C, Proposed Employment Agreement at Section 5(b) (Compensation)), [ECF Doc. No. 63].  That he will receiving over double from the Proposed Plan than he will be putting into it renders his contribution wholly insubstantial. Facing this reality, the Bankruptcy Court found that Luftig was not receiving a net gain because his claims against the Debtor are "subordinated in right of payment to the Debtor's obligations to make payments and distributions under the Plan" to all other creditors, including FCP. (Opinion at 52; Proposed Plan at 8).

However, this ignores the fact that the Debtor is able to fully fund the Proposed Plan on its own, and that Luftig will continue to draw a salary through the Debtor during the life of the plan. Luftig does not need to continue to work to fund the Proposed Plan, as the Debtor is able to fund it without any separate financial contribution. Further, Luftig is receiving a net gain over all other creditors in the amount of $4,462,776. Such amount represents Luftig's costs associated with the Luftig Release of $650,000 (comprised of the Luftig Cash Contribution/$500,000 + Luftig Settlement Payment/$50,000 + Back-stop Commitment/$100,000 (*could be $0)) against the

benefits that he will receive pursuant to the Proposed Plan totaling $5,112,776 (comprised of Base Salary/$1,050,000 + Preference Liability Release/$200,000 + FCP Judgment Release/$2,862,776 + Luftig Secured Note/$1,000,000). For this reason, the first and second basis for the Bankruptcy Court to find in favor of the Luftig Release's inclusion are without merit.

Additionally, the Bankruptcy Court places an undue amount of weight on the opinions of the Debtor's financial advisor, Brian Ryniker, as those opinions relate to Luftig when considering this factor. The Bankruptcy Court cites the Ryniker Declaration for the proposition that FCP would recover more under the Luftig Release that they would in the event of Luftig filing for chapter 7 relief. (Opinion at 52). However, the scope of what Mr. Ryniker was permitted to discuss did not include Luftig. Indeed, at the hearing, Mr. Ryniker was explicitly asked "[D]id you conduct a liquidation analysis of [Luftig] personally?" (Hearing Transcript at 85:14-15). Mr. Ryniker responded, "I did not." (Hearing Transcript at 85:16). It is completely improper for the Bankruptcy Court to rely on the assumptions set forth in the Ryniker Declaration absent a detailed analysis of what a liquidation of Luftig's assets would look like.

Finally, the Luftig Contribution does not enable FCP to receive the greatest amount of recovery. The Bankruptcy Court limits their inquiry into this point to two hypothetical events by stating that the Luftig Contribution will give FCP a greater recovery than they would receive if the Debtor filed for chapter 7 relief, or Luftig filing for bankruptcy in his individual capacity. (Opinion at 52). However, this presupposes that those events will indeed occur if the Luftig Release is not included. Further, because the Debtor can fund the Proposed Plan in the same amount as the Luftig Contribution, Luftig's contribution cannot possibly be deemed "substantial" as it does not exceed what the Debtor itself could provide. No matter who funds that amount of money into the Proposed Plan, the creditors, FCP included, will recover the same amount. Said another way, the Luftig

Contribution is not enabling any recovery for FCP outside of what the Debtor could enable itself. By its very nature, the Luftig Contribution cannot be substantial as it can feasibly be matched by the Debtor. This contrasts with the facts in *Purdue III* where the debtor was completely unable to fully fund the plan without the inclusion of the release. Accordingly, this *Purdue III* factor goes in favor of excluding the Luftig Release from the Proposed Plan.

The fourth, fifth, sixth, and seventh *Purdue III* factors weigh in favor of the Luftig Release being excluded from the Proposed Plan. Proper application of these factors demonstrates that they would keep the Luftig Release from being a part of a confirmable plan under these circumstances. As Bankruptcy Court misapplied these *Purdue III* factors in their Opinion, FCP respectfully requests that this Court not follow the Findings and instead, finds that the Luftig Release is not able to be a confirmable piece of the Proposed Plan.

## B.   EQUITY DOES NOT SUPPORT THE INCLUSION OF THE LUFTIG RELEASE

The Bankruptcy Court also found that equity favors inclusion of the Luftig Release in the Proposed Plan as this case is unique and exceptional. (Opinion at 61). According to the Bankruptcy Court, equity supports the Luftig Release because (i) FCP will receive more under the Proposed Plan than they would in a chapter 7 proceeding or through Luftig's hypothetical personal bankruptcy, and (ii) that FCP had presented no evidence to the contrary. (Opinion at 59). Further, the Bankruptcy Court found that unique and exceptional circumstances existed because FCP "is apparently willing to: (i) incur the costs concomitant with further litigation; and (ii) derail a Proposed Plan that would purportedly optimize its own recovery (and the recovery of every other creditor) in order to either drive the Debtor into Chapter 7 or drive the Debtor's principal into bankruptcy himself." (Opinion at 61).

This case is not unique or exceptional. The *Purdue III* court noted that while prior cases such as *Metromedia* had permitted non-consensual, non-debtor, third-party releases only in "unique instances," those instances were not actually set forth. *Id.* at 66. These releases typically only arise in mass tort cases and indeed, the only statutory support for these releases is in the asbestos litigation context. *See* 11 U.S.C. § 524(g)(2)(B); *see also Purdue III* (where a release was granted in the face of mass tort litigation surrounding the manufacture and promotion of prescription opioid pain relievers); *In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023), and *aff'd*, 650 B.R. 87 (D. Del. 2023) (approving a release as part of a confirmed plan where the debtor was faced with 82,209 claimants filing proofs of claim asserting sexual abuse); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002) (where manufacturer of defective breast implants was sued by tens of thousands of claimants and even then, the court held that there were not sufficiently unique facts at play to warrant the granting of a release). *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022) (approving a release where debtor and non-debtor affiliates operated a global specialty biopharmaceutical company that was held liable in thousands of lawsuits in connection to the production and sale of certain opioid medications). Unlike these cases, the instant matter is not a mass tort case. Neither is it a case with creditors too numerous to feasibly deal with their claims outside of the bankruptcy context.

Other than the Luftig Release, the Proposed Plan is a standard plan arising under Chapter 11, Subchapter V. The Debtor has three employees, counting Luftig. There is one major creditor, FCP. The Proposed Plan sets forth a relatively small amount of liabilities totaling $3,148,682.52. (Proposed Plan at 4). This matter is far outside of the context that non-consensual, non-debtor, third-party releases are authorized where potentially billions of dollars are at play. The only thing

that is "unique or exceptional" about the Proposed Plan is that it includes an impermissible release of FCP's claims against Luftig, a non-debtor. Accordingly, equity does not support the granting of the Luftig Release, and this finding of the Bankruptcy Court should not be followed.

The very evidence that the Bankruptcy Court points to for the proposition that FCP will stand to receive the greatest gain possible through the Luftig Release predicates itself on a *hypothetical* chapter 7 liquidation of the Debtor. (Opinion at 59). To find against FCP based on events that have not happened and may not ever happen would go against equity. To the extent that either the Debtor or Luftig meant to imply that if the Luftig Release is not granted, then the Debtor will file for a chapter 7 liquidation and/or Luftig will personally file for bankruptcy, those implications would appear to use the bankruptcy forum as both a sword and a shield to the benefit of a non-debtor – something that equity would decidedly <u>not</u> support. No evidence to the contrary was necessary because a chapter 7 liquidation of the Debtor, or some far off, future bankruptcy by Luftig were simply not before the Bankruptcy Court and are immaterial to the issues in the instant case. Additionally, stripping FCP of the right to maintain their claim on the Final Award should the Debtor and/or Luftig receive a future windfall is not a fair application of the principles of equity. The Bankruptcy Court would apparently rather punish FCP for refusing to give up their right to seek full payment on its claims. Equity simply does not support the Luftig Release.

Finally, to grant the Luftig Release under these circumstances would set a worrying precedent which would have severe ramifications. If the Luftig Release is allowed to be included in the confirmed plan, this case provides a playbook and precedent for other sole shareholders that are subject to liability to simply file for bankruptcy under their respective companies and extending stay relief to themselves to receive protection from judgments. Courts in the Second Circuit have held that releases such as this are only to be used in rare cases. *Purdue III* at 77; *Metromedia* at

141. However, approval of the Luftig Release begins the slippery slope of broadening the situations in which releases are permitted. This broadening opens up this important, though rarely used tool, to even greater abuse by future sole shareholders seeking protection in bad faith.

**C.    THE UNITED STATES SUPREME COURT'S PURDUE DECISIONS IS FORTHCOMING**

On December 4, 2023, the United States Supreme Court heard oral arguments in *Harrington v. Purdue Pharma L.P.* Even in the event that the District Court does agree with the Bankruptcy Court's proposed findings of fact and conclusions of law, there is a likelihood that the ability of courts to permit the inclusion of non-consensual, non-debtor, third-party releases will be substantially curtailed, if not completely eliminated with the upcoming decision of the Supreme Court. At minimum, it is expected that the decision will further solidify the law on this concept and will set forth more exacting guidelines to govern the permissibility of these releases. For this reason, FCP requests that the District Court reserve judgment until further guidance from the Supreme Court is passed down.

## V.    CONCLUSION

In light of the foregoing, FCP respectfully submits that the Court should disregard the Proposed Findings of Fact and/or Conclusions of Law of Judge John P. Mastando III's November 22, 2023 Memorandum Opinion and Order on Confirmation of Small Business Plan of Reorganization Under Chapter 11 as they misapply controlling law, and as equity does not support them, and find in favor of FCP in rejecting the inclusion the Luftig Release in the Debtor's Proposed Plan.

Dated: December 26, 2023
      Buffalo, New York

                    **LIPPES MATHIAS LLP**

                    */s/John A. Mueller, Esq.*
                    John A. Mueller, Esq.
                    Richard M. Scherer, Jr., Esq.
                    50 Fountain Plaza, Suite 1700
                    Buffalo, New York 14202-2216
                    (716) 853-5100
                    jmueller@lippes.com
                    rescherer@lippes.com

                    *Counsel to FCP Entertainment Partners, LLC*