Sheryl P. Giugliano
Michael S. Amato
Ruskin Moscou Faltischek, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-0190
(516) 663-6600
sgiugliano@rmfpc.com
mamato@rmfpc.com

*Attorneys for Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

HAL LUFTIG COMPANY, INC.,

                             Debtor.
-----------------------------------------------------------------x

Chapter 11 (Subchapter V)

Case No. 22-11617 (JPM)

## DEBTOR'S RESPONSE TO OBJECTIONS TO BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (ECF DOC. NO. 115) FILED BY THE UNITED STATES TRUSTEE (ECF DOC. NOS. 119,122) AND FCP ENTERTAINMENT PARTNERS, LLC (133, 134)

Hal Luftig Company, Inc. (the "Debtor"), the above-captioned debtor and debtor in possession, respectfully submits this response (the "Response") to the *Objection of the United States Trustee to Bankruptcy Court's Findings of Fact and Conclusions of Law* (ECF Doc. Nos. 119, 122) (the "UST Objection") and the *Objection of FCP Entertainment Partners, LLC to the Proposed Findings of Fact and Conclusions of Law of the United States Bankruptcy Court of the Southern District of New York Pursuant to Federal Rule of Bankruptcy Procedure 9033* (ECF Doc. Nos. 133, 134) (the "FCP Objection" and, together with the UST Objection, the "Objections") to this Court's *Memorandum Opinion and Order on Confirmation of Small Business Plan of*

1

*Reorganization Under Chapter 11* (ECF Doc. No. 115) (the "Proposed Findings and Conclusions")[1].  In support of the Response, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

The Proposed Findings and Conclusions correctly recognized that: (a) FCP is a judgment creditor that experienced a baseless windfall in an unfair arbitration proceeding at the expense of Mr. Luftig (*i.e.,* he was found personally liable for breach of a contract to which he was not a party and did not personally guarantee); (b) FCP is not economically motivated, has consistently refused to engage in meaningful discovery or offer contrary evidence or testimony and will stop at nothing to personally and professionally ruin Mr. Luftig's lifelong successful career on Broadway; (c) Mr. Luftig is offering FCP through the Luftig Contribution more than FCP would receive in a chapter 7 bankruptcy proceeding of the Debtor or Mr. Luftig personally, despite the fact that he could file chapter 7 tomorrow and leave FCP to recover nothing in an effort to salvage his professional reputation; and (d) although the Debtor's Subchapter V reorganization case does not involve billions of dollars or mass tort claims, it is nonetheless  unique and exceptional because of the foregoing, and, therefore, the Luftig Release should be approved.

**BACKGROUND**

1.      On November 22, 2023, the Court entered the Proposed Findings and Conclusions.

2.      On November 27, 2023, pursuant to the Proposed Findings and Conclusions, the Debtor filed the *First Amended Chapter 11 Small Business Subchapter V Plan of Reorganization* (ECF Doc. No. 116) (the "First Amended Plan") amending the Debtor's *Chapter 11 Small Business Subchapter V Plan of Reorganization* (ECF Doc. No. 55) (the "Plan") timely filed March 1, 2023.  In addition to updating the background and procedural posture of the Debtor's case, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Proposed Findings and Conclusions.

2

First Amended Plan: (a) narrowed the scope of the Luftig Release; (2) removed the non-disparagement provision from the Luftig Release; and (3) clarified that if the First Amended Plan is confirmed with the Luftig Release then the "Luftig Cash Contribution" will be paid entirely to FCP Entertainment Partners LLC ("FCP") upon the "Effective Date" or as soon as reasonably practicable thereafter.

3.     On December 6, 2023, the Office of the U.S. Trustee (the "UST") filed the UST Objection for the first time.

4.     On December 7, 2023, the Court filed the *Notice of Proposed Findings of Fact and Conclusions Regarding Memorandum Opinion and Order signed on 11/22/2203 on Confirmation of Small Business Plan of Reorganization Under Chapter 11* (ECF Doc. No. 120) which was signed by the Clerk of the Court on December 7, 2023, and provided notice to specific recipients through the ECF System.

5.     On December 8, 2023, the UST filed the UST Objection for the second time.

6.     On December 9, 2023, the Court filed: (a) the *Certificate of Mailing Re: Proposed Findings of Fact and Conclusions of Law* (ECF Doc. No. 123) with a "Notice Date" of December 9, 2023, and (b) the *Certificate of Mailing* (ECF Doc. No. 124) with a "Notice Date" of December 9, 2023.    The Certificates of Mailing both provide that notice of the Proposed Findings and Conclusions was served by first class mail on December 9, 2023 to the necessary parties and by electronic transmission to a limited subset of those parties on December 7, 2023.

7.     On December 20, 2023, after Conferences before this Court on December 11, 2023 and again December 19, 2023, the Court entered, approved and So Ordered the *Amended Stipulation and Proposed Order Establishing Deadlines With Respect to Proposed Findings of Fact and Conclusions of Law (ECF Doc. Nos. 115, 120, 123, 124)* (ECF Doc. No. 129) which

3

provided that for cause shown under Rule 9033 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") the deadline for FCP's objections to the Proposed Findings and Conclusions was December 26, 2023, and the deadline for responses to any party's objections to the Proposed Findings and Conclusions, including the UST Objection, is January 9, 2024.

8.      On December 26, 2023, FCP filed the FCP Objection (ECF Doc. Nos. 133, 134).

## RESPONSE

**The Objections Fail to Specifically Object to the Proposed Findings and Conclusions**

9.      The Objections should be denied and ignored as a waiver of the UST's and FCP's right to *de novo* review to the extent they fail to specifically object to the Proposed Findings and Conclusions as required by Bankruptcy Rule 9033.  "Bankruptcy Rule 9033(d) and [28 U.S.C.] § 157(c) … call for specificity in any objections. *Messer v. Peykar Intern. Co., Inc.,* 510 B.R. 31, 39 (S.D.N.Y. 2014) (holding defendants waived their rights to object to proposed findings of fact and conclusions of law in light of failure to *inter alia* provide with "any specificity . . .why the factual determinations or legal conclusions are incorrect).  "Bare statements that are devoid of any reference to specific findings or recommendations to which a party objects and why, and unsupported by legal authority, are not sufficient to constitute actionable objections." *Messer v. Peykar Intern. Co., Inc.,* 510 B.R. 31, 39 (S.D.N.Y. 2014) (citing *Mario v. P & C Food Markets, inc.,* 313 F.3d 758, 766 (2d Cir. 2002); *Bowens v. Atlantic Maintenance Corp.,* 546 F.Supp. 2d 55, 59 (E.D.N.Y. April 23, 2008) (holding that defendant's general and conclusory objections to the magistrate's report and recommendations were not specific enough to preserve claims for review and thus the purported objections were waived); *Healing Power, Inc. v. Ace Continental Exports, Ltd.,* 2008 WL 469346 (E.D.N.Y. Oct. 17, 2008)).

10.      In large part, the UST Objection and the FCP Objection  merely offer only general

objections to the factual findings and legal conclusions drawn by this Court based upon undisputed facts and uncontroverted evidence, and attempt a second bite at the apple to reargue the same issues raised at the Confirmation Hearing. To the extent the Objections fail to identify specific findings and conclusions, they should be ignored.

**There Were No Other Facts or Evidence Offered by FCP or the UST**

11.    At the Confirmation Hearing neither the UST nor FCP offered any evidence to controvert the evidence proffered by the Debtor, including the declarations and testimony of Brian Ryniker and Hal Luftig.    *See Joint Pretrial Order* (ECF Doc. No. 92) (reciting stipulated facts, twelve exhibits submitted by the Debtor, no exhibits by FCP, one fact witness and one expert witness on behalf of the Debtor (Mr. Luftig and Mr. Ryniker), no witnesses for FCP, two sworn written direct examinations submitted by the Debtor (Mr. Luftig and Mr. Ryniker), none by FCP. Indeed, the UST filed its objection to confirmation of the Plan prior to the deadline, without waiting to see if Mr. Luftig or the Debtor would offer financial disclosures demonstrating the rare, exceptional, and unusual the circumstances in this case.

12.    Thus, the Objections cannot (and do not) point to any evidence or authority contradictory to the Proposed Findings and Conclusions, or that this Court failed to consider and, therefore, cannot establish that this Court's legal or factual analysis was erroneous.  Taken in their best light, the Objections take the position that the undisputed and substantial evidence considered by the Court was somehow insufficient to support the Court's decision to confirm the Plan, and that the Court erred in applying established, applicable Second Circuit precedent.  Based on the Court's well-supported and evidenced-based Proposed Findings and Conclusions, to the extent the Objections are even considered, they should be given little weight. *See Messer v. Peykar Intern. Co., Inc.,* 510 B.R. 31, 41 (S.D.N.Y. 2014) ("The [d]efendants have not provided any authority

contrary to the [d]ecisions' conclusion, and the authorities cited by the Bankruptcy Court are on point.") (citing *Kalfco,* 149 A.D.2d 836, 837, 540 N.Y.S. 2d 354, 356; *Prudential-Bache Secs. Inc. v. Golden Larch-Sequoia, Inc.,* 118 A.D.2d 487, 488, 500 N.Y.S.2d 1, 2 (1st Dep't 1986); *Edwards v. Horsemen's Sales Co.,* 148 Misc.2d 212, 560 N.Y.S.2d 165 (Sup.Ct.N.Y.Cnty. 1989)). *See also Kramer v. Mahia (In re Khan),* 10-46901 (ESS), 11-01520 (ESS), 2014 WL 10474969 *69 (E.D.N.Y. 2014) (adopting bankruptcy court's findings in their entirety where bankruptcy court "carefully and thoroughly analyzed, and correctly decided, each of the issues raised," and objecting party "fail[ed] to show that either [the bankruptcy court's] legal or factual analysis was erroneous").

13.    The Objections fail to show that the Proposed Findings and Conclusions were made in clear error, and do not compel contrary findings. *See Messer v. Peykar Intern. Co., Inc*., 510 B.R. 31 (S.D.N.Y. 2014) ("Even if the [d]esignations were proper objections pursuant to Bankruptcy Rule 9033(d) and 28 U.S.C. § 157(c), the objections do not compel findings contrary to the [p]roposed [f]indings. A district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *In re Ionosphere Clubs, Inc*., 922 F.2d 984, 988 (2d Cir.1990); *In re MF Global Holdings*, No. 13 Civ. 3532(AT), 2014 WL 231130, at *1 (S.D.N.Y. Jan. 22, 2014). Mixed questions of fact and law are also reviewed de novo. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir.2003).").

**Responses to the UST Objection**

14.    The Debtor respectfully submits responses to the UST Objection.

15.    **"There is nothing in the record that supports a finding that this is a rare and unusual case."** UST Objection, p.2.

16.    This Court correctly disagreed, based upon the record and existing law: "[T]his case

6

is unique and 'exceptional' because FCP, the Debtor's largest creditor, is apparently willing to: (i) incur the costs concomitant with further litigation; and (ii) derail a Plan that would purportedly optimize its own recovery (and the recovery of every other creditor) in order to either drive the Debtor into Chapter 7 or drive the Debtor's principal into bankruptcy himself." Proposed Findings and Conclusions, p.65.  Mr. Luftig established through unrefuted testimony and cross-examination that a personal bankruptcy filing would result in a significantly reduced payment to FCP, as well as the Debtor's other creditors entitled to recover only from the Debtor's estate.  (*See* Proposed Findings and Conclusions, p.15 ("Mr. Luftig's Confirmation Declaration also stated that, because he has no non-exempt assets to satisfy the Final Award, the Luftig Cash Contribution will be taken from assets that would be exempt if he himself filed for bankruptcy. (Confirmation Declaration, at ¶ 54.)).

17.    **"But it is not rare or unusual for the sole shareholder of a small company to be obligated jointly and severally with his business."**  UST Objection, p.10.

18.    <u>First</u>, Mr. Luftig was not jointly and severally liable to FCP with the Debtor in the traditional sense – an arbitrator somehow found that Mr. Luftig was liable for breach of a contract to which he was not a party and did not personally guarantee – a rare and unusual circumstance that this Court recognized.  *See* Proposed Findings and Conclusions, p.32  ("The Court is sympathetic to the Debtor's position. In the Arbitration, the only claim asserted directly against Mr. Luftig (the breach of fiduciary duty claim) was dismissed, and the arbitrator did not otherwise provide an explanation for why Mr. Luftig was jointly and severally liable on the breach of contract claim. (See generally Confirmation Declaration Ex. H & I (the arbitrator's interim and final awards in favor of FCP).) Put differently, Mr. Luftig's liability with respect to the Final Award is the product of a claim asserted exclusively against the Debtor.").

7

19.     <u>Second</u>, Mr. Luftig's relationships in the industry are the Debtor's lifeblood and
enable the Debtor to serve as producer of so many successful shows. *See* Proposed Findings and
Conclusions, p.48 ("[I]t is <u>undisputed</u> that the Plan's terms were based entirely on financial
projections that were premised on the Debtor's business continuing as it has been. (Hearing
Transcript at 92:18–93:3.) It is likewise <u>undisputed</u> that the Debtor's business is almost entirely
dependent on the efforts and relationships of Mr. Luftig. (Confirmation Declaration ¶ 64); *see also*
(Hearing Transcript at 86:13–18 (where the Debtor's expert finds that 'the Debtor has a future
benefit based on how well [Mr. Luftig] can continue to move forward as a personal and as a
principal of the [Debtor] . . . .').) There is thus a substantial risk that, without the Luftig Release,
FCP's enforcement of the Final Award against Mr. Luftig individually would severely endanger—
if not eliminate—the Debtor's ability to generate revenue. (Confirmation Declaration ¶ 14 (where
Mr. Luftig describes himself as 'the lifeblood of the Debtor's business operations'); ¶ 45
(describing investors' concerns regarding FCP's prosecution of the Final Award and noting that
Mr. Luftig had missed meetings related to the Debtor's projects to prepare for the Hearing); ¶¶ 68,
71 (stating that FCP's enforcement efforts against Mr. Luftig would likely distract Mr. Luftig and
harm the Debtor's reputation).").  (emphasis added).

20.     **"It is FCP's state law claim against a non-debtor, a property right, and FCP
should not be punished for failing to agree to give it up for less than full payment."**  UST
Objection, p.11.

21.     The undisputed facts established that FCP hardly is being "punished" by receiving
a 36% distribution over five (5) years.  If Mr. Luftig elected not to pursue approval of the Luftig
Release, and filed his own personal bankruptcy, FCP would not receive nearly a 36% distribution
because Mr. Luftig is drawing upon exempt assets to satisfy the Luftig Cash Contribution.  Neither

FCP nor the UST (who seems to be arguing for FCP in the UST Objection) produced any evidence to the contrary, or bothered to take any discovery prior to the Confirmation Hearing. *See* Proposed Findings and Conclusions, p.52 ("Finally—and as emphasized repeatedly infra and supra—the underlined undisputed evidence in the record indicates that the Luftig Cash Contribution allows FCP to recover more on the FCP Claim than FCP would recover if: (i) the Debtor filed for chapter 7 relief; or if (ii) Mr. Luftig was driven into bankruptcy himself. (*See* Ryniker Declaration ¶ 7 (where the Debtor's expert concludes that "[b]ased on [] estimates and the estimated liquidation values of assets, I believe each Class of Claims under the Plan will receive more than such Class would receive in a hypothetical chapter 7 liquidation of the Debtor."); *See also* Confirmation Declaration ¶¶ 54–59, 67 (noting that the Luftig Cash Contribution is being made from Mr. Luftig's assets that would be exempt if he filed for bankruptcy).) (emphasis added).

22.    "**It is not true that without the release 'there is little likelihood of [a Proposed Plan's] success**.'"  UST Objection, p.13.

23.    The UST Objection argues that this Court's conclusions are "not backed by the evidence on the record."  Neither the UST nor FCP offered any evidence or testimony to the contrary.  *See* Proposed Findings and Conclusions, p.48 ("There is thus a substantial risk that, without the Luftig Release, FCP's enforcement of the Final Award against Mr. Luftig individually would severely endanger—if not eliminate—the Debtor's ability to generate revenue. (Confirmation Declaration ¶ 14 (where Mr. Luftig describes himself as 'the lifeblood of the Debtor's business operations'); ¶ 45 (describing investors' concerns regarding FCP's prosecution of the Final Award and noting that Mr. Luftig had missed meetings related to the Debtor's projects to prepare for the Hearing); ¶¶ 68, 71 (stating that FCP's enforcement efforts against Mr. Luftig would likely distract Mr. Luftig and harm the Debtor's reputation).").

24.     Furthermore, the UST did not object at the outset of the Debtor's Subchapter V reorganization case to the Debtor's efforts to extend the automatic stay to Mr. Luftig under Bankruptcy Code section 362, and is bound by this Court's final order.  *See* Proposed Findings and Conclusions, p.48, n.34 ("Indeed, this Court has already found, in the context of the adversary proceeding, that Mr. Luftig is "the driver of revenue for [the Debtor], [and] any burdens placed upon Mr. Luftig will impair his management of the company and reduce the likelihood of a successful reorganization." *Hal Luftig Company, Inc., v. FCP Entertainment Partners*, *LLC*, No. 22–01176 (Docket No. 22, p. 12) (finding that "the enforcement of the [Final Award] against Mr. Luftig would create a significant obstacle to confirmation of a plan and a successful reorganization")).

25.     **The UST Objection alleges that Mr. Luftig's proposed salary under the First Amended Plan is unreasonable in light of the proposed distributions to creditors**.  UST Objection, p.14.

26.     There is no evidence in the record to refute that Mr. Luftig's salary is reasonable under the circumstances of this case.  The UST's attempt at a second bite at the apple must be ignored.  *See* Proposed Findings and Conclusions, p.52; p52 n.37 (discussing reasonableness of Mr. Luftig's proposed $210,000 per year salary); *see also* Plan Supplement (discussing in Mr. Luftig's proposed Employment Agreement that Mr. Luftig may defer salary to ensure payments are made under the Plan).

27.     **"[T]he Bankruptcy Court's conclusion that the Luftig Contribution was substantial because it enabled a greater recover [sic]  to creditors cannot and should not be the basis to permit a non-consensual third-party release."**  UST Objection, p.14.

28.     This is the same policy position the UST has taken before the U.S. Supreme Court

in *Purdue*, and it posits that all non-consensual third-party releases are prohibited under the Bankruptcy Code. That is not the current law in the Second Circuit. *See* Proposed Findings and Conclusions, pp. 20-30 (discussing authority in Second Circuit for bankruptcy courts to approve non-consensual third-party release of direct claims against a non-debtor). *See also,* Proposed Findings and Conclusions, pp. 50-52 (holding the Luftig Contribution is substantial under applicable Second Circuit law).

29.    "**FCP may prefer to maintain its rights in the event of an unexpected increase in circumstances potentially allowing for a greater payout from Luftig in the future**." UST Objection, p.16.

30.    <u>First</u>, it is unclear why the UST is making arguments seemingly on behalf of FCP – a judgment creditor that is present and has meaningfully participated in the Debtor's case. <u>Second</u>, if the Luftig Release is not approved, it is possible that Mr. Luftig will file personal bankruptcy because he cannot satisfy the FCP Judgment and will be left with no alternative. But Mr. Luftig's efforts to resolve the FCP Judgment as against him personally in the context of this Subchapter V reorganization for a substantial and significant personal cash contribution should not be misinterpreted as a personal windfall. Mr. Luftig understands that he is in the business of raising funds as a Broadway producer, and his success depends in large part upon the trust and confidence instilled in him by his investors. Mr. Luftig is right to be concerned that a personal bankruptcy could shake the confidence of his investors, and has gone to substantial lengths in the Debtor's case (including offering $500,000.00 from exempt assets) to avoid that outcome.

31.    "**[T]he fact that the Second Circuit set a 75% threshold for creditor consent of third-party releases as a 'bare minimum' demonstrates that affected creditors must show strong support for a release before a court can approved them.**" UST Objection, p.17. "**[T]he**

11

**Bankruptcy Court found that '[g]iven that: (i) the evidence indicates that the Proposed Plan would provide all creditors with more than they would be able to collect from either the Debtor or Mr. Luftig in any other situation; and (ii) the Proposed Plan eliminates the cost and uncertainty of further litigating both the Appeal and the Luftig Indemnification Claim, the Court finds that the Proposed Plan provides for fair and equitable payment of the Released Claims.' . . . This finding is erroneous."** UST Objection, p.17 (citing Proposed Findings and Conclusions, p.56).

32.    The UST Objection asserts (for the first time in this case and without any basis in fact or law)[2] that: (a) FCP is losing a substantial potential recovery from Mr. Luftig personally; and (b) Mr. Luftig is somehow benefitting more than the Debtor's other creditors (particularly FCP) under the Plan.  The UST is incorrect, as established by the Debtor and Mr. Luftig to the Court's satisfaction, and there is no contrary evidence in the record.  *See* Proposed Findings and Conclusions, p. 55, n40 (discussing FCP's lack of good faith in negotiations and concluding "[t]he Court thus finds that any absence of evidence regarding the finances of either the Debtor or Mr. Luftig is the result of FCP's unwillingness to engage in meaningful discovery rather than the fault of another party").   Indeed, Mr. Luftig is one of the Debtor's largest creditors (having poured his life savings into the Debtor and utilizing personal assets, including drawing upon equity in his personal residence, to keep the Debtor afloat during the COVID pandemic shut down that devastated the Broadway community), and he is subordinating all of his claims until all payments to creditors are made under the Plan.  *See* Proposed Findings and Conclusions, p.8, n6.

**Responses to the FCP Objection**

---

[2] Prior to filing the UST Objection,  the UST did not argue anything related to equitable considerations. *See* Proposed Findings and Conclusions, p.58 ("Although the U.S. Trustee's Objection does not address equity considerations . . . .").

33.    This Response does not address FCP's efforts to: (a) re-litigate the issues heard and considered at the Confirmation Hearing; (b) assert new legal arguments not raised at the Confirmation Hearing; or (c) raise *for the very first time* baseless objections to testimony by Mr. Luftig or Mr. Ryniker at the Confirmation Hearing.    Bankruptcy Rule 9033 does not permit a second bite at the apple.    Rather it permits parties in interest to submit specific objections to proposed findings of fact and conclusions of law.    *See Messer v. Peykar Intern. Co., Inc.,* 510 B.R. 31, 39 (S.D.N.Y. 2014).

34.    **"As a preliminary matter, non-consensual, non-debtor, third-party releases have statutory support in only one, extremely narrow set of circumstances – asbestos litigation."** FCP Objection, p.7 (citing 11 U.S.C. § 524(g)(2)(B)).

35.    According to the Second Circuit, FCP is incorrect.    *See In re Purdue Pharma L.P. ("Purdue III"),* 69 F.4th 45, 75 (2d Cir. 2023) (rejecting appellees argument that "such release are the equivalent of an inappropriate discharge, that this Circuit at no point has permitted the release of direct third-party claims in non-asbestos actions, and that no case supports a plan doing so here" and relying upon binding precedent for the conclusion that "'[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan.'") (quoting *In re Drexel Burnham Lambert Group, Inc. (Drexel),* 960 F.2d 285, 293 (2d Cir. 1992)).    The very decision relied upon by FCP, *In re Metromedia Fiber Network, Inc. (Metromedia),* 416 F.3d 126, 142 (2d Cir. 2005), is cited by the Second Circuit in *Purdue III* for the opposite conclusion: "[T]his Court's opinion in *Metromedia* flatly rejects a restrictive interpretation of the Bankruptcy Code by stating that third-party releases can be valid outside of the asbestos context." *Purdue III,* 69 F.4th 45 (2d Cir. 2023) (citing *In re Metromedia Fiber Network, Inc. (Metromedia),* 416 F.3d 126, 141 (2d Cir. 2005)).

36.    **"[T]he Findings must be rejected because the Bankruptcy Court failed to support its conclusions for each of the *Purdue III* factors with specific and detailed findings."** FCP Objection, p.7 (citing *Purdue III* at 79).

37.    The self-serving, conclusory allegation that the Proposed Findings and Conclusions are not specific and detailed is patently absurd.  <u>First</u>, the Proposed Findings and Conclusions is not only specific and detailed, its sixty-five pages long.  <u>Second</u>, the Bankruptcy Court in the Proposed Findings and Conclusions first analyzed the relevant applicable law, then cited to the arguments made by all parties, and finally made  legal conclusions based upon the often undisputed facts and the record available.  A *de novo* review of the Proposed Findings and Conclusions should confirm the thoroughness and relevant support contained therein.

38.    **In discussing the sixth factor under *Purdue III*, the FCP Objection alleges that "the Bankruptcy Court utilized an erroneous reading of 11 U.S.C. § 1191(b)-(c)" and that "the Bankruptcy Court opted to give this factor little to no weight, barely discussing it**." FCP Objection, pp. 8-9.

39.    FCP fails to recognize that even in *Purdue III,* the sixth factor was discussed only two times, and with the least analysis and guidance.  *Purdue III* at 79 and 82.

40.    This Court did not erroneously read or misapply Bankruptcy Code § 1191(b)-(c), FCP clearly missed the point: this Court was making an important distinction between the Debtor's case, a Subchapter V reorganization case <u>where confirmation of a plan without any creditor support</u> is entirely possible and even encouraged, and *Purdue III,* a standard chapter 11 reorganization case where at least one impaired accepting class is required for confirmation.  *See* 11 U.S.C. §§ 1129(a)(10) and 1191(b).  This Court recognized the need to be flexible when applying factors issued by the Second Circuit for a standard chapter 11 case to a Subchapter V reorganization case.

*See* Proposed Findings and Conclusions, p.58 ("[T]he Court must take a flexible approach to the issues inherent in non-consensual third-party releases by balancing the factors enumerated in *Purdue III* against the overall fairness of a given plan. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) (the propriety of a given third-party release "is not a matter of factors and prongs"); *Purdue III*, 69 F.4th at 56 (stating that "[b]ankruptcy is inherently a creature of competing interests, compromises, and less-than-perfect outcomes"); *In re Cont. Airlines*, 203 F.3d 203, 212 (3d Cir. 2000) (describing the Second Circuit's pre-Purdue jurisprudence as adopting a "more flexible approach [than that taken by other circuits]"). Given that—as discussed below—equity considerations support the inclusion of a third-party release, the Court concludes that FCP's Objection, without more, does not render the Luftig Release impermissible.").

41.     **FCP asserts that the "the proposition that no financial harm will come to FCP by virtue of the Luftig Release is simply untrue."** FCP Objection, p.9.

42.     The FCP Objection asserts that this Court ignored its prior argument that "the granting of the Luftig Release will result in a net loss of $1,792,776 for FCP." FCP Objection, p.9. First, FCP offered no evidence in advance of or at the Confirmation Hearing to support that statement made in a legal brief by its counsel. Second, FCP's argument assumes that FCP would recover more from Mr. Luftig outside of the First Amended Plan than FCP would recover under the First Amended Plan with the Luftig Release, an incorrect assumption, that was disproven at the Confirmation Hearing, and which FCP now cannot assert because FCP refused to engage in any meaningful discovery with respect to Mr. Luftig's personal financial resources. *See* Proposed Findings and Conclusions, p.55, n40.

43.     **The FCP Objection asserts that this Court's findings of fact and conclusions of law with respect to the "fairness" of the Luftig Contribution are "fatally flawed."** FCP

Objection, p.11.  **Specifically, the FCP Objection criticizes this Court, asserting that the "only evidence that the Bankruptcy Court apparently considered in connection to their first point is the Debtor's self-serving Confirmation Declaration."**  FCP Objection, p.11 (*citing* Proposed Findings and Conclusions, pp. 55-56).

44.    FCP cannot now argue that the Court should have considered additional or alternative evidence when FCP failed to submit any evidence to the contrary. As noted above, FCP refused to engage in any meaningful discovery regarding the exact issue of Mr. Luftig's financial capabilities.  *See* Proposed Findings and Conclusions, p. 55, n40.

45.    **"Luftig is simply returning money to the Debtor that it may be entitled to anyway pursuant to a preference action."**  FCP Objection, p.12.

46.    The Debtor did not argue, and neither do the Plan nor the First Amended Plan provide, that the Luftig Settlement Payment renders the Luftig Release fair and equitable.  FCP either did not read and consider the First Amended Plan, or did not understand that the Luftig Settlement Payment of $50,000 is not part of the Luftig Cash Contribution.  The Luftig Settlement Payment was a resolution under Bankruptcy Rule 9019 for the potential preference claim against Mr. Luftig in connection with a single payment made by the Debtor to Mr. Luftig in the year before the Petition Date.  FCP again is attempting a second bite at the apple.  If FCP had an objection to the propriety of the Luftig Settlement Payment under applicable Second Circuit standards, then FCP should have raised them and provided evidence or expert witness testimony to support its argument at the Confirmation Hearing.

47.    Similarly, the FCP Objection is a wholly inappropriate forum to re-litigate the issue of whether the Luftig Release is fair and equitable under *Purdue III*.  Objections submitted under Bankruptcy Rule 9033 should include specific objections to findings of fact or conclusions of law,

16

not reargue the merits of the underlying litigation.

48.    **The FCP Objection asserts that this Court considered the wrong issues in holding that the Luftig Release is essential to the Plan, particularly with respect to Mr. Luftig, because confirmation of the Plan is not contingent upon the Luftig Release.** FCP Objection, pp. 13-14.

49.    The fact that the Plan can be confirmed without the Luftig Release is not the applicable test. Rather, the Luftig Release must be, and is, essential to the Debtor's reorganization, under the unique and exceptional circumstances of this case. First, the Proposed Findings and Conclusions relied upon significant undisputed facts in deciding that the Luftig Release is essential to the Plan. See Proposed Findings and Conclusions, p.48 ("While the Debtor might technically be able to confirm a plan without the Luftig Release, it is undisputed that the Plan's terms were based entirely on financial projections that were premised on the Debtor's business continuing as it has been. (Hearing Transcript at 92:18–93:3.) It is likewise undisputed that the Debtor's business is almost entirely dependent on the efforts and relationships of Mr. Luftig. (Confirmation Declaration ¶ 64); see also (Hearing Transcript at 86:13–18 (where the Debtor's expert finds that "the Debtor has a future benefit based on how well [Mr. Luftig] can continue to move forward as a personal and as a principal of the [Debtor] . . . .").)

50.    Second, the FCP Objection ignores that the Proposed Findings and Conclusions also relied upon a prior final and non-appealable Order from this Court recognizing that Mr. Luftig is absolutely essential to the Debtor's reorganization, and battling a zealous, well-funded judgment creditor that is motivated only by animus towards Mr. Luftig would undoubtedly jeopardize the Debtor's successful reorganization. See Proposed Findings and Conclusions, p.48, n34. Accordingly, absent Mr. Luftig's guaranteed employment with the Debtor, continued focus and

attention, and significant and substantial cash contribution, the Debtor's chance of a successful reorganization is jeopardized.

51.      The remainder of FCP's arguments in the FCP Objection with respect to this *Purdue III* factor are impermissible attempts to re-litigate issues previously heard and considered by this Court at the Confirmation Hearing.

52.      **The FCP Objection argues that this Court's findings are "erroneous" with respect to whether the Luftig Contribution is substantial under *Purdue III*.**  FCP Objection, p.15.

53.      FCP's objection to confirmation of the Plan asserted the same bizarre math offered in the FCP Objection, and was rejected by the Court as an effort to camouflage  the fact that FCP conducted no discovery as to Mr. Luftig's ability to fund the Luftig Contribution. As established at the Confirmation Hearing, and properly relied upon by this Court: (a) a reasonable salary for working for the Debtor over a five (5) year period is hardly a "net gain" where the evidence suggests Mr. Luftig received significantly more in prior years and never committed to an employment agreement in the past (*i.e.* could have walked away at any time); (b) the preference settlement (again, not part of the Luftig Release and, therefore, should not even enter the analysis) is not a "net gain" where Mr. Luftig is paying $50,000 into the Plan for all creditors – he is not receiving $200,000; (c) the $100,000 Back-Stop Commitment is not a "net gain," because the First Amended Plan provides for a $100,00 Back-Stop Commitment from Mr. Luftig; (d) the FCP Judgment Release cannot be a "net gain" of the total liability where Mr. Luftig is contributing $500,000.00 from his exempt personal assets; and (e) no payments will be made to Mr. Luftig under the Luftig Secured Note for the life of the First Amended Plan because they are subordinated to all creditor payments, so it is not a $1 million "net gain" to Mr. Luftig.   Either FCP

18

misunderstands the Plan (or the First Amended Plan), or it is attempting to once again litigate its failed arguments.

54.    **FCP incorrectly attributes the Court's reliance on Mr. Ryniker's testimony concerning the Liquidation Analysis to statements about Mr. Luftig's personal financial capabilities.** *See* FCP Objection, p.16.

55.    The Proposed Findings and Conclusions clearly cite to Mr. Ryniker's Declaration concerning the fact that creditors will receive more under the Plan than they would if the Debtor simply liquidated its assets in a hypothetical chapter 7 case. *See* Proposed Findings and Conclusions, p.52. This Court relied upon the Confirmation Declaration, made by Mr. Luftig (not Mr. Ryniker), concerning the fact that FCP would receive more with the Luftig Cash Contribution than if Mr. Luftig filed a chapter 7 personal bankruptcy case. *Id.* Once again FCP misunderstands the relevant documents.

56.    **FCP argues that this Court cannot and should not have relied upon "events that have not happened and may not ever happen" because to do so is to "go against equity."** *See* FCP Objection, p.19.

57.    The FCP Objection is nonsensical because on the very same page of the FCP Objection, FCP argues that this Court should consider future events that have not happened and may not ever happen: that either the Debtor or Mr. Luftig will "receive a future windfall" and that FCP may receive "full payment" on its claims. *Id.* FCP has offered zero evidence of any potential future windfall for the Debtor or Mr. Luftig, and had every opportunity to engage in discovery as to both issues. There is nothing in the record to support FCP's assertion, but countless citations in the Proposed Findings and Conclusions to facts and testimony relied upon by the Bankruptcy Court for the conclusion that FCP will recover more with the Luftig Contribution if the Luftig Release

is approved and the First Amended Plan is confirmed than if the Luftig Release is not approved.

58.    **FCP argues that it offered no evidence to contradict the fact that "the Debtor has, throughout the course of this proceeding, presented evidence indicating that the Debtor's creditors—including FCP—will receive more under the Plan than in a chapter 7 proceeding, or in the event Mr. Luftig filed for bankruptcy himself", Proposed Findings and Conclusions, p.59, because none was necessary as those scenarios were not before the Court.** FCP Objection, p. 19.

59.    FCP is incorrect, because it was obligated to produce evidence that refuted the Liquidation Analysis if FCP wanted to argue that the Plan was not "fair and equitable."   In order to properly refute the Proposed Findings and Conclusion, FCP was obligated to produce evidence (or at least engage in meaningful discovery) that the Luftig Contribution is not substantial or is not fair and equitable and, therefore, does not satisfy the test under *Purdue III*.   Instead, FCP now claims that it must not be stripped of its right to engage in discovery of Mr. Luftig's assets – a right that it clearly possessed, and waived, in the context of this Subchapter V reorganization case.  *See* Proposed Findings and Conclusions, p.55, n40.

**The District Court Should Not Reserve Judgment, Cases Must Proceed**

60.    Last, FCP's baseless predictions of the Supreme Court's possible future holding in *Harrington v. Purdue Pharma L.P.*, and its request that the District Court "reserve judgment" (essentially stay the final determination of these issues) should be rejected. *See* Proposed Findings and Conclusions, pp. 29-30 ("*Purdue III* remains binding precedent on this Court unless and until it is reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States. *See S.E.C. v. Amerindo Inv. Advisors, Inc*., No. 05 CIV. 5231 RJS, 2014 U.S. Dist. LEXIS 15696, at *11–12, 2014 WL 405339, at *4 (S.D.N.Y. Feb. 3, 2014), *aff'd sub nom. S.E.C. v. Amerindo*

*Inv. Advisors*, 639 F. App'x 752 (2d Cir. 2016) ("As the Eleventh Circuit has explained, '[t]he stay of [a] mandate in [a circuit case] merely delays return of jurisidiction [sic] to the district court to carry out [the circuit's] judgment in that case. The stay in no way affects the duty of [all courts] to apply now the precedent established by [the circuit case] as binding authority.'") (quoting *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992)); *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992) ("Thus, [the stayed circuit case] is the law in this circuit unless and until it is reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by this court sitting en banc.").).

61.    The District Court should adopt and approve the Proposed Findings and Conclusions of the Court.

## **CONCLUSION**

For all of the foregoing reasons, the Proposed Findings and Conclusions, are supported by undisputed facts, and include well-reasoned, specific and detailed conclusions of law, and the District Court should adopt and approve the Proposed Findings and Conclusions.

Dated: Uniondale, New York
       January 9, 2024

RUSKIN MOSCOU FALTISCHEK, P.C.
*Attorneys for Debtor in Possession Hal Luftig Company, Inc.*

By: ___*/s/Sheryl P. Giugliano*_____
       Sheryl P. Giugliano
       Michael S. Amato
       1425 RXR Plaza
       East Tower, 15th Floor
       Uniondale, NY 11556-1425
       (516) 663-6600

21