**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE: | CHAPTER 11 (SUBCHAPTER V) |
| HAL LUFTIG COMPANY INC., | CASE NO. 22-11617 (JPM) |
| DEBTOR. | |

---

**FCP ENTERTAINMENT PARTNER'S OBJECTION TO
CONFIRMATION OF DEBTOR'S SECOND AMENDED SMALL BUSINESS
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

COMES NOW FCP Entertainment Partners, LLC ("FCP"), by and through its counsel, LIPPES MATHIAS LLP, and pursuant to Sections 1129 and 1191 of Title 11 of the United States Code ("Bankruptcy Code"), hereby submits this objection ("Objection") to confirmation of the proposed Second Amended Small Business Plan of Reorganization ("Second Amended Plan") filed by the debtor, Hal Luftig Company, Inc. ("Debtor") [Docket No. 155], and respectfully represents:

### I.   PRELIMINARY STATEMENT

FCP objects to confirmation of the Plan on the grounds that its implementation will not provide for the best interest of creditors, nor is it fair and equitable. Rather, as is set forth in more detail in the Rebuttal Report of Martin Platt in Response to Declaration of Brian Ryniker in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization Under Subchapter V of the Bankruptcy Code ("Rebuttal Report") appended to the November 15, 2024 Declaration of John A. Mueller, Esq. filed in support of this Objection, the projections submitted in support of the Second Amended Plan do not support a finding that creditors would benefit more through the Second Amended Plan than they would in a liquidation of the Debtor. Additionally, the Plan fails to meet the statutory requirements of being fair and equitable, and continues to enjoin

1

FCP from enforcing the Final Judgment (defined below) against non-debtor Hal Luftig in his individual capacity until the close of this Chapter 11 Case.

Because the Plan neither provides for the best interest of creditors nor is it fair and equitable, confirmation should be denied.

## II.    BACKGROUND

The Debtor is a theatrical producing company that develops, acquires, presents and promotes theatrical plays, musicals, and similar works of theater on stage and in other media. Declaration of Hal Luftig Under Local Rule 1007-1 at ¶ 4. [ECF Doc. No. 5]. Hal Luftig ("Luftig") is the Debtor's President and sole shareholder. *Id.* at ¶ 1. Following arbitration in which FCP prevailed, on November 15, 2022, the United States District Court for the Southern District of New York approved a proposed judgment confirming an award in FCP's favor in the amount of $2,638,925.78 ("Final Award") against both Luftig and the Debtor, jointly and severally.

On December 1, 2022, the Debtor filed for bankruptcy pursuant to Chapter 11 (Subchapter V). [ECF Doc. No. 1]. Also on December 1, 2022, the Debtor commenced an adversary proceeding under case number 22-01176 (JPM) ("Adversary Proceeding") seeking (i) to extend the automatic stay over Luftig, a non-debtor, and (ii) a preliminary injunction preventing FCP from enforcing the Final Award against Luftig. On January 13, 2023, over opposition submitted by both FCP and the Office of the United States Trustee ("Trustee"), this Court entered an Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 362(a) and 105(a): (I) to Extend the Automatic Stay to non-debtor Hal Luftig; (II) For a Temporary Restraining Order and Preliminary Injunction; (III) Setting Hearing Date; and (IV) Fixing the Form and Manner of Notice. [Adv, Pro. No. 22-01176, ECF Doc. No. 23] ("Luftig Injunction"). FCP has been unable to enforce their judgment against Luftig or the Debtor during the life of this Chapter 11 Case.

2

On February 20, 2023, FCP filed a proof of claim (POC No. 6-1) asserting a liquidated unsecured claim in the amount of $2,638,925.78, and for an unliquidated claim for the share of income still due to FCP. On February 16, 2023, the Debtor filed a motion seeking to (i) establish a procedure for estimating the unliquidated portion of FCP's claim, and (ii) estimating the unliquidated portion of FCP's claim for the purposes of distributions under the Plan [ECF Doc. No. 49]. The Debtor's financial advisor prepared an estimation of the unliquidated portion of FCP's claim, and on May 3, 2023, with no opposition from FCP, the Debtor filed a proposed Order allowing FCP's claim, inclusive of the estimated unliquidated claim. [ECF Doc. No. 70]. On May 10, 2023, the Debtor filed a proposed Stipulation and Order allowing FCP's claim, inclusive of the estimation. [ECF Doc. No. 75]. On May 31, 2023, this Court entered and approved the Stipulation and Order, allowing FCP's claim in the amount of $2,862,776.00 ("Allowed FCP Claim"). [ECF Doc. No. 81].

On March 1, 2023, the Debtor filed a Chapter 11 Small Business Subchapter V Plan ("First Plan"). [ECF Doc. No. 55]. The First Plan contained a non-consensual, non-debtor, third-party release ("Luftig Release"). *Id.* Both FCP and the Trustee submitted opposition to the confirmation of the First Plan due to the inclusion of the Luftig Release [ECF Doc. Nos. 89, 87], to which the Debtor responded. [ECF Doc. No. 93]. Due to the presence of the Luftig Release in the First Plan, its final confirmation was required to be made by the United States District Court for the Southern District of New York ("District Court"). Following a confirmation hearing on July 11, 2023, on November 22, 2023 this Court issued a Memorandum Opinion and Order which contained proposed findings of facts and conclusions of law that the Luftig Release be a part of a confirmable plan ("Proposed Findings of Facts and Conclusions of Law"), and ordered that the First Plan be amended before being submitted. [ECF Doc. No. 115]. In response, the Debtor filed a First

3

Amended Chapter 11 Small Business Subchapter V Plan ("First Amended Plan"). [ECF Doc. No. 116]. Importantly, the First Amended Plan was still permitted to – and did – contain the Luftig Release. [ECF Doc. Nos. 115, 116].

Both FCP and the Trustee objected to the Proposed Findings of Facts and Conclusions of Law insofar as they recommended that the District Court allow the Luftig Release to be included in a confirmed plan. [ECF Doc. Nos. 122, 134]. The Debtor and Luftig timely responded to those objections. [ECF Doc. Nos. 136, 137]. On March 19, 2024, the District Court issued an Order sustaining the objections of FCP and the Trustee, rejecting the Proposed Findings of Fact and Conclusions of Law, and denying confirmation of the First Amended Plan. [ECF Doc. No. 144].

As is relevant for this objection, on July 25, 2024, the Debtor filed a Second Amended Chapter 11 Small Business Subchapter V Plan ("Second Amended Plan"). [ECF Doc. No. 155]. In conjunction with the Second Amended Plan, the Debtor also filed an updated disposable income analysis ("Disposable Income Analysis"), and an updated liquidation analysis ("Liquidation Analysis") attached as exhibits to the Ryniker Declaration.

### III.    STANDARD OF LAW

a. **11 U.S.C. § 1129(a)(7)(A)**

A plan proposed under Chapter 11, Subchapter V of the Bankruptcy Code is only able to be confirmed when "all of the requirements of section 1129(a), other than paragraph (15) of that section… are met." 11 U.S.C. § 1191(a). One of the most important requirements for confirmation is that "each holder of a claim… (i) has accepted the plan; or (ii) will receive or retain under the plan… a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date." 11 U.S.C. § 1129(a)(7)(A). This requirement – known as the "best interests of the

4

creditor test" – is "perhaps the strongest protection creditors have in Chapter 11." *In re Crowthers McCall Pattern, Inc.*, 120 BR 279, 297 (Bankr. S.D.N.Y. 1990).

The best interests test requires the Court to "find that each non-accepting creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated." *In re Drexel Burnham Lambert Group, Inc.*, 138 BR 723, 761 (Bankr. S.D.N.Y. 1992). The proponent of a proposed plan bears the burden of showing, by a preponderance of the evidence, that the proposed plan provides for the best interests of claim holders. *In re Adelphia Communications Corp.*, 361 BR 337, 365 (S.D.N.Y. 2007). For a debtor to meet this burden, "there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions." *Id.* at 367. The court is "entitled to view the entire record of the case and to engage in rational speculation about what would occur in a [hypothetical] chapter 7 liquidation." *In re Sierra-Cal*, 210 BR 168, 174 (Bankr. E.D. Cal. 1997). A party opposing the confirmation of a plan may also submit their own rebuttal report to challenge the data found in the plan proponent's projections. *In re Tribune Co.,* 464 BR 126, 149 (Bankr. D. Del. 2011).

b. **11 U.S.C. § 1191(b)**

Before a plan may be confirmed under Chapter 11, Subchapter V, there must be a finding that "the plan does not discriminate unfairly, and is fair and equitable, with respect to each lass of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). Subsection (c) of § 1191 defines what a fair and equitable plan is under Chapter 11, Subchapter V by providing a list of requirements. Those specific "fair and equitable" requirements, as relevant to this Objection, include that "[t]he debtor will be able to make all payments under the plan; or there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and the plan provides appropriate remedies, which may include the liquidation of nonexempt

5

assets, to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3); *In re Pearl Resources LLC*, 622 BR 236, 269 (Bankr. S.D. Tex. 2020).

However, application of the fairness and equity of a proposed plan "requires more than a mechanical, check-the-box application of the requirements of § 1191(c)." *In re Trinity Family Practice & Urgent Care PLLC*, 661 BR 793, 815 (Bankr. W.D. Tex 2024). Instead, the requirements set forth in § 1191(c) are merely the baseline, and "the court has the discretion to require more as a condition of finding that the plan is fair and equitable." *Id.* (noting that the insertion of the word *including* in the preamble of § 1191(c) renders the following requirements the bare minimum.) Indeed, this Court in this very case has not read the §1191(c) list of requirements to be exhaustive. *In re Hal Luftig Co., Inc.*, 655 BR 508, 526 (Bankr. S.D.N.Y. 2023) (considering the inclusion of the Luftig Release in a prior plan proposed by the Debtor while conducting a § 1191(b) fair and equitable analysis).

### IV.    ARGUMENT

The Second Amended Plan should not be confirmed as the Debtor cannot demonstrate, by a preponderance of the evidence, that creditors will receive more under its terms than they would in the event of a liquidation. As a preliminary matter, as FCP is the holder of the Allowed FCP Claim, the Second Amended Plan may only be confirmed if they accept its confirmation or if FCP will receive not less than the amount they would receive in a liquidation under Chapter 7 of the Bankruptcy Code. For the avoidance of doubt, FCP does not consent to the confirmation of the Second Amended Plan. Thus, the Second Amended Plan can only be confirmed if it provides for the best interest of FCP.

The Debtor supports the Second Amended Plan with the Disposable Income Analysis and a Liquidation Analysis, appended to the Ryniker Declaration (the Disposable Income Analysis and

6

Liquidation Analysis collectively, the "Debtor's Financial Analyses"). However, as discussed in detail in the Rebuttal Report, submitted in conjunction with this Objection, the Debtor's Financial Analyses are flawed. The Ryniker Declaration and attached Debtor's Financial Analyses contain pure speculation based on an incredibly unlikely best-case scenario of performance of two shows. Thus, the Debtor's Financial Analyses do not present a reasonably accurate financial picture of the disposable income likely to be available to pay the Debtor's creditors. Nor are the Debtor's Financial Analyses based on the budgetary or financial documentation necessary to correctly project future revenues. Because the Debtor's Financial Analyses do not present a realistic financial picture, the Debtor has failed to meet their burden of demonstrating that the Second Amended Plan would provide for the best interests of creditors as compared to a liquidation under Chapter 7 of the Bankruptcy Code

The Second Amended Plan is not confirmable as it is not fair or equitable. Chapter 11, Subchapter V requires that a plan be fair and equitable before it can be confirmed. There are specific requirements that must be met before a plan can be considered fair and equitable, which are not present in the Second Amended Plan.

Additionally, the inclusion of the Luftig Injunction also renders the Second Amended Plan unfair and inequitable. The Second Amended Plan would continue the Luftig Injunction, preventing FCP from enforcing the Final Award during the life of the Second Amended Plan. Specifically, the Second Amended Plan states the following:

> UNLESS OTHERWISE PROVIDED HEREIN, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE CHAPTER 11 CASE IS CLOSED.

7

Second Amended Plan at 12.

This language extends the automatic stay and the injunction preventing FCP from enforcing their Final Award against Luftig for the life of the Second Amended Plan, if confirmed. The inclusion and continuation of the Luftig Injunction as a part of the Second Amended Plan necessarily renders it to be not in the best interest of FCP as enforcement of the Final Award will result in a higher recovery of FCP.

For all these reasons, and as described more thoroughly below, confirmation of the Second Amended Plan should be denied.

> a. **The Second Amended Plan Does Not Provide for the Best Interests of the Creditors**

Confirmation of the Second Amended Plan should be denied as it cannot be said, by a preponderance of the evidence, that creditors will receive more through the Second Amended Plan than they would if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Allowed FCP Claim totals $2,862,776. The Second Amended Plan states that FCP will receive approximately 25% of the Allowed FCP Claim, for a total of $715,694. [ECF Doc. No. 155 at 10]. The Debtor's Liquidation Analysis claims that FCP will receive $496,119 in the event of a liquidation. [ECF Doc. No. 156 at 10]. However, the Debtor's Financial Analyses submitted in support of the Second Amended Plan do not provide a reliable set of projections.

The Financial Analyses submitted in support of the Second Amended Plan contain numerous speculations and unsupported assumptions, rendering them unreliable. While financial projections and liquidation analyses are inherently speculative, they are faulty when they are based on "mere assumptions or assertions." *In re Adelphia Communications Corp.*, 361 BR at 366. Indeed, the Debtor's financial advisor explicitly states that the Disposable Income Analysis is based in part on "various assumptions," yet provides no details regarding the specific financial

8

documentation that was reviewed in its preparation. (Ryniker Declaration ¶ 10). The speculative nature of the Debtor's Financial Analyses becomes clear in light of the information presented by Martin Platt in the Rebuttal Report, which highlights the numerous deficiencies contained therein.

The Rebuttal Report, compiled by Martin Platt, demonstrates just how truly speculative the Debtor's Financial Analyses are. Mr. Platt, a multi-award-winning Broadway producer and production company General Manager, is extensively familiar with producing Broadway shows, having been in the industry for fifty-two years. (Rebuttal Report, Ex. A). Mr. Platts' *curriculum vitae* evidences his specialized knowledge and vast wealth of experience in this field. *Id.*

The Debtor points to two new Broadway shows as generating the vast majority of the disposable income with which FCP and other creditors will be paid – Becoming Nancy and Midnight in the Garden of Good and Evil. (Ryniker Declaration ¶ 12). The income from those shows will not be realized until 2027, 2028, and 2029. *Id.* However, as the Rebuttal Report makes clear, the projected income from those shows "assume[s] extraordinary success levels for each," and those "financial projections statistically have only a slight possibility of being realized." (Rebuttal Report at 3). Between 2010 and October 2024, 149 new musicals opened on Broadway, but no more than nineteen (19) of those recouped their initial investment and even fewer were profitable. *Id.* Furthermore, even where such shows are successful, a show takes much longer than three years to return its full investment and begin generating profit. *Id.*[1] The historical data simply does not support the accuracy of the Debtor's Disposable Income Analysis.[2] While projections in

---

[1] The Rebuttal Report points to the hit production of Thoroughly Modern Millie, which did not return a full investment until a decade after it had first opened.

[2] Notably, the projections submitted in support of the Second Amended Plan suggest that both shows will run for at least three years. The Rebuttal Report indicates that this is "statistically highly unlikely." Of the 262 new Broadway shows that ran from June of 1999 to the date of the Rebuttal Report, only 9.2% ran for three or more years. Instead, 151 (59.9%) of those shows closed within the first year, with 125 of those shows closing within the first six months. (Rebuttal Report at 6).

support of a plan are necessarily speculative, the Debtor's Disposable Income Analysis does not speculate to a reasonable level.

The Debtor's Financial Analyses do not appear to have been supported by data necessary to create an accurate set of projections. The Ryniker Declaration does not point to any specific documents or financial statements reviewed in the preparation of the Debtor's Financial Analyses. According to Mr. Platt, a Broadway production company will compile Weekly Operating Budgets and Recoupment Charts for each respective show. These documents are necessary as they (i) allow one to "evaluate how many tickets must be sold, at what price, plus merchandising, to determine the benchmark for a show's weekly profitability," and (ii) "extrapolate[] the anticipated weekly profitability over the course of months and years, in order to understand the anticipated timeline for recoupment." (Rebuttal Report at 6). Nor does the Rynicker Declaration make it clear whether the Debtor's operating documents were reviewed, which would set forth the nature and structure of the capitalization for various shows that the Debtor produces. (Rebuttal Report at 7). The Ryniker Declaration does not contain reference to either of these crucial documents as having been reviewed in the creation of the Debtor's Financial Analyses. Importantly, without access to these documents, Mr. Platt himself is unable to present a more accurate set of financial projections, just as Mr. Ryniker is unable to.

Further, the inclusion of the Luftig Injunction necessarily positions the Second Amended Plan against FCP's best interest. In a liquidation under Chapter 7 of the Bankruptcy, FCP would receive funds through that process, and could then continue with enforcing the Final Award against Luftig, crediting the amount already received against the amount sought in that enforcement action. Even if the Debtor's claim that FCP would only receive $496,119 in a liquidation were true, FCP would still be permitted to pursue Luftig for the remaining balance of the Final Award. Thus, FCP

10

would be in a much better position to gain everything that they are entitled to, and in a much shorter amount of time, than they would under the Second Amended Plan.

Finally, the Rebuttal Report compares the shows Becoming Nancy and Midnight in the Garden of Good and Evil, as the two main drivers of revenue under the Second Amended Plan, to past "smash hit" production produced by the Debtor and FCP, Thoroughly Modern Millie. (Rebuttal Report at 8). Though Thoroughly Modern Millie had won six Tony awards, including best musical, it had "generated less than $10 million over the entire course of the production's history, including decades of royalties from subsequent international and domestic runs. In other words, [Becoming Nancy and Midnight in the Garden of Good and Evil] would have to outperform [Thoroughly] Modern Millie by a factor of somewhere between 2 and 4, even considering inflation." *Id.* However, as is clear from initial reviews of those shows, the prospects of such success does not appear to be likely. (Rebuttal Report at 4-6).

Because Debtor has failed to meet their burden of demonstrating that the Second Amended Plan provides for creditors' best interest by a preponderance of the evidence, its confirmation should be denied pursuant to 11 U.S.C. § 1129(a)(7)(A).

### b. The Second Amended Plan is Not Fair or Equitable

Confirmation of the Second Amended Plan should also be denied because it does not provide for the fair and equitable treatment of FCP, as required by 11 U.S.C. § 1191(b).

Before a plan may be considered fair or equitable, the debtor must "be able to make all payments under the plan; or there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and the plan provides appropriate remedies… to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3); *In re Pearl Resources LLC*, 622 BR 236, 269 (Bankr. S.D. Tex. 2020).

The Second Amended Plan states that FCP will receive distributions equal to approximately 25% of the Allowed FCP Claim, or roughly $715,694. However, as indicated above and in the Rebuttal Report, the projections that form the basis of these distributions are flawed as being based on an incredibly unlikely, best-case scenario set of circumstances. The historical performance of Broadway shows, as demonstrated in the Rebuttal Report, shows that it is much more likely that the Debtor will not be able to make all plan payments, and that FCP will see little to no distributions of funds under the Second Amended Plan. The Second Amended Plan is also completely silent as to any remedies in the event of the Debtor's failure to make plan payments. Without these crucial protections, FCP would be harmed in the highly likely event that the Debtor is unable to make payments as required under the Second Amended Plan.

Indeed, confirmation of the Second Amended Plan is especially unfair and inequitable considering the purely speculative nature of the Debtor's projections. While the Second Amended Plan makes it appear as though the shows Becoming Nancy and Midnight in the Garden of Good and Evil will become run away smash hit productions, the overwhelmingly likelihood is that they will not generate the revenue and profit required to begin making plan payments – let alone completing payments under the plan. To confirm the Second Amended Plan with only pure speculation supporting it is neither fair nor equitable to FCP.

Moreover, the very inclusion of the Luftig Injunction in the Second Amended Plan renders it unfair and inequitable. FCP followed the proper process and procedure and obtained a valid judgment against both the Debtor and Luftig, jointly and severally. That FCP should continue to be restrained from enforcing the Final Award against a non-debtor during the life of the Second Amended Plan, if confirmed, goes against all concepts of fairness and equity. As the Supreme Court recognized in *Harrington v. Purdue Pharma L.P.*, 603 U.S. __, 144 S. Ct. 2071 (2024), the

12

injunction against collecting on or recovering a debt against a debtor that accompanies a confirmed plan "operates only for the benefit of the debtor against its creditors and does not affect the liability of any other entity. § 524(e)." *Id; see also Intl. Petroleum Products and Additives Co., Inc. v Black Gold S.A.R.L.,* 115 F.4th 1202, 1216 (9th Cir. 2024).

Accordingly, confirmation of the Second Amended Plan should be denied as it is neither fair nor equitable towards FCP.

### V. CONCLUSION

For all the reasons set forth above, FCP respectfully requests that the Bankruptcy Court enter an Order: (i) denying confirmation of the Second Amended Plan; and (ii) granting such other relief deemed proper.

Dated: November 15, 2024  
Buffalo, New York

**LIPPES MATHIAS LLP**

*/s/John A. Mueller, Esq.*  _____
John A. Mueller, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
jmueller@lippes.com
rscherer@lippes.com

· *Counsel to FCP Entertainment Partners, LLC*

To:   All parties receiving CM/ECF notice