UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                                    Chapter 11 (Subchapter V)

  HAL LUFTIG COMPANY, INC.,                          Case No. 22-11617 (JPM)

        Debtor.

-----------------------------------------------------------x

# THIRD AMENDED SMALL BUSINESS PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**RUSKIN MOSCOU FALTISCHEK, P.C.**
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-0190
(516) 663-6600
Sheryl P. Giugliano
Michael S. Amato
sgiugliano@rmfpc.com
mamato@rmfpc.com

Attorneys for Hal Luftig Company, Inc.

Dated: November 21, 2024

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

This Plan under Subchapter V of chapter 11 of title 11, United States Code (the "Bankruptcy Code") is submitted by the Debtor, pursuant to Bankruptcy Code §§1189 and 1190. (Capitalized terms not otherwise defined herein shall have the meanings set forth in Article VIII of the Plan.)

This Plan amends and supersedes the Debtor's "Small Business Plan of Reorganization Under Subchapter V of the Bankruptcy Code," dated March 1, 2023 (ECF Doc. No. 55), as modified by that certain "Plan Supplement" (ECF Doc No. 63) (collectively, the "Original Plan"), as amended by that certain "First Amended Small Business Plan of Reorganization Under Subchapter V of the Bankruptcy Code," dated November 27, 2024 (ECF Doc. No. 116) (the "First Amended Plan"). The First Amended Plan updated and revised certain portions of the Original Plan, in accordance with the Bankruptcy Court's "Memorandum Opinion and Order on Confirmation of Small Business Plan of Reorganization Under Chapter 11," dated November 22, 2023 (ECF Doc. No. 115) (the "Bankruptcy Court Confirmation Opinion"). The "Second Amended Small Business Plan of Reorganization" (the "Plan" as updated and amended) updated and revised certain portions of the First Amended Plan in accordance with the District Court's "Opinion and Order," dated March 19, 2024 (docketed March 22, 2024) in Case No. 24cv166 (DLC) (the "District Court Order") rejecting the recommendation of the Bankruptcy Court in the Bankruptcy Court Confirmation Opinion. This "Third Amended Small Business Plan of Reorganization" revises only specific language requested by the U.S. Trustee in Article V of the Plan.

Under Bankruptcy Code §§ 1191(c) and (d), the Debtor will fund the Plan payments to creditors utilizing its disposable income for a period of five (5) years and a settlement payment by Mr. Luftig in the amount of $50,000.00, defined below as the Luftig Settlement Payment. Mr. Luftig will, upon entry of a Confirmation Order by the Bankruptcy Court which becomes a final and non-appealable Order, agree to: (i) subordinate in right of payment of certain allowed claims held by Mr. Luftig; (ii) enter into an employment agreement with the Debtor which provides for Mr. Luftig's non-exclusive employment with the Debtor for a five-year period (the duration of the Plan); (iii) provide the Back-stop Commitment; and (iv) for the life of the Plan, Mr. Luftig will not charge the Debtor rent for the space utilized in his home in New York City.

Allowed Administrative Expenses will be paid from the Debtor's business operations. The Plan provides for payment of Allowed Administrative Expenses, Allowed Priority Claims, including Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims in accordance with the Bankruptcy Code, and provides for the payment of certain amounts to Allowed Unsecured Claims.

**ARTICLE I**

**HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS**

**Nature and History of the Debtor's Pre-Petition Business or Commercial Activities**.

The Debtor is a New York corporation. Mr. Luftig formed the Debtor in 2000 as a Broadway production company, and it has been in business in that capacity ever since. The Debtor

1

is a theatrical producing company that develops, acquires, presents and promotes theatrical plays, musicals, and similar works of theater on stage and in other media.

Mr. Luftig is an award-winning Broadway producer who has worked in theatrical productions for over 30 years. His many successful shows include George Wolf's Jelly's Last Jam, Tony Kushner's Angels in America, Twyla Tharp and Billy Joel's Movin' Out, and Tony Award-winning musicals like Thoroughly Modern Millie and Kinky Boots. Mr. Luftig has produced over 30 Broadway shows that collectively have garnered over 80 Tony Awards, and Mr. Luftig has won four Tony Awards, including two as lead producer.

Between 2001 and 2022, the Debtor produced several hit Broadway and off-Broadway shows including, but not limited to: Fiddler on the Roof in Yiddish; American Utopia; Plaza Suite starring Matthew Broderick and Sarah Jessica Parker; Becoming Nancy; Legally Blonde the Musical; Evita; Catch Me If You Can the Musical; and Come Fly Away.

**Legal Structure and Ownership of the Debtor**.

The Debtor is a corporation organized under the State laws of New York. Mr. Luftig is the 100% owner of the equity interests in the Debtor. Mr. Luftig holds all offices of the Debtor.

**Events Leading to the Debtor's Bankruptcy Filing and the Plan Process**.

### The Arbitration Award and Judgment

The filing of the Debtor's chapter 11 case (the "Case") on December 1, 2022 (the "Petition Date") in the Bankruptcy Court was precipitated by the entry of an order confirming an unfavorable arbitration award against the Debtor and Mr. Luftig. On August 12, 2019, FCP initiated an arbitration against the Debtor for breach of contract, and against Mr. Luftig for breach of fiduciary duty. On April 1, 2022, the arbitrator issued his final award (the "Arbitration Award"). The Arbitration Award assigned damages to the breach of contract claim in the amount of $2,638,925.78, to be born jointly and severally by the Debtor and Mr. Luftig, and also found that Kinky Boots was a "vested project" under a prior agreement between the Debtor and FCP and, as a result, FCP was entitled to fifty-five percent (55%) of the Debtor's income from Kinky Boots. The Arbitration Award did not find Mr. Luftig liable for breach of fiduciary duty. On October 26, 2022, the District Court (Judge Lewis A. Kaplan) entered a Memorandum and Order granting FCP's motion to confirm the Arbitration Award.

On December 7, 2022, after the Petition Date, the District Court entered the Final Judgment in favor of FCP.

### The SBA is the Debtor's Only Secured Creditor

The Debtor has one (1) secured claim. On or about June 2, 2020, the Debtor executed and delivered a promissory note and other loan documents in connection with a COVID-19 Economic Injury Disaster Loan ("EIDL") from the U.S. Small Business Administration (the "SBA") in the principal amount of $150,000.00, which accrues interest at 3.75% per annum with a 30-year repayment term. The EIDL program provides for a 30-month payment deferment period from the date of the original note, during which time interest accrues. On or about June 11, 2020, the SBA filed a UCC-1 Financing Statement. On or about December 16, 2022, the SBA filed a proof of claim (POC No. 3-1) against the Debtor's estate on account of the EIDL in the amount of $163,946.92.

2

On February 1, 2022, the Bankruptcy Court approved the *Stipulation and Order Providing Adequate Protection and Related Relief With Respect to Secured Claim of the U.S. Small Business Administration* (ECF Doc. No. 47), pursuant to which the SBA consented to the Debtor's use of cash collateral under Bankruptcy Code § 363, and the Debtor agreed to make monthly payments to the SBA, and to provide the SBA with a valid, enforceable, fully-perfected security interest effective as of the Petition Date, among other things.

### FCP's Unliquidated Claim

The amount of the Judgment and, therefore FCP's claim, was unliquidated, because of the share of income due to FCP from Kinky Boots is unknown.

On January 20, 2023, the Bankruptcy Court entered an *Amended Order* (ECF Doc. No. 44) establishing February 27, 2023 as the general bar date, and on February 20, 2023, FCP filed a proof of claim (POC No. 6-1) asserting a liquidated unsecured claim in the amount of $2,638,925.78, and an unliquidated claim for the share of income due from Kinky Boots.

On February 16, 2023, the Debtor filed a motion, pursuant to Bankruptcy Code §502(c) seeking to: (i) establish a procedure for estimating the unliquidated portion of FCP's claim, and (ii) estimating the unliquidated portion of FCP's claim for the purposes of distributions under the Plan (ECF Doc. No. 49). On March 10, 2023, the Bankruptcy Court entered the *Order Establishing Procedures for Debtor's Motion for Order Pursuant to 11 U.S.C. § 502(c) Authorizing Estimation of FCP Entertainment Partners, LLC's Claim and Scheduling Claim Estimation Hearing* (ECF Doc. No. 59) (the "Claim Estimation Scheduling Order"). Pursuant to the Claim Estimation Scheduling Order, the Debtor's financial advisor prepared an estimation of the unliquidated portion of FCP's claim and shared that information with FCP and its professionals who did not prepare a competing analysis or estimation. On May 3, 2023, the Debtor filed a proposed Order (ECF Doc. No. 70) allowing FCP's claim including the estimated portion. On May 10, 2023, the Debtor filed a Notice (ECF Doc. No. 75) which provided, among other things, a proposed Stipulation and Order allowing the unsuecured claim of FCP including an estimation of the unliquidated portion. On May 31, 2023, the Bankruptcy Court entered and approved the Stipulation and Order Allowing Unsecured Claim of FCP Entertainment Partners, LLC (ECF Doc. No. 81) which allowed the FCP Claim including an estimation of the unliquidated portion.

### The Extension of the Stay to Mr. Luftig

On January 13, 2023, the Bankruptcy Court entered an order granting, among other relief, the Debtor's motion to extend the automatic stay of Bankruptcy Code §362(a) to Mr. Luftig and enjoining FCP from taking any actions against Mr. Luftig or his assets (Adv. Pro. 22-01176 (JPM), ECF Doc. No. 23) (the "Stay Order").

Mr. Luftig has filed an appeal of the Judgment to the Second Circuit Court of Appeals (the "Appeal"). The Appeal is pending.

### The Debtor's Financial Advisor

On January 26, 2023, the Bankruptcy Court entered an Order (ECF Doc. No. 46) authorizing the Debtor's retention and employment of RK Consultants, LLC ("RKC") as the Debtor's financial advisor effective as of December 19, 2022. The Debtor retained RKC to assist with: (a) estimating the unliquidated portion of FCP's claim, (b) formulating financial projections to serve as a basis for the Plan and to determine the Debtor's ability to make distributions to creditors over time, and (c) creating a liquidation analysis for the Plan.

**The Debtor's Plan Process**

On March 1, 2023, the Debtor timely filed the Original Plan, and on March 27, 2023 the Debtor filed the Plan Supplement documents including a liquidation analysis, financial projections, and a draft employment agreement for Mr. Luftig. On June 30, 2023, the Debtor filed the *Declaration of Brian Ryniker in Support of Confirmation of the Debtor's Chapter 11 Plan of Reorganization Under Subchapter V of the Bankruptcy Code* (ECF Doc. No. 86) which included updated versions of the Debtor's liquidation analysis and financial projections to account for the interim between filing the Original Plan and the Confirmation Hearing.  On July 25, 2024, simultaneously with this Plan, the Debtor filed further updated versions of the Debtor's liquidation analysis and financial projections to account for the interim between filing the First Amended Plan and this Plan.  The Debtor's updated financial projections are based largely on the financial projections of certain legacy productions in which the Debtor owns interests.  The Debtor's financial advisor's ability to produce reliable and reasonable financial projections which serve as the basis for the Plan is based on the quality and timeliness of the information provided by third-parties which are not controlled by the Debtor.

On June 30, 2023, the Debtor filed the *Memorandum of Law in Support of Confirmation of the Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 84), as well as the *Declaration of Hal Luftig in Support of Confirmation of the Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 85). On July 25, 2024, simultaneously with this Plan, the Debtor filed a *Supplemental Declaration of Hal Luftig in Support of Confirmation of the Debtor's Second Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*.

On June 30, 2023, the US Trustee filed an Objection (ECF Doc. No. 87) to confirmation of the Original Plan, and on July 5, 2023, FCP filed an Objection (ECF Doc. No. 89) to confirmation of the Original Plan.

On July 6, 2023, the Debtor filed the *Declaration of Sheryl P. Giugliano Regarding the Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc.  No. 90), as well as the proposed *Joint Pretrial Order* (ECF Doc. No. 91), which was "So Ordered" on July 6, 2023 (ECF Doc. No. 92).

On July 7, 2023, the Debtor filed the *Reply in Support of Confirmation of Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 93).

On July 11, 2023, the Bankruptcy Court conducted an in-person contested Plan Confirmation Hearing.

On November 22, 2023, the Bankruptcy Court issued the Bankruptcy Court Confirmation Opinion which, among other things, made certain findings of fact and conclusions of law with respect to the confirmation of the Original Plan, and submitted certain proposed findings of fact and conclusions of law with respect to the Luftig Release and confirmation of the Original Plan.

On December 7, 2023, the Bankruptcy Court filed the *Notice of Proposed Findings of Fact and Conclusions of Law Regarding Memorandum Opinion and Order signed on 11/22/2023 on Confirmation of Small Business Plan of Reorganization Under Chapter 11* (ECF Doc. No. 120) which was signed by the Clerk of the Court on December 7, 2023, and provided notice to specific recipients through the ECF System.

On December 6 and 8, 2023, the US Trustee filed an Objection (ECF Doc. Nos. 119, 122) to the Bankruptcy Court Confirmation Opinion.

On December 20, 2023, after Conferences before the Bankruptcy Court on December 11, 2023 and December 19, 2023, the Bankruptcy Court entered, approved and So Ordered the *Amended Stipulation and Proposed Order Establishing Deadlines with Respect to Proposed Findings of Fact and Conclusions of Law (ECF Doc. Nos. 115, 120, 123, 124)* (ECF Doc. No. 129) which provided that for cause shown under Bankruptcy Rule 9033, the deadline for FCP's objections to the Bankruptcy Court Confirmation Opinion was December 26, 2023, and the deadline for responses to any party's objections to the Bankruptcy Court Confirmation Opinion was January 9, 2024. On December 26, 2023, FCP filed an Objection (ECF Doc. No. 133) to the Bankruptcy Court Confirmation Opinion, and on January 9, 2024, the Debtor filed its Response (ECF Doc. No. 136) to the US Trustee's and FCP's Objections. Mr. Luftig also filed a Statement in Response to the Objections (ECF Doc. No. 137).

On March 22, 2024, the District Court entered the District Court Order rejecting the Bankruptcy Court Confirmation Opinion.

On March 28, 2024, the Debtor filed (i) a Motion (SDNY Doc. Nos. 7 and 8) (the "Certification Motion") seeking entry of an order to certify an appeal pursuant to 28 U.S.C. §1292(b) of the District Court Order rejecting the Bankruptcy Court Confirmation Opinion, and (ii) a Notice of Appeal with the U.S. Court of Appeals for the Second Circuit (the "Second Circuit"), Case No. 24-890 (the "Second Circuit Appeal"). The US Trustee and FCP filed with the District Court timely Objections to the Certification Motion (respectively, SDNY Doc. Nos. 13 & 15), and the Debtor timely filed a Reply (SDNY Doc. No. 18). On April 30, 2024, the District Court entered a Memorandum Opinion and Order (SDNY Doc. No. 20) denying the Certification Motion.

On May 29, 2024, the Second Circuit entered an Order (2d Cir. Doc. No. 55) "so ordering" the parties Stipulation under Rule 42 of the Federal Rules of Appellate Procedure withdrawing the Second Circuit Appeal.

**Interim Professional Fees**

On September 8, 2023, the Debtor filed first applications for interim professional compensation, as follows: Ruskin Moscou Faltischek PC, attorneys for Debtor (ECF Doc. No. 103); RK Consultants, LLC, financial advisor for Debtor (ECF Doc. No. 104); CBIZ Marks Paneth LLC, tax accountant for Debtor (ECF Doc. No. 105); and Charles N. Persing as Subchapter V Trustee (ECF Doc. No. 106). The Debtor also filed a Notice of Hearing (ECF Doc. No. 107) to consider the first applications for interim compensation and reimbursement of expenses.

On October 3, 2023, the Debtor filed a Certificate of No Objection (ECF Doc. No. 110) regarding the first interim fee applications for compensation and reimbursement of expenses.

On October 4, 2023, Bankruptcy Court entered an Order (ECF Doc. No. 112) granting applications for interim professional compensation and reimbursement of expenses, subject to a ten percent (10%) holdback as agreed to by and among the Debtor, the professionals, the Subchapter V Trustee and the U.S. Trustee. As of the date of this filing of this Plan, the Debtor has paid all Allowed interim professional fees.

**Summary of Debtor's Historical Financial Condition.**[1]

Asset Summary

| Fixed Assets | $1,300.00 |
|---|---|
| Intellectual Property | Unknown |
| Cash and Deposits | $106,000.00 |
| Accounts Receivable | $0 |
| **TOTAL** | **$106,300.00** |

Liability Summary

| Secured Debt | $163,946.92[2] |
|---|---|
| Priority Unsecured Debt | $17,181.00[3] |
| Nonpriority Unsecured Debt | $328,628.92 |
| FCP Claim | $2,862,776.00 |
| **TOTAL DEBT** | **$3,372,532.84** |

Gross Revenue History

| 2019 | $1,022,715.00 |
|---|---|
| 2020 | $426,219.89[4] |
| 2021 | $150,443.00[5] |
| 2022[6] | $1,099,146.59 |

**ARTICLE II**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

As required by Bankruptcy Code §§ 1122 and 1123, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive under the Plan. The

---

[1] These figures are taken from the Debtor's Schedules of Assets and Liabilities (ECF Doc. No. 23) and Statement of Financial Affairs (ECF Doc. No. 22).

[2] This is the SBA's Secured Claim which was noted as unsecured in the Debtor's Schedules of Assets and Liabilities (ECF Doc. No. 23).

[3] This amount includes the Proof of Claim filed by the Internal Revenue Service (P.O.C. No. 5-1), as amended, in the amount of $3,452.99.

[4] This amount does not include non-business revenue in the amount of $66,915.00 received in connection with a forgiven Paycheck Protection Program loan and a Shuttered Venue Operations Grant, as disclosed in the Debtor's Statement of Financial Affairs (ECF Doc. No. 22).

[5] This amount does not include non-business revenue in the aggregate amount of $680,983.77 received in connection with a forgiven Paycheck Protection Program loan and a Shuttered Venue Operations Grant, each as disclosed in the Debtor's Statement of Financial Affairs (ECF Doc. No. 22).

[6] This is for the period January 1, 2022 through November 30, 2022, prior to the Petition Date.

Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to which a Claimant is otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

The Plan provides for payment of "Allowed" claims which are defined in Section 8.03. Allowed Claims generally are claims that: (a) are allowed by final order of the Court, (b) estimated by final order of the Bankruptcy Court, or (c) claims that are listed on the Debtor's Schedules and are not listed as disputed, contingent, or unliquidated.

**Unclassified Claims**.

Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code §1123(a)(1).

**Administrative Expenses**.

The Debtor must pay all Allowed Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date shall be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the holder of an Allowed Administrative Expense or court order. If the Administrative Expense is disputed, payment will be made promptly after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

(a)    Debts that the Debtor incurred after the Petition Date for goods and services related to the customary operation of the Debtor's business. These obligations will be paid on an ongoing basis in accordance with the Debtor's customary business practices and the terms between the Debtor and the applicable counterparties.

(b)    The value of the goods received by the Debtor in the ordinary course of business within twenty (20) days prior to Petition Date, is an Administrative Expense.

(c)    Administrative Expenses also include any postpetition fees and expenses owed to professionals, including the allowed claim of the Subchapter V Trustee for fees incurred and reimbursement of expenses, and for the Debtor's attorney, financial advisor, and accountants employed during the Chapter 11 Case.

(d)    The Subchapter V Trustee shall be paid for services rendered and expenses incurred in the Case as an Administrative Expense Claim under Bankruptcy Code §503(b)(2). All fees and expenses requested by the Debtor's professionals and the Subchapter V Trustee are subject to review and approval by the Court under Bankruptcy Code §§ 329 and 330.

The following chart lists the Debtor's estimated unpaid Administrative Expenses through September 30, 2024, and their proposed treatment under the Plan:

7

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional fees (subject to final Bankruptcy Court approval) and Subchapter V Trustee | $211,056.00[7] | Paid with cash on hand |

**Priority Tax Claims.**

The only Priority Tax Claim was the claim of the Internal Revenue Service in the amount of $3,452.99, represented by amended Proof of Claim No. 5-2 filed with the Court. On November 3, 2034, the Internal Revenue Service filed a third amended Proof of Claim No. 5-3 reflecting that the amounts due were paid and there is no further amount due. The Priority Tax Claim is not impaired. The Priority Tax Claims should they arise again in the ordinary course shall be paid promptly after the Effective Date, or over a five (5) year period in accordance with Bankruptcy Code §1129(a), at the prime rate of interest as published by the Wall Street Journal, or similar publication. The holder of Priority Tax Claim shall not be entitled to vote on the Plan.

**Classes of Claims and Interests**.

A.  Priority Claims (Class 1)

Class 1 consists of a Priority wage Claim under Bankruptcy Code § 507(a)(4) in the amount of $13,650.00 which was listed in the Debtor's Schedules and shall be paid in cash promptly after the Effective Date and, therefore, the holder of the Class 1 Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f). Therefore, the holder of the Class 1 Claim is not entitled to vote to accept or reject the Plan.

B.  Secured Claims (Class 2)

Class 2 consists of the Allowed Secured Claim of the SBA in the amount of $163,946.92. The holder of the Class 2 Claim, the SBA, shall continue to receive payments in accordance with the pre-Petition Date agreement between the SBA and the Debtor in connection with the EIDL, and is therefore unimpaired under the Plan. Therefore, the holder of the Class 2 Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f) and is not entitled to vote to accept or reject the Plan.

C.  FCP Claim (Class 3)

Class 3 consists of the Allowed FCP Claim in the amount of $2,862,776.00, pursuant to the "Stipulation and Order Allowing Unsecured Claim of FCP Entertainment Partners, LLC," approved by the Bankruptcy Court on May 31, 2023 (ECF Doc. No. 81). The Allowed Class 3 Claim shall be paid its Pro Rata Share of the Luftig Settlement Payment on the Effective Date (together with the Holders of Allowed Class 4 Claims) and the Debtor's Disposable Income over

---

[7] This amount reflects the remaining balance due to the Debtor's professionals and the Subchapter V Trustee held-back from the first interim fee applications, accrued fees and expenses due to the Debtor's professionals and the Subchapter V Trustee through June 30, 2024 which amounts are subject to entry of an order by the Bankruptcy Court after properly noticed fee applications, and estimated fees and expenses through September 30, 2024, which are also subject to entry of an order by the Bankruptcy Court after properly noticed fee applications.

8

the life of the Plan. The holder of the FCP Claim is impaired under the Plan and is entitled to vote to accept or reject the Plan  The Debtor estimates that FCP as the holder of the Class 3 Claim will receive distributions equal to approximately 25% of its Allowed Claim.

D.  General Unsecured Claims (Class 4)

Class 4 consists of the Allowed Claims of non-priority unsecured creditors, other than the FCP Claim. The Class 4 Claims are estimated to total $328,628.92. The holders of Allowed Class 4 Claims will receive their Pro Rata Share of the Disposable Income over the life of the Plan.

The Debtor estimates that holders of Class 4 Claims will receive distributions equal to approximately 25% of their Allowed Claims.

E.  Insider Claims (Class 5)

Class 5 consists of the Insider Claims which will be liquidated and allowed as Allowed General Unsecured Claims. Each of the Class 5 Claims shall be subordinated in right of payment to the Debtor's obligations to make payments and distributions under the Plan to holders of higher priority claims.

The holders of Class 5 Claims will receive no distribution under the Plan and are deemed to have rejected the Plan. Therefore, Holders of Class 5 Claims will not vote to accept or reject the Plan.

F.  Equity Interests (Class 6)

Class 6 consists of the holder of the equity interests in the Debtor, Mr. Luftig. The holder of the Class 6 Interest will receive no distributions under the Plan on account of his equity interest in the Debtor. However, Mr. Luftig will retain his equity interest in the Debtor after the confirmation of the Plan. The holder of the Class 6 Interest is unimpaired under the Plan and is deemed to accept the Plan.

## ARTICLE III

## IMPLEMENTATION OF THE PLAN

**Means for Implementation of the Plan**.

The Plan will be funded with the Debtor's Disposable Income, the Luftig Settlement Payment, and the Backstop Commitment (only to the extent it is necessary to be drawn upon). In addition, Mr. Luftig has agreed to execute the Employment Agreement, not to require rent payments from the Debtor, and to subordinate all Insider Claims as well as payments due under the Luftig Secured Note and Security Agreement as described below. The Luftig Settlement Payment shall be made within ten (10) days after entry of the Final Confirmation Order.

On the Effective Date, all property of the Debtor, tangible and intangible, will revert to the Debtor, free and clear of all Claims, except as provided in the Plan. Upon the Effective Date, pursuant to Bankruptcy Code §1181(a), Mr. Luftig shall continue to own the Interests in the Debtor as the Reorganized Debtor.

Mr. Luftig will continue to serve as the President of the Debtor after confirmation of the Plan pursuant to the terms of the Employment Agreement, if the Plan is confirmed including the Luftig Release. If the Plan is confirmed under Bankruptcy Code §1191(a) or (b), except as

otherwise provided in the Plan or the Confirmation Order, the Debtor shall make all Plan payments under the Plan.

The Luftig Cash Contribution will be memorialized by the Luftig Secured Note and Security Agreement which shall be an enforceable obligation of the Reorganized Debtor, but the payment of the Luftig Secured Note and Security Agreement will be subordinated in right of payment to the payment of all amounts due to be paid under the Plan.

**Claim Objections**.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority to: (a) file, withdraw, or litigate to judgment, any objections to Claims or Interests; and (b) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Avoidance Actions.

Any objections to Claims or Interests shall be filed on or before the Claims Objection Bar Date. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims or Interests set forth in this paragraph at any time, including before or after the expiration of one hundred eighty days after the Effective Date, in its discretion or upon request by the Debtor or any party in interest.

**Avoidable Transfers; Settlement of Claims and Interests**.

Avoidance Actions will not be pursued by the Debtor or the Reorganized Debtor, except as set forth herein.

On October 17, 2022, the Debtor transferred $250,000.00 to Mr. Luftig in partial repayment of a $414,505.74 loan made by Mr. Luftig to the Debtor, which was memorialized by a promissory note dated August 19, 2022. Mr. Luftig has asserted certain defenses that the payment was made in the ordinary course of the Debtor's business and in accordance with the terms of the promissory note. In light of the defenses asserted, and the cost and risk of litigation, the Plan will seek Bankruptcy Court approval of the settlement of that potential claim in exchange for a one-time payment in the amount of $50,000.00 by Mr. Luftig to the Debtor promptly after the Effective Date (the "Luftig Settlement Payment"). The Luftig Settlement Payment is in addition to, and not included in the Luftig Cash Contribution. Mr. Luftig will receive the Luftig Settlement Claim which shall be an Allowed Class 5 Claim in the amount of $50,000 pursuant to Bankruptcy Code §502(h), which will be subordinated in right of payment along with Mr. Luftig's other allowed claims against the Debtor as a Class 5 Claim.

Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Avoidance Actions (including the potential avoidance action against Mr. Luftig described above), and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Avoidance Actions, and controversies pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy

Court's approval of such compromise and settlement under Bankruptcy Code §1123 and Bankruptcy Rule 9019 of all such Claims, Interest, Avoidance Actions, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtor, its Estate, and holders of all Claims and Interests.

**Treatment of Executory Contracts and Unexpired Leases**.

All executory contracts and unexpired leases, not otherwise assumed or rejected by the Debtor during the case, shall be assumed.  Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any contract or lease is an executory contract or unexpired lease or that the Debtor has any liability thereunder.

**Effect of Confirmation of the Plan**.

After entry of the Confirmation Order and upon the Effective Date, all debts of the Debtor shall be deemed fixed and adjusted according to the Plan, and the Debtor and the Reorganized Debtor shall have no liability on account of any Claims, except as set forth in the Plan and the Confirmation Order.

**Projections in Support of the Plan**.

The Debtor has shared with FCP's counsel and Mr. Luftig's counsel financial information including financial projections calculating Disposable Income prepared by RKC in connection with preparing the Original Plan.   The Debtor shared its financial projections and related relevant financial information in the Plan Supplement filed March 27, 2023 (ECF Doc. No. 63), updated the financial projections and liquidation analysis on June 30, 2023 (ECF Doc. No. 86), and then updated the financial projections and liquidation analysis a second time on July 25, 2024 simultaneously with the filing of this Plan. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE IV

## FEASIBILITY OF THE PLAN

Pursuant to Bankruptcy Code §§ 1129(a)(11) and 1191(a), the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The Debtor's financial projections demonstrate that the Debtor will have the Disposable Income to make the required payments under the Plan.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. The liquidation analysis annexed to the Plan Supplement (ECF Doc. No. 63) and updated thereafter on June 30, 2023 (ECF Doc. No. 86) and again on July 25, 2024, demonstrates that Claimants will receive more under the Plan compared to a liquidation.

11

## ARTICLE V

## DISCHARGE, EXCULPATION AND RELEASE

**Discharge**. If the Plan is confirmed under Bankruptcy Code §1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Court shall grant the Debtor a discharge of all debts provided in Bankruptcy Code §1141(d)(1)(A), and all other debts allowed under Bankruptcy Code §503 and provided for in this Plan, except any debt: (a) on which the last payment is due after the first five (5) years of the Plan; or (b) if applicable, of the kind specified in Bankruptcy Code §523(a).

**Binding Effect**. Except as provided in Bankruptcy Code §§ 1141 or 1192, as applicable, the provisions of this Plan shall, upon entry of the Confirmation Order, bind the Debtor, each and every Claimant and holder of an Interest, and each party in interest, whether or not the Claim of such Claimant or Interests of such holder or party is provided for by the Plan and whether or not such Claimant or Interest holder, or party has accepted or has rejected the Plan. All payments made under the Plan will be in full and final satisfaction of the Allowed Claims of creditors.

**Injunction**.   EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS, INCLUDING WITHOUT LIMITATION, FCP, ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE DEBTOR'S PROPERTY, OR THE ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING RELATED TO THE JUDGMENT OR THE FCP CLAIM  AND ANY CLAIMS THAT ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE (COLLECTIVELY, THE "RELEASED CLAIMS"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY. UNLESS OTHERWISE PROVIDED HEREIN, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE (FOR THE AVOIDANCE OF DOUBT, THE INJUNCTION OBTAINED IN ADVERSARY PROCEEDING 22-01176 APPLIES ONLY TO FCP), SHALL REMAIN IN FULL FORCE AND EFFECT

UNTIL THE EARLIEST OF THE TIME THE CHAPTER 11 CASE IS CLOSED, DISMISSED, OR THE DISCHARGE IS GRANTED OR DENIED.

**Release by the Debtor**. PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTOR SHALL RELEASE UNCONDITIONALLY, AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY: (A) THE SBA AND ITS COUNSEL; (B) THE DEBTOR'S ADVISORS INCLUDING ATTORNEYS, ACCOUNTANTS AND FINANCIAL ADVISORS; (C) THE SUBCHAPTER V TRUSTEE; AND (D) MR. LUFTIG AND HIS COUNSEL AND FINANCIAL ADVISORS (COLLECTIVELY, THE "RELEASED PARTIES"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**Exculpation**. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE DEBTOR, NOR ITS RETAINED ADVISORS, ACCOUNTANTS, AND ATTORNEYS, NOR THE SUBCHAPTER V TRUSTEE SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE THROUGH THE EFFECTIVE DATE OF THE PLAN IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR AND ITS OFFICER SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.

**Good Faith**. Entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§ 1125(e) and 1129(a)(3), with respect to the foregoing.

## ARTICLE VI

## CONFIRMATION AND EFFECTIVE DATE

**Conditions Precedent to Confirmation**.  The following are conditions precedent to Confirmation of the Plan: (a) all terms, conditions and provisions of the Plan are approved in the Confirmation Order; and (b) the Debtor shall have sufficient Cash, including use of the Luftig Settlement Payment (a condition to the Effective Date), to pay in full all Allowed Administrative Expenses, including Professional Fee Claims (except to the extent that holders of such Allowed Claims agree to different treatment), all Allowed Priority Claims, including Priority Tax Claims, and to make an initial distribution in the amount of $50,000.00 to FCP the Holder of the Class 3 Claim and Holders of Allowed Class 4 Claims, *pro rata*,. The conditions precedent set forth above may be waived by the Debtor, only upon reasonable notice to the Subchapter V Trustee and the U.S. Trustee.

**Conditions Precedent to the Effective Date**.  The following are the conditions precedent to the Effective Date of the Plan: (i) the Confirmation Order shall have become a Final Order; (ii) the Debtor shall have received the Luftig Settlement Payment; and (iii) the Debtor or its professionals are able to confirm the availability of the Back-stop Commitment.

**Title to Assets**. If the Plan is confirmed under Bankruptcy Code §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the Debtor's property dealt with under the Plan is free and clear of all Claims of Creditors of the Debtor.

If the Plan is confirmed under Bankruptcy Code §1191(b), property of the estate includes, in addition to the property specified in under Bankruptcy Code §541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the Petition Date but before the Case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in under Bankruptcy Code §1185, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the Debtor's estate.

**Binding Effect**. If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**Retention of Jurisdiction by the Bankruptcy Court**. The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case with regard to the following matters:  (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed

under Bankruptcy Code §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, including the estimation of Claims, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**Corporate Existence**. As the Effective Date, the certification of incorporation, bylaws, or articles of organization, as applicable, of the Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all actions (including, if applicable, corporation actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, or after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized under the applicable law, order, rule, or regulation, including without limitation, such authorization to wind down, sell, or otherwise liquidation any and all remaining Assets, and take further action to dissolve the Debtor upon or after the filing of a Final Decree.

**Final Decree**. Once the Estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor shall file a motion with the Court to obtain a final decree to close the Case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE VII

## ATTACHMENTS

The following documents are included in the Plan Supplement filed March 27, 2023 (ECF Doc. No. 63), updated with respect to Exhibits A (Financial Projections/Disposable Income Analysis) and B (Liquidation Analysis) on June 30, 2023 (ECF Doc. No. 86) as Exhibits A-1 (updated Financial Projections) and B-1 (updated Liquidation Analysis) , and further updated as Exhibit A-2 (Financial Projections/Disposable Income Analysis) and Exhibit B-2 (Liquidation Analysis) on July 24, 2024 filed with the Second Amended Plan and incorporated herein:

Exhibit "A" Financial Projections/Disposable Income Analysis

Exhibit "B" Liquidation Analysis

Exhibit "C" Form of Employment Agreement with Hal Luftig

Exhibit "D" Form of Secured Note and Security Agreement with Hal Luftig

## ARTICLE VIII

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code, or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

"**Administrative Expense**" means any cost or expense of administration of the Case entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Claims for fees and expenses of the Debtor's professionals and

the Subchapter V Trustee; (ii) Claims relating to goods received by the Debtor within twenty (20) days before the Petition Date in the ordinary course of the Debtor's business; and (iii) any actual, necessary costs and expenses of preserving the Debtor's Estate and of operating the Debtor's business (but only to the extent they are due or payable on or before the Effective Date).

"**Administrative Expense Bar Date**" means the deadline for filing requests for payment of Administrative Expenses (other than requests for payment of Administrative Expenses arising under section 503(b)(9) of the Bankruptcy Code) which: (a) with respect to Administrative Expenses other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

"**Allowed**" means a Claim, other than an Administrative Expense or Interest in the Debtor, which is: (i) listed in the Debtor's Schedules filed in the Chapter 11 Case as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtor, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court.  To the extent permitted under Bankruptcy Code §506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtor, or the Reorganized Debtor.

"**Allowed Administrative Expense**" means all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

"**Allowed General Unsecured Claim**" means any Allowed Claim that is not an Allowed Administrative Expense, Allowed Secured Claim, Allowed Priority Claim, Allowed FCP Claim, or Insider Claim.

"**Allowed Priority Claim**" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§507(a)(3) through (a)(6).

"**Allowed Secured Claim**" means that the Allowed Secured Claim of the SBA pursuant to the Stipulation and Order approved by the Bankruptcy Court (ECF Doc. No. 47).

"**Allowed Priority Tax Claim**" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §507(a)(8).

"**Avoidance Actions**" means any and all claims, suits and causes of action held by (a) the Debtor under Bankruptcy Code §§544, 547, 548, 549 or 550, and (b) any transferee of a transfer avoidable under Bankruptcy Code §549 received from the Debtor from and after the Petition Date, but prior to the Effective Date.

"**Back-stop Commitment**" means the agreement by Mr. Luftig to contribute up to an aggregate of $100,000.00 in accordance with Bankruptcy Code §1191(c)(3)(B), in the event the Debtor cannot make the payments required by the Plan.

16

"**Bankruptcy Code**" means title 11 of the United States Code, as amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, in which the Chapter 11 Case is pending.

"**Bankruptcy Court Confirmation Opinion**" means the Bankruptcy Court's "Memorandum Opinion and Order on Confirmation of Small Business Plan of Reorganization Under Chapter 11," dated November 22, 2023 (ECF Doc. No. 115).

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Chapter 11 Case**"or "**Case**" means the Debtor's chapter 11 case filed in the Bankruptcy Court, Case No. 22-11617 (JPM).

"**Claim**" shall mean a claim against the Debtor, as defined in Bankruptcy Code §101(5).

"**Claims Objection Bar Date**" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) (i) with respect to Administrative Expenses (other than Professional Fee Claims and Administrative Claims arising under Bankruptcy Code § 503(b)(9)), sixty (60) days after the Administrative Expenses Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims), 180 days after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Debtor, as approved by an order of the Bankruptcy Court for objecting to such Claims.

"**Claimant**" means the holder of a Claim**.**

"**Confirmation Date**" means the date the Confirmation Order is entered by the District Court in the Case.

"**Confirmation Hearing**" means the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means a Final Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code § 1191 and other applicable law.

"**Creditor**" shall have the meaning set forth in Bankruptcy Code §101(10).

"**Debtor**" means Hal Luftig Company, Inc., as debtor and debtor-in-possession in the Chapter 11 Case.

"**Disposable Income**" shall have the meaning given to it in Bankruptcy Code § 1191(d), as calculated and projected by RKC and set forth in the Plan Supplement.

"**Disputed Claim**" means any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtor and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtor or the Reorganized Debtor has asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim

17

if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

"**Effective Date**" means the first day on which the Confirmation Order has become a Final Order and on which all the conditions to the Effective Date in the Plan have been satisfied or waived.

"**Employment Agreement**" means the employment agreement between the Debtor and Mr. Luftig a proposed form of which is annexed to the Plan Supplement as Exhibit C, and which shall provide, among other things, for Mr. Luftig's continued, non-exclusive, employment by the Debtor as the Debtor's president for a term at least as long as the period of time required for the Debtor to make all of the payments under the Plan.

"**Estimation Order**" means an order of the Bankruptcy Court estimating for distribution purposes under the Plan, under Bankruptcy Code §502(c), the allowed amount of any Claim in the Case.

"**FCP**" means FCP Entertainment Partners, LLC.

"**FCP Claim**" shall have the meaning set forth in Article II of the Plan.

"**Final Order**" means: (a) an order or a judgment of the Bankruptcy Court or the District Court; or (b) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, certiorari or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

"**General Unsecured Claim**" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, FCP Claim, Affiliate Claim, or Secured Claim.

"**Insider Claims**" means the following Claims which shall be determined to be Allowed Claims under the Plan without any further action, and such Claims shall be subordinated in right of payment to the payment of all other Allowed Claims under the Plan: (i) the Luftig Note Claim; (ii) the Luftig Settlement Claim; (iii) the Luftig Indemnification Claim; (iv) the Luftig Deferred Compensation Claim; and (v) the general unsecured claim of Luftig-Haffner-Chapman Theatrical Development Fund LLC in the amount of $50,000.00.

"**Judgment**" means the Order and Final Judgment, dated December 7, 2022, of the District Court in the cases titled, FCP Entertainment Partners, LLC v. Hal Luftig Co., Inc., et al. (Civil Action No. 22-cv-02768-LAK), and Hal Luftig v. FCP Entertainment Partners, LLC (Civil Action No. 22-cv-03697-LAK).

"**Luftig Deferred Compensation Claim**" means Mr. Luftig's general unsecured claim for unpaid and deferred compensation owed to him as of the Petition Date filed by Mr. Luftig in the Chapter 11 Case and identified as POC No. 7-1, which shall be a Class 5 Insider Claim.

18

"**Luftig Indemnification Claim**" means the claim for indemnification as provided for under the Debtor's By-Laws, filed by Mr. Luftig in the Chapter 11 Case identified as POC No. 2-1 on the Bankruptcy Court's claims register, which for purposes of the Plan will be fixed and allowed in the amount of $1 million and shall be a Class 5 Insider Claim.

"**Luftig Note Claim**" means Mr. Luftig's $164,505.74 unsecured claim on account of the Debtor's promissory note, dated August 19, 2022, in the original principal amount of $414,505.74, which shall be a Class 5 Insider Claim.

"**Luftig Secured Note and Security Agreement**" means the secured promissory note in the amount of $1 million and corresponding security agreement in the forms filed with the Plan Supplement (ECF Doc. No. 63) to be executed by the Debtor in favor of Mr. Luftig in connection with the confirmation of the Plan which will provide Mr. Luftig with a security interest in all of the Debtor's assets, subject and subordinated to the Allowed Secured Claim held by the SBA and the payment of all Allowed Claims under the Plan. The Luftig Secured Note and Security Agreement will be provided by the Debtor to Mr. Luftig on account of Mr. Luftig's subordinated claims in the Chapter 11 Case.

"**Luftig Settlement Claim**" means Mr. Luftig's Allowed Claim in the amount of $50,000.00 on account of the Luftig Settlement Payment in connection with the Debtor's claim against Mr. Luftig regarding a disputed potential preferential transfer under Bankruptcy Code §547, without the need for Mr. Luftig to file any further proofs of claim, and which shall be a Class 5 Claim.

"**Luftig Settlement Payment**" means the $50,000.00 payment Mr. Luftig will make on or as soon as reasonably practicable after the Effective Date to resolve the Debtor's claim against Mr. Luftig regarding a disputed potential preferential transfer under Bankruptcy Code §547.

"**Original Plan**" means the Debtor's "Small Business Plan of Reorganization Under Subchapter V of the Bankruptcy Code," dated March 1, 2023 (ECF Doc. No. 55), including the "Plan Supplement."

"**Petition Date**" means December 1, 2022.

"**Plan**" means the Debtor's Second Amended Small Business Plan of Reorganization, as it may be further amended or modified.

"**Plan Supplement**" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may thereafter be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan, the Bankruptcy Code, the Bankruptcy Rules, and applicable law), filed by the Debtor on March 27, 2023 (ECF Doc. No. 63), as updated with respect to Exhibits A (Financial Projections) and B (Liquidation Analysis) on June 30, 2023 (ECF Doc. No. 86), as further updated with respect to Exhibits A (Financial Projections/Disposable Income Analysis) and B (Liquidation Analysis) on July 24, 2024, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

"**Professional Fee Claim**" means any Administrative Expense by a professional retained by the Debtor by Final Order of the Bankruptcy Court, and any Claim held by the Subchapter V Trustee for purposes of this Plan, for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expense have not been paid pursuant to an order of the Bankruptcy Court.

"**Pro Rata Share**" means the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims and Undetermined Claims of that particular Class.

"**Released Parties**" shall have the meaning set forth in Article V of the Plan.

"**Released Claims**" means the claims released under Article V of the Plan.

"**Reorganized Debtor**" means the Debtor after the Effective Date.

"**Schedules**" means the Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court (ECF Doc. No. 23) and Statement of Financial Affairs (ECF Doc. No. 22), as they may be amended pursuant to the Bankruptcy Rules.

"**Stay Order**" shall have the meaning provided in Article 1.03 of the Plan.

"**Subchapter V Trustee**" means Charles N. Persing, in his capacity as the Subchapter V Trustee in the Chapter 11 Case appointed on the Petition Date by the U.S. Trustee (ECF Doc. No. 9).

"**U.S. Trustee**" means the Office of the United States Trustee for Region 2.

## ARTICLE IX

**Modification of Plan**. The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Bankruptcy Code §1193(a). The Debtor respectfully submits that the modifications contained herein are permissible under Bankruptcy Code §1193 because the Plan satisfies the requirements of Bankruptcy Code §1122 (classification of claims and interests are still satisfied) and §1123 (the requirements for confirmation of the Plan were satisfied at the July 11, 2023 Confirmation Hearing and thereafter under the First Amended Plan and the modifications did not remove any of those provisions, only those relating to the Luftig Release). Votes submitted by creditors' and parties in interest to accept or reject the Plan shall remain unchanged nless a creditor or party in interest affirmatively changes its vote. If the Plan is confirmed under Bankruptcy Code section 1191(a), the Debtor may also seek to modify the Plan at any time after entry of the Confirmation Order only if: (a) the Plan has not been substantially consummated; and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing. If the Plan is confirmed under Bankruptcy Code section 1191(b), the Debtor may seek to modify the Plan at any time only if: (i) it is within three (3) years of the Confirmation Date, or such longer time not to exceed five (5) years, as fixed by the Bankruptcy Court; and (ii) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**Notices**. Notices shall be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

> If to the Debtor:
> Ruskin Moscou Faltischek P.C.
> East Tower, 15th Floor
> 1425 RXR Plaza
> Uniondale, New York 11556-0190
> (516) 663-6600
> Sheryl P. Giugliano

Michael S. Amato
sgiugliano@rmfpc.com
mamato@rmfpc.com

If to the SBA:
U.S. Small Business Administration
Attn: SBA Disaster Loan Service Center
2 North 20th Street, Suite 320
Birmingham, AL 35203

U.S. Small Business Administration
National Disaster Loan Resolution Center
200 West Santa Ana Blvd.
Santa Ana, CA 92701
Attn: Officer, manager, authorized agent

Jeffrey H. Schervone
U.S. Small Business Administration
26 Federal Plaza, Room 3100
New York, NY 12078

Alyssa B. O'Gallagher
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
Alyssa.O'Gallagher@usdoj.gov

If to FCP:
Lippes Mathias
Attn: John A. Mueller
50 Fountain Plaza 1700
Buffalo, NY 14202
jmueller@lippes.com

If to Mr. Luftig:
Martin J. Foley, a PLC
601 South Figueroa Street, Suite 2050
Los Angeles, CA 90017
martin@mjfoleylaw.com

If to the U.S. Trustee:
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

21

Attn: Paul Schwartzberg
paul.schwartzberg@usdoj.gov

If to the Subchapter V Trustee:
Charles N. Persing, CAP/CFF, CVA, CIRA, CFE
c/o Bederson LLP
100 Passaic Avenue, Suite 310
Fairfield, NJ 07004
cpersing@bederson.com

If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Bankruptcy Court, or, if none, at its address set forth in the Schedules.

**Reservation of Rights**. Nothing contained herein shall prohibit the Debtor or the Reorganized Debtor from prosecuting or defending any of the rights of the Debtor's estate.

**Severability**. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

**Successors and Assigns**. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

**Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

**Section and Article References**.  Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

**Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Dated: New York, New York          **HAL LUFTIG COMPANY, INC.**
      November 21, 2024

                                      /s/ *Hal Luftig*_____
                                        Name:  Hal Luftig
                                        Title:    President