**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*FOR PUBLICATION*

In re:

Chapter 11 (Subchapter V)

HAL LUFTIG COMPANY, INC.,

Case No. 22-11617 (JPM)

Debtor.

## MEMORANDUM OPINION AND ORDER ON CONFIRMATION OF DEBTOR'S THIRD AMENDED SMALL BUSINESS PLAN OF REORGANIZATION UNDER CHAPTER 11

*A P P E A R A N C E S:*

**RUSKIN MOSCOU FALTISCHEK, P.C.**
*Counsel for Debtor Hal Luftig Company, Inc.*
East Tower, 15th Floor, 1425 RXR Plaza
Uniondale, NY 11556
By:    Michael S. Amato, Esq.
         Sheryl P. Giugliano, Esq.

**MARTIN J. FOLEY, PLC**
*Counsel for Hal Luftig*
601 S. Figueroa Street, Suite 2000
Los Angeles, CA 90017
By:    Martin J. Foley, Esq.

**LIPPES MATHIAS LLP**
*Counsel for FCP Entertainment Partners, LLC*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202–2216
By:    John A. Mueller, Esq.
         Christopher M. Fisher, Esq.

**BEDERSON, LLP**
*Subchapter V Trustee*
347 Mount Pleasant Avenue
West Orange, NJ 07052
By:    Charles N. Persing, CPA

**WILLIAM K. HARRINGTON**
*United States Trustee*
One Bowling Green, Room 534
New York, NY 10004
By:    Paul Schwartzberg, Esq.

**I.    INTRODUCTION**.................................................................................................................1

**II.    JURISDICTION**................................................................................................................3

**III.    BACKGROUND**...............................................................................................................4

    A. THE DEBTOR'S SUBCHAPTER V BANKRUPTCY AND THE LUFTIG STAY ................4

        *1.    Key Claims Against The Debtor's Estate* .......................................................6

        *2.    The Debtor's Initial Plan and The Filing of The Third Amended Plan* ....................7

    B. SUMMARY OF THE THIRD AMENDED PLAN ..............................................................11

    C. THE PLAN'S VOTING RESULTS...................................................................................13

    D. THE PARTIES' CONTENSIONS ...................................................................................14

        *1.    The Debtors' Memorandum of Law in Support of Confirmation*...........................14

        *2.    The FCP Final Objection* ...........................................................................17

    E. TESTIMONY AT THE CONFIRMATION HEARING .........................................................18

**IV.    ANALYSIS** ..................................................................................................................22

    A. THE CONFIRMATION REQUIREMENTS .....................................................................22

    B. THE LUFTIG STAY EXTENSION ................................................................................24

        *1.    The Law on Extending The Automatic Stay to Non-Debtor Parties* ........................24

        *2.    The Luftig Stay Extension's Duration Does Not Render It Impermissible* ...............27

        *3.    The Luftig Stay Extension is Necessary to The Debtor's Successful Reorganization* ...........29

        *4.    The Luftig Stay Extension Does Not Render The Third Amended Plan "Unfair and Inequitable"* ..........33

    C. FCP'S OTHER ARGUMENTS CONCERNING THE THIRD AMENDED PLAN'S FAIRNESS AND EQUITABILITY ..........35

**V.    CONCLUSION** .............................................................................................................38

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.   <u>INTRODUCTION</u>

This case presents the question of whether a Chapter 11 Subchapter V debtor can confirm, over the objection of its main unsecured creditor, a plan of reorganization that includes a continued extension of the automatic stay to a non-debtor — Hal Luftig ("<u>Mr. Luftig</u>"), the Debtor's president — for the five-year life of the contemplated plan.

Pending before the Court is the request of Debtor Hal Luftig Company, Inc. (the "<u>Debtor</u>") to confirm the Debtor's *Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Third <u>Amended Plan</u>").  Docket No. 172.[1]  The Debtor supports its request with the *Memorandum of Law (I) in Support of Confirmation of Debtor's Third Amended Small Business Plan of Reorganization under Chapter 11 of the Bankruptcy Code, and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC* (the "<u>Memorandum of Law</u>").[2]  Docket No. 173.  The Third Amended Plan is also supported by: (i) the *Declaration of Brian Ryniker in Support of Confirmation of Debtor's Chapter 11 Plan of Reorganization under Subchapter V of the Bankruptcy Code, and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC*, and the exhibits thereto (the

---

[1]   References to "Docket No. __" are to filings entered on the docket in this bankruptcy case, No. 22–11617. References to "Claim No. __" are to proofs of claim filed on the claims register in this bankruptcy case. References to "AP Docket No. __" are to filings entered on the docket in the related adversary proceeding styled *Hal Luftig Company, Inc. v. FCP Entertainment Partners, LLC*, Adversary Proceeding No. 22-01176.  References to "Bankruptcy Code § __ or Code § __" are to Title 11 of the United States Code. References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure.

[2]   The Memorandum of Law, the November 2024 Ryniker Declaration, and the November 2024 Luftig Declaration contain responses to certain arguments raised by the Debtor's unsecured judgment creditor, FCP Entertainment Partners, LLC ("<u>FCP</u>") in its objection to prior versions of the Debtor's proposed plan.  Since the Third Amended Plan's filing, FCP has filed a *Final Objection to Confirmation of Amended Plan* (the "<u>Final Objection</u>") and explicitly withdrawn its prior objections.  Final Obj'n at 4, Docket No. 190 ("By filing [the Final] Objection, FCP hereby expressly withdraws the Objection to the Second Amended Plan…").  Accordingly, for the analysis in this opinion, the Court only considers FCP's arguments set forth in the Final Objection, and will not address any responses to arguments that have since been withdrawn.

"November 2024 Ryniker Declaration"),[3] Docket No. 174; (ii) the *Declaration of Hal Luftig (I) in Support of Confirmation of Debtors' Small Business Plan of Reorganization under Chapter 11 of the Bankruptcy Code, and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC,* and the exhibits thereto (the "November 2024 Luftig Declaration"),[4] Docket No. 175; (iii) the *Declaration of Sheryl P. Giugliano Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtor's Small Business Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Giugliano Voting Declaration"), Docket No. 90; and (iv) the *Supplemental Declaration of Sheryl P. Giugliano Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtors Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Giugliano Supplemental Declaration," together with the Giugliano Voting Declaration, the "Giugliano Declarations"), Docket No. 179.

The confirmation hearing for the Third Amended Plan was originally scheduled for December 19, 2024. However, at FCP's request, the Court adjourned the confirmation hearing and instead held a status conference on December 19, 2024. *See* Memorandum Endorsed Order Re: Status Conference, Docket No. 184. At that conference, the Court addressed certain procedural issues regarding the confirmation timeline, adjourned the confirmation hearing to January 17, 2025, and extended the deadline for FCP to object to confirmation to January 10, 2025. *See* Hr'g

---

[3]     The November 2024 Ryniker Declaration incorporates by reference the *Declaration of Brian Ryniker in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization Under Subchapter V of the Bankruptcy Code* (the "July 2024 Ryniker Declaration"), Docket No. 156. *See* November 2024 Ryniker Declaration ¶ 5, Docket No. 174. The July 2024 Ryniker Declaration was previously filed on July 25, 2024 in support of confirmation of the Debtor's prior plan.

[4]     The November 2024 Luftig Declaration incorporates by reference the *Declaration of Hal Luftig in Support of Confirmation of Debtor's Second Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "July 2024 Luftig Declaration"), Docket No. 157. *See* November 2024 Luftig Declaration ¶ 3, Docket No. 175. The July 2024 Luftig Declaration was previously filed on July 25, 2024 in support of confirmation of the Debtor's prior plan.

Tr. from December 19, 2024, Docket No. 186.  On January 10, 2025, FCP filed its Final Objection.  *See* Final Obj'n, Docket No. 190.

On January 10, 2025, the parties submitted the *Amended Joint Pretrial Order* (the "Amended Pretrial Order"), which was so-ordered by the Court on January 13, 2025.  *See* Am. Pretrial Order, Docket No. 192.

The Court heard evidence and arguments of counsel at a hearing on January 17, 2025 (the "Confirmation Hearing").  In considering the parties' requests and arguments, the Court has reviewed (i) the Third Amended Plan; (ii) the Memorandum of Law; (iii) the November 2024 Ryniker Declaration; (iv) the November 2024 Luftig Declaration; (v) the Giugliano Declarations; (vi) the Final Objection; (vii) the Pretrial Order; (x) the testimony and arguments presented at the Confirmation Hearing; and (xi) all other relevant material in the record.  For the reasons set forth below, the Court finds that the Debtor's request to temporarily continue the extension of the automatic stay to its non-debtor president should be APPROVED, and the Third Amended Plan should be CONFIRMED.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), and 1334, and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.).  Plan confirmation is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### III.   BACKGROUND

### A.   THE DEBTOR'S SUBCHAPTER V BANKRUPTCY AND THE LUFTIG STAY

The Debtor is a New York corporation engaged in the production of theatrical works both on and off Broadway.  *See* Third Am. Plan at 1–2, ECF No. 172.  Shows produced by the Debtor include *Fiddler on the Roof in Yiddish*, *American Utopia*, *Plaza Suite*, *Becoming Nancy*, *Legally Blonde the Musical*, *Evita*, *Catch Me If You Can the Musical*, and *Come Fly Away*.  *Id.*  The Debtor's president and sole shareholder is Mr. Hal Luftig.  *See* Am. Pretrial Order ¶ 30, Docket No. 192.

In August 2019, FCP — one of the Debtor's investors and business partners — initiated an arbitration (the "Arbitration") against the Debtor for breach of contract and against Mr. Luftig for breach of fiduciary duty.[5]  *See DECLARATION OF HAL LUFTIG UNDER LOCAL RULE 1007-2 IN CONNECTION WITH CHAPTER 11 FILING, AND LOCAL RULE 9077-1 IN SUPPORT OF CERTAIN FIRST DAY MOTIONS* (the "First Day Declaration") ¶¶ 5–7, Docket No. 5.  FCP alleged in the Arbitration that, pursuant to a 2007 agreement, FCP was entitled to but did not receive certain income from the Debtor's productions of *Kinky Boots* and *Elephant Man*.  *See id.* ¶¶ 20–21, 24.  On April 1, 2022, the arbitrator issued a final award (the "Final Award") finding that, *inter alia*, the Debtor and Mr. Luftig were jointly and severally liable to FCP for approximately $2.6 million for the breach of contract claim brought against the Debtor.  *Id.* ¶¶ 28–29.  Subsequently, the District Court confirmed the Final Award on October 26, 2022, and entered

---

[5]   The Court will not recount here all details concerning the arbitration dispute between the Debtor and FCP, as the Court discussed details of that dispute in its previous proposed findings of fact and conclusions of law recommending the confirmation of the Debtor's initial plan.  *See In re Hal Luftig Co., Inc.*, 655 B.R. 508, 516-517 (Bankr. S.D.N.Y. 2023), *objections sustained*, 657 B.R. 704 (S.D.N.Y. 2024), *certificate of appealability denied*, No. 24CV166 (DLC), 2024 WL 1892256 (S.D.N.Y. Apr. 30, 2024), and *appeal withdrawn sub nom. Hal Luftig Co., Inc. v. United States Tr.*, No. 24-1119, 2024 WL 3291603 (2d Cir. May 29, 2024).

4

a Clerk's Final Judgment (the "Judgment") on November 2, 2022. The Judgment's enforcement was automatically stayed for 30 days, until December 2, 2022. *Id.* ¶¶ 34–38. Mr. Luftig appealed the District Court's confirmation of the Final Award, but the Debtor did not. *Id.* ¶¶ 39–40.

On December 1, 2022 (the "Petition Date") — one day before the stay of the Judgment's enforcement expired — the Debtor filed this voluntary Subchapter V small business reorganization case (the "Petition"). Third Am. Plan at 2, Docket No. 172. On the Petition Date, the Debtor also commenced an adversary proceeding (the "Adversary Proceeding") seeking to extend the automatic stay to non-debtor Mr. Luftig, and seeking a preliminary injunction enjoining FCP from executing on the Judgment against Mr. Luftig. *See Hal Luftig Company, Inc. v. FCP Entertainment Partners, LLC*, Case No. 22–01176. In support of its request for relief, the Debtor argued that there were unusual circumstances warranting extension of the automatic stay to Mr. Luftig. Specifically, the Debtor argued that it derives profits from the shows produced by Mr. Luftig, and that if Mr. Luftig was not protected by the stay, "he [would] be forced on a daily basis to deal with [FCP's enforcement collection efforts,]" which will "irreparably harm the Debtor's chance of a successful reorganization…". Mem. L. Supporting the Luftig Stay at 18, AP Docket No. 3. Moreover, the Debtor argued that the requisite elements for a preliminary injunction against FCP's efforts to enforce the Judgment were satisfied. *Id.* at *6.

The Court held hearings on December 1 and 16, 2022, concerning the stay extension issue. On January 5, 2023, the Court issued an opinion finding that: (i) the enforcement of the Final Judgment against Mr. Luftig would impact his efforts on behalf of the Debtor; (ii) the Debtor was likely to successfully reorganize; (iii) the Debtor would likely suffer irreparable harm without the requested relief; (iv) the balance of harms weighed in favor of the injunction; (v) the injunction was not adverse to the public interest; and (vi) the Debtor did not have another adequate remedy

5

at law.  *See Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, Case No. 22-01176, 2023 Bankr. LEXIS 19, at *13–17 (Bankr. S.D.N.Y. Jan. 5, 2023) (the "Luftig Stay Ruling"). Then, on January 23, 2023, the Court entered an order extending the automatic stay to Mr. Luftig (such stay, the "Luftig Stay") pursuant to Bankruptcy Code §§ 105 & 362, over FCP's objection (such order, the "Luftig Stay Order").  FCP did not appeal the Court's Luftig Stay Order.  Am. Pretrial Order ¶ 35, Docket No. 192.

### 1.   Key Claims Against The Debtor's Estate

Various proofs of claim were filed against the estate.  The largest unsecured claim against the estate is Claim 6-1 filed by FCP.  Claim 6-1 seeks $2,638,925.78 in connection with the Judgment FCP obtained against the Debtor.  On May 31, 2023, the Court so-ordered a stipulation wherein the Debtor and FCP agreed that the liquidated and unliquidated portions of the Final Award together gave rise to a claim of $2,862,776 against the estate (the "FCP Claim").  *See Stipulation and Order Allowing Unsecured Claim of FCP Entertainment Partners, LLC*, Docket No. 81.

Mr. Luftig also filed two claims — Claim 2-1 and Claim 7-1.  *See* Claim No. 2-1; *see also* Claim No. 7-1.  Claim 2-1 asserts that the Debtor is obligated to indemnify Mr. Luftig for "certain liabilities related to [Mr. Luftig's] position as President and sole shareholder of the Debtor, and his work with and involvement in the Debtor's Business."  Claim No. 2-1 Rider § 1(c) (such claim, the "Luftig Indemnification Claim"). The amount of Claim 2-1 is undetermined, but includes any amounts of the Final Award recovered from Mr. Luftig in addition to amounts resulting from certain loans Mr. Luftig made to the Debtor.  *Id.*; *see also* Hr'g Tr. from July 11, 2023, 26:17–24, Docket No. 97.  Claim 7-1 seeks an undetermined amount owed to Mr. Luftig for deferred and unpaid compensation from January 1, 2020, through the Petition Date (such claim, the "Luftig Deferred Compensation Claim").  Claim No. 7-1 Rider § 1(d); s*ee also* Hr'g Tr. from July 11,

6

2023, 28:8–24. Relatedly, the Debtor also included in its schedules a debt owed to Mr. Luftig in the amount of $164,505.74, based on a "Promissory Note for loan to Debtor" (such claim, the "Luftig Note Claim").  Schedule E/F 3.9, Docket 23.

### 2.    The Debtor's Initial Plan and The Filing of The Third Amended Plan

On March 1, 2023, the Debtor filed the *Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Initial Plan"). *See* Docket No. 55.  The Debtor supplemented the Initial Plan with a Plan Supplement (the "Initial Plan Supplement") on March 27, 2023.  *See Statement/Notice of Filing of Plan Supplement*, Exs. A–D, Docket No. 63.  The Initial Plan Supplement includes certain financial projections, and a liquidation analysis prepared by the Debtor's expert witness, Brian Rynkier, and certain proposed employment and security agreements between the Debtor and Mr. Luftig.  *See id.*  On June 30, 2023, the Debtor filed the *Memorandum of Law in Support of Confirmation of Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, Docket No. 84; the *Declaration of Hal Luftig in Support of Confirmation of Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "June 2023 Luftig Declaration") (Docket No. 85) (together with the July 2024 Luftig Declaration and November 2024 Luftig Declaration, the "Luftig Declarations"); and *the Declaration of Brian Ryniker in Support of Confirmation of Debtor's Chapter 11 Plan of Reorganization Under Subchapter V of the Bankruptcy Code* (the "June 2023 Ryniker Declaration") (Docket No. 86) (together with the July 2024 Ryniker Declaration and November 2024 Ryniker Declaration, the "Ryniker Declarations").

The Initial Plan proposed a nonconsensual third-party release of FCP's direct claim against Mr. Luftig, in exchange for, *inter alia*, Mr. Luftig's one-time cash contribution of $500,000 into the plan (the "Luftig Release").  *See* Initial Plan at 8, 12, 17–18.  Both the United States Trustee (the "U.S. Trustee") and FCP objected to the Initial Plan's confirmation, and argued that the Luftig

Release was inequitable and that it did not satisfy the various requirements for a third party release

pursuant to the Second Circuit's ruling in *In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023)

("*Purdue III*"), *rev'd and remanded sub nom. Harrington v. Purdue Pharma L.P.*, 603 U.S. 204

(2024). *See Objection to Chapter 11 Small Business Subchapter V Plan* (the "U.S. Trustee Initial

Plan Objection"), Docket No. 87; *see also Objection to Confirmation of Plan* (the "FCP Initial

Plan Objection"), Docket No. 89.  In *Purdue III*, the Second Circuit held that bankruptcy courts

have statutory authority and jurisdiction to approve third party releases if the proposed release

satisfies a seven-factor test, including whether:

(i)    there is identity of interests between the debtor and released third parties, including indemnification relationships, such that suit against non-debtor is, in essence, suit against debtor, or will deplete assets of the estate;

(ii)   claims against the debtor and nondebtor are factually and legally intertwined, including whether debtor and released parties share common defenses, insurance coverage, or levels of culpability;

(iii)  scope of releases is appropriate;

(iv)   releases are essential to reorganization;

(v)    non-debtor contributed substantial assets to reorganization;

(vi)   impacted class of creditors "overwhelmingly" voted in support of plan with releases; and

(vii)  plan provides for fair payment of enjoined claims.

*Purdue III*, 69 F.4th at 78–79 (citations and quotation marks omitted).  With respect to the Luftig

Release, the U.S. Trustee argued that such release did not satisfy *Purdue III* factors (iv), (vi), and

(vii).  *See* U.S. Trustee Initial Plan Obj'n. at 7–8.  FCP argued that the Luftig Release did not

satisfy any *Purdue III* factors besides factor (ii).  *See* FCP Initial Plan Obj'n. at 9–11.

       The Court held a confirmation hearing with respect to the Initial Plan on July 11, 2023, and

issued a confirmation opinion on November 22, 2023.  *See In re Hal Luftig Company, Inc.*, 655

8

B.R. 508 (Bankr. S.D.N.Y. 2023) (the "Initial Confirmation Opinion"). The Initial Confirmation Opinion included proposed findings of fact and conclusions of law, subject to approval by the District Court, that the Luftig Release was "important to the success of the [Initial] Plan" under *Purdue III*. Specifically, the Court reviewed each *Purdue III* factor and found that the Luftig Release satisfied all but the third and the sixth *Purdue III* factors, as the Luftig Release was overly broad, and FCP's vote to reject the Initial Plan reduced that plan's approval rating. *See id.* at 537–547. Nonetheless, the Court concluded that, with certain modifications it noted in the Initial Confirmation Opinion, the Luftig Release would satisfy the third *Purdue III* factor. *See id.* at 539–541. The Court also concluded that the sixth *Purdue III* factor is "of minimal significance under the specific facts of this case" because the undisputed evidence in the record indicated that FCP would "recover more on [its claim in the Initial Plan with the Luftig Release] than [it] would recover if …. Mr. Luftig was driven into bankruptcy himself." *See id.* at 544–545. Moreover, the Initial Confirmation Opinion found that the Initial Plan, subject to the Court's above-mentioned modifications, should be confirmed. *Id.* at 551–552.

On December 6 and 26, 2023, the U.S. Trustee and FCP, respectively, filed objections to the Initial Confirmation Opinion. The U.S. Trustee and the FCP argued that no rare and unusual circumstances existed to support the Court's approval of the Luftig Release, and that the creditors did not overwhelmingly support the Luftig Release, as required by the Second Circuit's seven-factor test in *Purdue III*. *See Objection to Proposed Findings of Fact and Conclusions of Law by United States Trustee* at 6–7, Docket No. 122; *see also Objection to Proposed Findings of Fact and Conclusions of Law* at 9–11, Docket No. 134.

On March 19, 2024, the District Court issued an opinion sustaining the U.S. Trustee and FCP's objections, rejecting the Court's findings of facts and conclusion of law as to the Luftig

Release, and denying the Initial Plan's confirmation.  The District Court found it "critical" that, with FCP's vote to reject the Initial Plan, that plan did not satisfy the sixth *Purdue III* factor — "whether the impacted class of creditors overwhelmingly voted in support of the plan with the releases." *See In re Hal Luftig Company, Inc.*, 657 B.R. 704, 708–709 (S.D.N.Y. 2024) (quoting *Purdue III*, 69 F.4th at 78.).  Further, the District Court stated the fact that the Initial Plan was "the best possible means of enabling FCP's recovery, and there will be no tangible financial harm from the third-party release[,]" does not excuse the Initial Plan's failure to satisfy the sixth *Purdue* factor.  *Id.* at 709.  Thereafter, the District Court referred this matter back to this Court.  *Id.*  Subsequently, in June 2024, the United States Supreme Court issued its ruling in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ("*Purdue Pharma*"), which reversed the Second Circuit's ruling in *Purdue III* and held that the Bankruptcy Code does not authorize non-consensual third party releases.

Following the District Court's opinion denying the Initial Plan's confirmation and the Supreme Court's ruling in *Purdue Pharma*, the Debtor filed, on July 25, 2024, a new plan that removed the Luftig Release-related provisions.  *See Second Amended Chapter 11 Small Business Subchapter V Plan*, Docket No. 155 (the "Second Amended Plan").[6]  However, the Second Amended Plan added language that extends in full force and effect all injunctions or stays existing on the confirmation date — including the Luftig Stay from the Adversary Proceeding — until the close of this Chapter 11 case:

> UNLESS OTHERWISE PROVIDED HEREIN, ALL INJUNCTIONS OR STAYS
> PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR
> 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON

---

[6]    The Court omits here discussions of the Debtor's *First Amended Chapter 11 Small Business Subchapter V Plan*, Docket No. 116, dated November 27, 2023, as that amended plan predates the District Court's opinion denying the Initial Plan's confirmation, and still contained provisions related to the Luftig Release.

THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT
UNTIL THE CHAPTER 11 CASE IS CLOSED.

*Id.* at 12.  Subsequently, the Debtor filed the Third Amended Plan on November 21, 2024.  The

Third Amended Plan qualified the proposed stay extension to terminate upon the earliest of this

Chapter 11 case's closure, dismissal, or the grant or denial of discharge, and clarified that the scope

of the Adversary Proceeding's Luftig Stay only applies to FCP.  *See* Third Am. Plan at 12–13,

Docket No. 172.

###    B.    SUMMARY OF THE THIRD AMENDED PLAN

Besides the removal of the Luftig Release provisions and the added language extending the

existing stays, the Third Amended Plan is substantially similar to the Debtor's Initial Plan: the life

of the Third Amended Plan will be five years, and all administrative expenses and priority claims

will be paid in full.  *See* Third Am. Plan at 1, 7.  Further, as set forth in Article II, the Third

Amended Plan creates six classes and provides the following treatments for each class:

| Class | Description | Amount in Class | Treatment | Impairment |
|---|---|---|---|---|
| Class 1 | Priority wage claims under Bankruptcy Code § 507(a)(4) | $13,650.00 | Paid in full at the Effective Date[7] | Unimpaired |
| Class 2 | Secured Claims | $163,946.92 | Paid in full at the Effective Date | Unimpaired |
| Class 3 | FCP Claim | $2,862,776.00 | Paid a portion of the Luftig Settlement Payment (as defined below) at the Effective Date plus Pro Rata Share[8] of the Debtor's | Impaired |

---

[7]    "Effective Date" is defined as "the first day on which the Confirmation Order has become a Final Order and on which all the conditions to the Effective Date in the Plan have been satisfied or waived." Third Am. Plan at 18, Docket No. 172.

[8]    "Pro Rata Share" is defined as "the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims, and Undetermined Claims of that particular Class. In the case of the FCP Claim, after receiving its portion of the Luftig Cash Contribution, any unpaid portion of the FCP Claim shall be treated as a Class 4 Claim for purposes of distributions of Disposable Income under the Plan." Third Am. Plan at 20.

11

| | | | Disposable Income[9] over the life of the Plan[10] | |
|---|---|---|---|---|
| Class 4 | General Unsecured Claims | $328,628.92 (estimated) | Pro Rata Share of Disposable Income over the life of the Plan | Impaired |
| Class 5 | Insider Claims[11] | Unliquidated | No distribution[12] | Fully Impaired |
| Class 6 | Equity | n/a | No distribution, but Mr. Luftig retains all equity | Unimpaired |

The Third Amended Plan is to be funded by: (i) the Debtor's Disposable Income; (ii) a $50,000.00 payment (the "Luftig Settlement Payment") by Mr. Luftig to settle a certain avoidance claim related to the Debtor's partial repayment in October 2022 of a loan from Mr. Luftig, in exchange for Mr. Luftig receiving a $50,000.00 claim against the estate (such claim, the "Luftig Settlement Claim"); and (iii) an agreement by Mr. Luftig to contribute up to $100,000 to the extent necessary to satisfy Section 1191(c)(2)(B)[13] of the Bankruptcy Code (the "Back-Stop Commitment"). *See* Third Am. Plan at 9–11, 16, 19. The Third Amended Plan also requires Mr. Luftig to enter into the Employment Agreement with the Debtor, whereby Mr. Luftig would be paid a salary of $210,000 to spend approximately 50% of his "business time and efforts" acting as

---

[9]    "Disposable Income" is defined as having "the meaning given to it in Bankruptcy Code § 1191(d), as calculated and projected by RKC and set forth in the Plan Supplement." Third Am. Plan at 17. The Debtor's expert forecasts that the Debtor's Disposable Income over the next five years will total approximately $700,000. *See* July 2024 Ryniker Decl. Ex. A–2, Docket No. 156.

[10]    The Debtor's expert estimates the recovery on the FCP Claim will be approximately $720,000 — approximately a 25% recovery. *See* July 2024 Ryniker Decl. Ex. A–2, Docket No. 156.

[11]    "Insider Claims" is defined as "the following Claims which shall be determined to be Allowed Claims under the Plan without any further action, and the Debtor anticipates that the Claims shall be subordinated in right of payment to the payment of all other Allowed Claims under the Plan: (i) the Luftig Note Claim; (ii) the Luftig Settlement Claim; (iii) the Luftig Indemnification Claim; and (iv) the Luftig Deferred Compensation Claim; and (v) the general unsecured claim of Luftig-Haffner-Chapman Theatrical Development Fund LLC in the amount of $50,000.00." Third Am. Plan at 18, Docket No. 172.

[12]    Mr. Luftig is agreeing to subordinate Insider Claims, as discussed *supra*.

[13]    Section 1191(c)(2)(B) of the Bankruptcy Code requires that, for a plan to be "fair and equitable," the value of property to be distributed must not be "less than the projected disposable income of the debtor." 11 U.S.C. § 1191(c)(2)(B).

President of the Debtor. *Id.*; *see also* Initial Plan Supplement Ex. C, Docket No. 63. (Proposed Luftig Employment Agreement). Under the Third Amended Plan, Mr. Luftig would also not charge the Debtor rent for operating in his home. *See* Third Am. Plan at 9. In exchange for these contributions, the Debtor will issue a secured promissory note to Mr. Luftig that will be subordinated until after the Third Amended Plan expires. *Id.* at 10, 19.

### C. <u>THE PLAN'S VOTING RESULTS</u>

Classes 3 and 4 (together, the "<u>Voting Classes</u>") were the only classes entitled to vote.[14] The Debtor solicited votes on its Initial Plan in April 2023, and the voting deadline was May 17, 2023. *See* Giugliano Voting Declaration ¶¶ 3, 7, Docket No. 90. When the voting deadline expired, Class 3 (*i.e.*, FCP) voted to reject the Initial Plan, while Class 4 (non-insider general, unsecured claims) voted to accept the Initial Plan.[15] *Id.* ¶ 12.

When the Debtor eventually filed the Second and the Third Amended Plans, it did not re-solicit votes on the new plans, and instead relied on the voting results for the Initial Plan. *See* Mem. L. at 4–5, Docket No. 173. ("The Debtor did not resolicit votes to accept or reject the [Second and the Third Amended Plans], because the modifications did not adversely change the treatment of any claim of any creditor who did not accept the modifications in writing."). On December 12, 2024, the Debtor filed the Giugliano Supplemental Declaration and informed the Court that both members of Class 4 have changed their votes to reject the Third Amended Plan. *See* Giugliano Supp. Decl. at ¶¶ 3 & 4, Docket No. 179. Therefore, as of the date of the

---

[14]     Classes 1, 2, and 6 are unimpaired and are therefore deemed to accept the Third Amended Plan without voting. Third Am. Plan at 6–8. Class 5 is fully impaired and is therefore deemed to reject the Third Amended Plan without voting. Third Am. Plan at 8–9, Docket No. 172.

[15]     Class 4 consists of Amy Deutsch, a friend of Mr. Luftig, and Kevin Connor, an employee of the Debtor. *See* Giugliano Voting Declaration at 4 n.2, Docket No. 90.

Confirmation Hearing, all classes entitled to vote on the Third Amended Plan have rejected the plan.

### D. **THE PARTIES' CONTENSIONS**

#### 1. **The Debtors' Memorandum of Law in Support of Confirmation**

First, the Debtor argues that the Third Amended Plan satisfies all the confirmation requirements set forth in Chapter 11 of the Bankruptcy Code and applicable caselaw. *See* Mem. L. at 5, 24, Docket No. 173. Specifically, the Debtor argues that the Third Amended Plan is a qualifying Subchapter V reorganization plan under Code § 1190 because it (i) contains a brief history of the Debtor's business operations, in addition to the liquidation analysis and disposable income analysis prepared by the Debtor's expert, Brian Ryniker ("Mr. Ryniker"); and (ii) provides that the Debtor will fund the Third Amended Plan with all its Disposable Income over the Plan's 5-year life. *Id.* at 9–10. Moreover, the Debtor argues that the Third Amended Plan satisfies all applicable requirements under Bankruptcy Code § 1191, which incorporates § 1129(a),[16] as it (i) complies with Code §§ 1122 & 1123; (ii) provides the creditors with greater recoveries than they would receive in a hypothetical liquidation; and (iii) is supported by a disposable income analysis demonstrating that the plan is feasible. *Id.* at 21–24.

Notwithstanding the Voting Classes' votes to reject the Third Amended Plan, the Debtor argues that the plan may be confirmed as a nonconsensual plan pursuant to Bankruptcy Code §§ 1191(b) & (c). *Id.* at 10–12. Code §§ 1191(b) & (c) permit a bankruptcy court to confirm a plan rejected by certain impaired classes if the plan "does not discriminate unfairly, and is fair and equitable" with respect to each impaired rejecting class. 11 U.S.C. §§ 1191(b) & (c). The Debtor argues here that the Third Amended Plan is "fair and equitable" with respect to the rejecting Voting

---

[16] The Debtor argues that Bankruptcy Code §§ 1129(a)(6), (8), (10), and (12)–(16) are inapplicable with respect to the confirmation of the Third Amended Plan. *See* Mem. L. at 24, Docket No. 173.

Classes because the Debtor (i) will be paying into the plan all its Disposable Income for the 5-year plan period; (ii) has demonstrate a reasonable likelihood that it will make all payments under the Third Amended Plan.  *Id.* at 11–12.; *see also* November 2024 Ryniker Decl. ¶ 9, Docket No. 174. Additionally, the Back-Stop Commitment provides a sufficient remedy to the claimholders if the Debtor fails to make any plan payments.  *Id.*

Second, the Debtor argues that the Bankruptcy Code's applicable provisions support extending the Luftig Stay's duration for the Third Amended Plan's 5-year life (such extension, the "Luftig Stay Extension").[17]  *See* Mem. L. at 17.  The Debtor argues that the Court should extend the Luftig Stay to the time when the Debtor's automatic stay may be terminated pursuant to Code § 362(c)(2)[18] because Mr. Luftig is "essential to the Debtor's successful reorganizations."  *Id.* at 18; *see also id.* at 17.  Specifically, the Debtor asserts that its ability to generate revenue — and in turn, successfully reorganize — "depends entirely" on Mr. Luftig's assistance and "ability to develop and produce shows and to pursue new opportunities."  *Id.* at 17–18.  The Debtor argues that if the Court denies the Luftig Stay Extension, the Third Amended Plan "will not succeed [because] Mr. Luftig [will be] chased-down by FCP's judgment enforcement and collection efforts."  *Id.* at 18.  Moreover, such collection efforts against Mr. Luftig will allegedly distract him from working on revenue-generating projects for the Debtor, and tarnish "his reputation in the

---

[17]    The Third Amended Plan's extension language refers broadly to "ALL INJUNCTIONS OR STAYS … IN EXISTENCE ON THE CONFIRMATION DATE[.]"  Third Am. Plan at 12, Docket No. 172.  However, the only stay extension being challenged by a creditor (*i.e.*, FCP) here is the Luftig Stay.  *See* Final Obj'n, Docket No. 190.  The Debtor's filings in support of the Third Amended Plan's confirmation also focus their arguments on the Luftig Stay. *See, e.g.*, Mem. L. at 16–20, Docket No. 173. ("The Debtor is asking the Court to leave in place the protections granted by this Court to the Debtor and Mr. Luftig on day one of the case.").

[18]    The Debtor asserts that the "earliest opportunity for termination of the automatic stay as to the Debtor will be when the discharge is granted[,]" which will take place after the Debtor completes the last plan payment at the end of the Third Amended Plan's 5-year life.  *See* Mem. L. at 17, Docket No. 173; *see also* 11 U.S.C. §362(c)(2). ("[T] the stay of any other act under subsection (a) of this section continues until the earliest of — (A) the time the case is closed; (B) the time the case is dismissed; or (C) … the time a discharge is granted or denied.").

industry as a fundraiser[.]" *Id.* at 19. Therefore, the Debtor argues that the Court should approve
the Luftig Stay Extension for the same reasons it originally approved the Luftig Stay. *See id.* at
17. ("[C]ircumstances that existed at the initial stages of the Debtor's case, which served as the
basis for the [Luftig] Stay Order, continue to exist and are even more significant for a successful
reorganization under the Plan."); *see also In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *12–13.

Third, the Debtor also argues that the Luftig Stay Extension is "the law of the case[,]" and
the Court should reject FCP's challenge here. *See* Mem. L. at 19. The Debtor argues that FCP
should have raised its challenge with respect to the Luftig Stay Extension in prior proceedings, but
failed to do so:

> FCP did not appeal the [Luftig] Stay Order, did not reserve its rights under the [Luftig]
> Stay Order to contest its application through the Debtor's discharge, and did not contest
> the portion of the [Initial Confirmation Opinion] denying FCP's request to terminate the
> extension of the stay.

*Id.* at 19–20[19] (citing *County of Suffolk v. Stone & Webster 20 Engineering Corp.*, 106 F.3d 1112,
1117 (2d Cir. 1997)). Additionally, the Debtor argues that FCP does not identify any new
compelling reasons, new evidence, manifest injustice, or clear error to warrant a last-minute
challenge to the Luftig Stay Extension. *Id.* at 20. Lastly, with respect to the cases that FCP cited[20]

---

[19]    In the Initial Confirmation Opinion, the Court denied FCP's request to dismiss the Adversary Proceeding and
alter the Luftig Stay because the Court had found the Initial Plan confirmable:

> Finally, FCP requests that the Court dismiss the Adversary Proceeding and rescind the stay protections that
> the Court extended to Mr. Luftig because the Plan cannot be confirmed. The Debtor, in turn, argues that no
> change in circumstances or law warrants termination of the stay protection extended to Mr. Luftig in the
> Adversary Proceeding. As discussed herein, the Court finds that the Plan is confirmable, subject to certain
> modifications to the Luftig Release. Accordingly, the Court finds that there is no reason at this time to alter
> the stay protections extended to Mr. Luftig. The Court likewise declines to dismiss the Adversary Proceeding.

*In re Hal Luftig Co., Inc.*, 655 B.R. at 551 (internal citations omitted).

[20]    FCP cited *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), and *Intl. Petroleum Products and
Additives Co., Inc. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1216 (9th Cir. 2024) in arguing that "an injunction against
collecting on or recovering a debt against a debtor that accompanies a confirmed plan" should only apply to the debtor,
and not any other entity. *See* Final Obj'n. at 4–5, Docket No. 190. The Court will address these cases *infra*, Section
IV. B. 4.

in support of its argument, the Debtor argues that the cases are distinguishable and do not support FCP's proposition that the Luftig Stay is unlawful. *Id.*

## 2. **The FCP Final Objection**

FCP's Final Objection does not contest the Debtor's contentions that the Third Amended Plan satisfies the various confirmation requirements set forth in Bankruptcy Code § 1129(a), as incorporated by Code § 1191. Instead, FCP solely argues that the Third Amended Plan should not be confirmed because it does not provide "fair and equitable" treatment for FCP, thus failing to satisfy the confirmation requirement under Code § 1191(b). *See* Final Obj'n. at 4, Docket No. 190. Specifically, FCP argues that the 5-year Luftig Stay Extension in the Third Amended Plan "renders [the Third Amended Plan] unfair and inequitable." *Id.* at 5. Although FCP recognizes that Code § 1191(c) provides a list of requirements that would generally render a plan "fair and equitable," it argues that those requirements "are merely the baseline," and urges the Court to impose additional requirements when considering the fairness and equitability of the Third Amended Plan. *Id.* 4.

According to FCP, the Third Amended Plan's provision for extending the Luftig Stay "essentially amounts to a discharge over the life of the plan and will continue to enjoin FCP from enforcing its rights in the Final Award" against Mr. Luftig. *Id.* at 5. FCP argues that such provision is untenable because the United States Supreme Court in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) "soundly rejected the ability of a bankruptcy court to extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*." Final Obj'n. at 4–5. (quoting *Purdue Pharma L.P.*, 603 U.S. at 215. (emphasis in original) [internal quotation marks omitted]) (citing *Intl. Petroleum Products and Additives Co., Inc. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1216 (9th Cir. 2024)). Moreover, FCP also argues that the Third Amended Plan is not "fair and equitable" because it does not provide creditors with any remedies if the Debtor defaults on its

plan payments.  *Id.* at 5.  Accordingly, FCP argues that the Third Amended Plan should not be confirmed.  *Id.* at 6.

### E. **TESTIMONY AT THE CONFIRMATION HEARING**

At the Hearing on January 17, 2025, the Court received into evidence the Luftig Declarations, the Ryniker Declarations, and the exhibits to each declaration.  *See* Hr'g Tr. from January 17, 2025, 9:3–21, Docket No. 194.  Mr. Luftig was cross-examined by FCP and examined on re-direct by the Debtor and his counsel.  *See id.* at 30:22–38:13, 38:19–45:22.  Mr. Ryniker was also cross-examined by FCP.  *See id.* at 46:13–51:15.

**Mr. Luftig's Testimony**.  Mr. Luftig is the Debtor's president and sole shareholder.  *See* July 2024 Luftig Decl. ¶ 1, Docket No. 157.  He stated that he has attended almost every hearing in this case and has worked to gather information required to be filed with the Court and needed to analyze the Debtor's finances.  *Id.* at ¶ 14.  According to Mr. Luftig, the Debtor's ability to succeed in generating revenue relies entirely upon his ability to develop and produce shows, and pursue new opportunities.  *See* November 2024 Luftig Decl. ¶ 24. Docket No. 175.  Moreover, Mr. Luftig asserts that if he has to defend against FCP's efforts to enforce the Judgment, the Third Amended Plan will fail because his ability to promote Debtor's business efforts will be undermined and his reputation as a fundraiser will be ruined.  *Id.* at ¶ 31.  To support his statements, Mr. Luftig first alleged that there had been certain instances where the Debtor's business operations were disrupted by FCP's enforcement efforts.  *See* June 2023 Luftig Decl. at ¶ 45, Docket No. 85. Further, Mr. Luftig also alleged certain instances where potential investors declined to invest in the Debtor's projects after learning about FCP's enforcement efforts and the pending Chapter 11 case.  *See* July 2024 Luftig Decl. ¶¶ 36, 37.

Additionally, Mr. Luftig also reaffirmed his willingness and ability to provide the contributions described above and in the Third Amended Plan, even though he is no longer seeking

18

the Luftig Release.  *Id.* at ¶ 15.  Mr. Luftig stated that FCP would receive a greater recovery on its claim under the Third Amended Plan with the Luftig Stay Extension than it would pursuing enforcement efforts of the Judgment against Mr. Luftig.  *Id.* at ¶ 29.  Specifically, Mr. Luftig stated that he has virtually no non-encumbered or non-exempt assets to satisfy the Final Award, and may be forced to file a personal bankruptcy if FCP seeks to collect from him individually.  *See* November 2024 Luftig Decl. at ¶ 32.  Mr. Luftig also further supported his statements with a summary of his personal assets and liabilities, including: (i) a bank account with less than $100,000 liquid cash; (ii) $2.2 million in qualified retirement plans; (iii) a beneficial interest in a trust that owns a limited liability company that owns one-third of Mr. Luftig's primary residence, the value of which third is estimated to be $1.15 million;[21] and (iv) an estimated $500,000 interest in a second home.[22]  *See* June 2023 Luftig Decl. at ¶¶ 56–58.[23]

On cross-examination, Mr. Luftig testified about the efforts he has made to ensure the Debtor's successful reorganization.  *See* Hr'g Transcript from January 17, 2025, 32:4–35:9.  For instance, he testified that he has been heavily involved in preparing one of the Debtor's legacy production projects for new international and domestic tours, and making script revisions for the Debtor's other legacy projects before turning them into Broadway stage productions.  *Id.*

---

[21]    Mr. Luftig's primary residence is subject to two mortgages securing debt of approximately $1 million.  *See* June 2023 Luftig Decl. at ¶ 56, Docket No. 85.

[22]    Mr. Luftig's second home is subject to a mortgage securing a debt of approximately $300,000.  *See* June 2023 Luftig Decl. at. at ¶ 56, Docket No. 85.

[23]    Mr. Luftig did not provide an updated summary of assets and liabilities in the July 2024 Luftig Declaration or the November 2024 Luftig Declaration, and instead incorporated in these declarations the summary he provided in the June 2023 Luftig Declaration.  *See* July 2024 Luftig Decl. ¶ 2, Docket No. 157 ("[Mr. Luftig] respectfully submit[s] [the July 2024 Luftig Declaration] ... as a supplement to the [June 2023 Luftig Declaration], which together with exhibits annexed thereto is incorporated herein by reference…"); *see also* November 2024 Luftig Declaration at n.2, Docket No. 175 ("The July [2024] Luftig Declaration is incorporated by reference into the November [2024] Luftig Declaration.").

19

Mr. Luftig also testified on cross-examination that a significant amount of work still remains before certain legacy production projects could begin new production runs. *Id.* at 36:19–37:6. Further, Mr. Luftig testified that the remaining work on those legacy projects cannot be delegated to the Debtor's two other employees, who mostly handle administrative — and not creative — tasks. *Id.* at 37:7–38:9. On re-direct, Mr. Luftig testified regarding the specific tasks he handles in connection with the Debtor's production projects, including organizing and conducting script readings and marketing the shows, all of which has consumed more than 50% of his time over the past year. *Id.* at 38:19–40:12; 42:9 –22. Mr. Luftig also testified that the Debtor would likely see more future production opportunities with technological advancements such as TV streaming. *Id.* at 41:2–42:3.

Finally, Mr. Luftig testified on re-direct that he has artistic, financial, and managerial control over each of the Debtor's current legacy production projects because he is a lead producer of all those titles. *Id.* at 43:22–45:8.

**Mr. Ryniker's Testimony**. Mr. Ryniker is a member of RK Consultants LLC — a financial advisory service firm that the Debtor retained as its financial advisor in this case. *See* July 2024 Ryniker Decl. ¶¶ 1, 3, Docket No. 156. Mr. Ryniker prepared an updated liquidation analysis (the "Liquidation Analysis") estimating that $1,305,498.00 would be available to creditors in a hypothetical liquidation of the Debtor, and that FCP would receive approximately $496,119.00 on the FCP Claim. *Id.* Ex. B–2 (Liquidation Analysis). Mr. Ryniker also stated that he believes each class of claims in the Third Amended Plan would receive more under the plan than in a hypothetical chapter 7 liquidation of the Debtor. *Id.* at ¶ 6.

Mr. Ryniker also prepared the updated disposable income analysis (the "Disposable Income Analysis") that forecasts the Debtor's aggregate disposable income over the next five years

20

to be $755,122.00.  *Id.* Ex. A–2; *id.* at ¶¶ 13.  Further, the Disposable Income Analysis shows that, from the Debtor's projected disposable income and Mr. Luftig's contributions (*i.e.*, the Luftig Settlement Payment), FCP is projected to receive a distribution of $720,000 — approximately 25% — distribution on the FCP Claim under the Third Amended Plan.  *Id.* Ex. A–2.  Additionally, Mr. Ryniker stated that, based on his projections, the Debtor will have sufficient income to fund the payments under the Third Amended Plan using solely its disposable income (*i.e.*, without Mr. Luftig making any contribution).  *Id.* at 11.

On cross-examination, Mr. Ryniker testified that, in preparing the Liquidation Analysis and Disposable Income Analysis, he presumed that Mr. Luftig will remain an employee of the Debtor, and accounted for the services Mr. Luftig performs for the Debtor.  *See* Hr'g Transcript from January 17, 2025, 47:13–22.  Moreover, he testified that if Mr. Luftig's services were factored out of the analysis, the Debtor's liquidation value and projected income would both reduce.  *Id.* at 47:23–48:11.  Mr. Ryniker also testified on cross-examination that four of the Debtor's legacy productions with currently active projects will be the primary sources of revenue for the Debtor, but the Debtor also has other legacy productions that may bring in small streams of revenue.  *Id.* at 49:9–17.  According to Mr. Ryniker, the Debtor's legacy productions without active projects may also generate greater revenue in the future, even though they are currently not projected to do so.  *See id.* at 49:19–50:15.  Finally, Mr. Ryniker testified that, comparing the projections he prepared for the Debtor's Initial Plan and the latest projections, he found that the Debtor's timing estimations with respect to its revenue receipts have been generally accurate so far.  *See id.* at 50:16–51:5.

# IV.    ANALYSIS

The Court will first address the statutory requirements for confirmation of a Subchapter V Chapter 11 plan, and then consider FCP's objection to the Luftig Stay Extension.

## A.    THE CONFIRMATION REQUIREMENTS

Code § 1191 sets forth the requirements to confirm a plan of reorganization under Subchapter V of Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 1191. Specifically, Code § 1191(a) provides for confirmation of a consensual plan if all the requirements of Code § 1129(a) are met, other than Code § 1129(a)(15).[24] *See* 11 U.S.C. § 1191(a). However, if a plan is not fully consensual, Code § 1191(b) nonetheless permits confirmation where all of the requirements of Code § 1129(a) are met, other than §§ 1129(a)(8),[25] (10),[26] and (15), if the Court finds that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims" that is impaired[27] and has not accepted the plan. *See* 11 U.S.C. § 1191(b).

---

[24]    Bankruptcy Code § 1129(a)(15) provides that the Court shall not confirm a plan in a case where the Debtor is an individual and where the holder of an allowed unsecured claim objects to the confirmation of the plan unless:

 (A) the value . . . of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15). Notably, even if § 1129(a)(15) was applicable to Subchapter V cases, that provision only applies to individual debtors and not corporations. *See* 11 U.S.C. § 1129(a)(15) ("In a case in which the debtor is an individual…").

[25]    Bankruptcy Code § 1129(a)(8) provides that each class of claims must either accept the plan or not be impaired under the plan. *See* 11 U.S.C. § 1129(a)(8).

[26]    Bankruptcy Code § 1129(a)(10) provides that, if a class of claims is impaired under the plan, at least one class of impaired claims has to accept the plan, excluding insiders. *See* 11 U.S.C. § 1129(a)(10).

[27]    A claim is "impaired" within the meaning of Bankruptcy Code § 1124 if "the plan of reorganization, rather than the [Bankruptcy] Code, alters the creditor's legal, equitable, or contractual rights." *In re LATAM Airlines Group S.A.*, 55 F.4th 377, 385 (2d Cir. 2022), *cert. denied sub nom. TLA Claimholders Group v. LATA M Airlines Group S.A.*, 143 S. Ct. 2609 (2023).

Further, Bankruptcy Code § 1191(c) clarifies what it means for a Subchapter V plan to be

"fair and equitable." *See* 11 U.S.C. § 1191(c). That section provides, in relevant part:

> For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests *includes* the following requirements:
>
> (1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.
>
> (2) As of the effective date of the plan — … (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
>
> …
>
> (3)(B)(i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and (ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

11 U.S.C. § 1191(c) (emphasis added).

Courts in this Circuit have not examined in detail whether additional factors may be

considered in analyzing the "fair and equitable" requirement set forth in Code § 1191(b).

However, other courts have held that Code § 1191(c)'s "includes" language denotes baseline

requirements that a plan must satisfy, and courts have discretion to consider other factors when

appropriate. *See In re Curiel*, 651 B.R. 548, 561 n.7 (B.A.P. 9th Cir. 2023) ("[Bankruptcy Code

§ 1191(c)] states that whether the plan is fair and equitable includes those requirements. Because

the term 'includes' is not limiting, a court may consider other relevant factors as well."); *see also*

*In re Trinity Fam. Prac. & Urgent Care PLLC*, 661 B.R. 793, 816 (Bankr. W.D. Tex. 2024)

("[M]eeting the baseline requirements of § 1191(c) is a *necessary* condition for the subchapter V

plan to be fair and equitable, but does not assure that the plan is fair and equitable.") (emphasis in

original).

Here, the Third Amended Plan is non-consensual because the Voting Classes both voted to reject the plan. *See* Giugliano Voting Decl. ¶ 12, Docket No. 90; Giugliano Supp. Voting Decl. ¶¶ 3, 4, Docket No. 179. Accordingly, confirmation of the Third Amended Plan is only possible pursuant to Bankruptcy Code § 1191(b).

With respect to the confirmation requirements under Bankruptcy Code § 1191(b), neither the U.S. Trustee nor FCP argues that any of the subsections of Code § 1129(a) incorporated by Code § 1191(b) has not been satisfied. Moreover, in examining whether the Third Amended Plan complies with the Code § 1191(b), the Court also reviewed the Luftig Declarations, the Ryniker Declarations, the Giugliano Voting Declarations, the testimony at the Confirmation Hearing, and all other relevant records. After due deliberation, the Court concludes that the Debtor has carried its burden of proof with respect to the confirmation requirements of Bankruptcy Code § 1191(b), and the Third Amended Plan is confirmable subject to the Court's finding on the only remaining question — whether the plan is fair and equitable under Code § 1191(c).

## B.  THE LUFTIG STAY EXTENSION

The Court will first address FCP's argument that the Luftig Stay Extension is impermissible, and that the inclusion of such extension renders the Third Amended Plan "unfair and inequitable." Final Obj'n. at 5, Docket No. 190.

### 1.  The Law on Extending The Automatic Stay to Non-Debtor Parties

The Court previously examined the law on non-debtor stay extensions in the Luftig Stay Ruling. Generally, "the automatic stay under [Bankruptcy Code § 362(a)] does not apply to non-debtors." *In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *11 (citing *Mardice v. Ebony Media Operations LLC*, No. 19-CV-8910 (VSB), 2021 U.S. Dist. LEXIS 8520, 2021 WL 146358, at *3 (S.D.N.Y. Jan. 15, 2021)); *see also In re Durr Mechanical Construction, Inc.*, 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019). However, as noted in the Luftig Stay Ruling, the Second Circuit

24

recognized an exception to this rule in *Queenie, Ltd. v. Nygard Int'l.*, 321 F.3d 282 (2d Cir. 2003). *See id.* at *11. Specifically, the Second Circuit held that "'the automatic stay can extend to non-debtors [under Code §§ 105 & 362(a)] … where a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate,'" such as in "actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie, Ltd.*, 321 F.3d at 287–88 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)) (internal quotations omitted). Other courts have also recognized this exception to the general rule and found that such relief stemmed from bankruptcy courts' authority to enter preliminary injunctions. *See, e.g., In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024) ("cases have long recognized that bankruptcy courts may enter a preliminary injunction that operates to stay actions against non-debtors.").

Indeed, following the Second Circuit's ruling in *Queenie, Ltd.*, this Court granted the Luftig Stay, finding that "[the] enforcement of the Final Award and [the] Judgment would have an immediate adverse impact on Plaintiff's reorganization efforts." *In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *12. Further, similar to other bankruptcy courts in this Circuit reviewing requests for non-debtor stay extensions,[28] the Court also conducted a traditional four-factor preliminary injunction analysis, which requires the movant to establish (in addition to applying the *Queenie, Ltd.* test):

> (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping

---

[28]    *See, e.g., Lyondell Chem. Co. v. Centerpoint Energy Gas Servs.* (*In re Lyondell Chem. Co.*), 402 B.R. 571, 587–594 (Bankr. S.D.N.Y. 2009) (applying the traditional four-factor preliminary injunction analysis and finding that a 60-day non-debtor stay extension was warranted); *see also In re Calpine Corp.*, 365 B.R. 401, 409–414 (S.D.N.Y. 2007) (affirming the bankruptcy court's ruling extending the automatic stay to a non-debtor party and noting that "a bankruptcy court has discretion to enjoin a civil proceeding against a non-debtor under [Bankruptcy Code § 105] .… [and in granting such stay extensions,] courts have applied the traditional preliminary injunction standard as modified to fit the bankruptcy context.") (internal quotation marks omitted).

decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction.

*Id.* at *10–11 (citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)).[29]

As discussed above, in June 2024, the Supreme Court held that non-consensual third party releases are not authorized by the Bankruptcy Code. *Purdue Pharma*, 603 U.S. at 204 ("The bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a nondebtor without the consent of affected claimants."). The Supreme Court did not address the bankruptcy courts' authority to grant non-consensual third party automatic stay extensions in *Purdue Pharma*.

Post–*Purdue Pharma*, certain courts have indicated that non-consensual third party stay extensions survived the Supreme Court's ruling. For example, the bankruptcy court in *Parlement Techs., Inc.*, 661 B.R. at 724 examined the effects of *Purdue Pharma* on non-debtor stay extensions, and concluded that "*Purdue Pharma* does not preclude the entry of [] a preliminary injunction [extending the stay to non-debtor parties.]" Other courts that have examined this issue post-*Purdue Pharma* have also reached similar conclusions. *See Purdue Pharma L.P. v. Massachusetts*, 2024 Bankr. LEXIS 2916, at *26 (applying the four-factor preliminary injunction analysis and noting that "[n]othing in [*Purdue Pharma*] alters this well-settled law on the

---

[29]    Pre-*Purdue Pharma*, at least one bankruptcy court explained that it extended the automatic stay to non-debtor parties on a temporary basis to facilitate negotiations of a plan that included a nonconsensual channeling order. *See, e.g., In re Diocese of Buffalo*, N.Y., 656 B.R. 323, 326 (Bankr. W.D.N.Y. January 9, 2024) ("[The court previously] granted a general stay of the stay litigation [against the debtor's non-filing affiliates] in order to facilitate the development of a plan … [and] the implicit expectation was that any such plan would include a nonconsensual channeling order…"). Moreover, the bankruptcy court in *Purdue Pharma v. Massachusetts* also noted a similar purpose in its ruling dated November 6, 2019, when it renewed the non-debtor stay extension it had initially granted on October 19, 2019. *See* Hr'g Tr. from November 6, 2019, at 82:10–24, Docket No. 119 at Adversary Proceeding No. 19-08289 ("The purpose of this [non-debtor stay extension] is to enable all of the states and all of the other claimants in this case…. to perform the due diligence to decide whether a plan in this case should consider a contribution by [non-debtor] parties, who are protected by this injunction, to obtain a permanent release.").

permissibility of an injunction [extending the stay to non-debtors, as being] sought here."); *see also Coast to Coast Leasing, LLC v. M&T Equip. Fin. Corp.* (*In re Coast to Coast Leasing, LLC*), 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (finding that "a temporary restraining order to enjoin creditors from bringing claims against [a non-debtor party]" is "distinguishable from the much broader relief sought in *Purdue Pharma*.").

However, the bankruptcy court in *Parlement Techs.* stated that *Purdue Pharma* still changed the standard of review for non-debtor stay extensions. Specifically, the *Parlement Techs.* court noted that, with respect to the "likelihood of success on the merits" preliminary injunction factor, courts can no longer base their findings on "the likelihood that the non-debtor would be entitled to a non-consensual third-party release through the plan process." *Parlement Techs.*, 661 B.R. at 724. Instead, the *Parlement Techs.* court suggested that alternative outcomes may be viewed as "success on the merits" when considering non-debtor party stay extensions, including:

> (a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business or (b) because [the court] believes the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors.

*Id.* Indeed, the bankruptcy court in *Purdue Pharma L.P. v. Massachusetts* has already adopted the standard proposed by the *Parlement Techs.* court while reviewing a request to extend the automatic stay to non-debtor parties. *See Purdue Pharma L.P. v. Massachusetts*, 2024 Bankr. LEXIS 2916, at *28 ("This Court whole-heartedly agrees with the analysis of the *Parlement* court.").

The Court will consider the Luftig Stay Extension under the standards discussed above.

### 2.  <u>The Luftig Stay Extension's Duration Does Not Render It Impermissible</u>

Unlike the non-debtor stay extensions that many cases have examined, the Luftig Stay Extension differs in one significant aspect: the Debtor here is seeking, as part of its plan, to extend the duration of the Luftig Stay — an existing non-debtor stay extension — for the life of its Third

27

Amended Plan.[30]  Notwithstanding the wealth of precedents extending the automatic stay to non-debtors pursuant to Bankruptcy Code §§ 105 & 362(a), it appears to be an issue of first impression as to whether a non-debtor stay extension should remain in place for the life of a plan.  Indeed, many courts that have written on non-debtor stay extensions, including the few that have done so post-*Purdue Pharma*, have reviewed such stay extensions as temporary injunctive relief to facilitate negotiations among the parties.  *See, e.g., Parlement Techs., Inc.*, 661 B.R. at 724–25 (debtor sought to extend the automatic stay to its former officers as co-defendants in certain state court litigations while the bankruptcy case proceeded); *see also Purdue Pharma L.P. v. Massachusetts*, 2024 Bankr. LEXIS 2916, at *6–11 (granting three-week non-debtor stay extension to allow the debtor and the interested parties to continue negotiations towards a global settlement).

With respect to debtors, Bankruptcy Code § 362(c)(2) provides that the automatic stay under Code § 362(a) "continues until the earliest of — (A) the time the case is closed; (B) the time the case is dismissed; or (C) if a case is under … chapter 11 … of this title, the time a discharge is granted or denied[.]"  11 U.S.C. § 362(c)(2).  When bankruptcy courts extend the automatic stay to non-debtor parties as preliminary injunctive relief, the durational limits of such stays are often not clear.

However, the Court also notes that the duration of certain non-debtor stay extensions, in the aggregate, can amount to a preliminary injunction with a comparable duration as the proposed Luftig Stay Extension.  *See, e.g., Purdue Pharma L.P. v. Massachusetts*, *Fortieth Amended Order*

---

[30]    As set forth *supra,* Parts (III)(A) & (III)(A)(2), the Luftig Stay Extension, as proposed by the Debtor, would extend the duration of the Luftig Stay — the automatic stay and the injunction enjoining FCP from enforcing the Judgment against Mr. Luftig — for the 5-year life of the Third Amended Plan.  *See* Third Am. Plan at 12–13, Docket No. 172.

*Dated December 2, 2024, Granting Motion For A Preliminary Injunction* at 3, Docket No. 610 at

Adversary Proceeding No. 19-08289 (order accompanying the court's ruling found at 2024 Bankr.

LEXIS 2916 noting that the initial non-debtor stay extension was granted on October 11, 2019,

more than 5 years prior to the court's ruling granting a three-week extension to the ongoing non-

debtor automatic stay).  The Court concludes that, under the facts and circumstances of this case

as described herein, the non-debtor stay extension should not be for a limited duration and may

extend for the life of the plan, consistent with Bankruptcy Code § 362(c)(2).  Accordingly, the

Court finds that the Luftig Stay Extension's duration does not render the relief facially

impermissible.

### 3. The Luftig Stay Extension is Necessary to The Debtor's Successful Reorganization

At the outset, the Court finds, as it did in the Luftig Stay Ruling, that the circumstances

here satisfy the requirement for invoking the limited exception to the automatic stay general rule

recognized by the Second Circuit in *Queenie, Ltd.*  Specifically, the record suggests, and FCP does

not dispute, that the enforcement of the Judgment against Mr. Luftig will have an immediate

adverse economic effect on the debtor's estate.  As the Court noted in the Luftig Stay Ruling,

"[m]ost of the [Debtor]'s business is generated through Mr. Luftig's efforts," and the Debtor's

reorganization depends on Mr. Luftig's ability to "continue his efforts towards current projects

and new opportunities for the company."  *In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *13.

The Debtor has also presented further evidence showing that FCP's Judgement enforcement efforts

against Mr. Luftig have impacted the Debtor's ability to generate revenue.  *See* July 2024 Luftig

Decl. ¶¶ 36, 37, Docket No. 157 (Mr. Luftig noting certain instances where potential investors

declined to invest in the Debtor's projects over concerns of FCP's lawsuit against Mr. Luftig).

Since FCP has not explained why the Court should deviate from its relevant reasoning in the Luftig

Stay Ruling, and in light of the additional evidence in the July 2024 Luftig Declaration, the Court finds that the Debtor's request for the Luftig Stay Extension here is warranted.

The Court now turns to the four-factor preliminary injunction analysis to examine whether the Debtor has sufficiently demonstrated that the Luftig Stay Extension should be approved. Regarding the first factor, "'a likelihood of success on the merits," the Court agrees with the *Purdue Pharma L.P. v. Massachusetts* court, and adopts the post-*Purdue Pharma* standards proposed by the bankruptcy court in *Parlement Techs.* Specifically, as relevant here, one consideration is whether "providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business[.]" *Parlement Techs.*, 661 B.R. at 724. The Court concludes that this factor is satisfied. As the record indicates, Mr. Luftig is responsible for the success of the Debtor's productions, and the Debtor is reliant on Mr. Luftig's assistance to generate revenue. *See* Mem. L. at 17–19, Docket No. 173. (detailing the success of the Debtor's various projects under Mr. Luftig's direction); *see also* Hr'g Tr. from January 17, 2024, 35:7–38:9, 44:23–45:8, Docket No. 194 (Mr. Luftig's testimony that he has artistic controls over the Debtor's production projects and such responsibility cannot be delegated to the other employees). If FCP is permitted to pursue its claim against Mr. Luftig, such litigation would distract Mr. Luftig from dedicating his time to the Debtor's business operations, and frustrate the Debtor's ongoing productions. *See* June 2023 Luftig Decl. ¶ 45, Docket No. 85 (Mr. Luftig detailing certain instances where FCP's prior enforcement efforts have caused disruptions and caused Mr. Luftig to divert his attention from the Debtor's business); *see also* Hr'g Tr. from January 17, 2024, 38:21–42:22 (Mr. Luftig testifying on his contributions in producing shows and finding new opportunities for the Debtor, and that he spent "much more" than 50% of his time working on the Debtor's projects last year). Considering Mr. Luftig's substantial

contribution to the Debtor's business, the Court finds that providing Mr. Luftig with relief from the potential FCP litigation is necessary for the Third Amended Plan's success.

For similar reasons, the Court also finds that the Debtor will face irreparable harm without the Luftig Stay Extension. If Mr. Luftig cannot focus on the Debtor's business operations, it will be difficult or impossible for the Debtor to carry out the Third Amended Plan and successfully reorganize. *See* Mem. L. at 17 ("The Debtor's ability to succeed in developing revenue generating projects still depends entirely on Mr. Luftig's ability to develop and produce shows and to pursue new opportunities."); *see also* Hr'g Tr. from January 17, 2024, 47:13–48–11 (Mr. Ryniker's testimony that the projections he prepared in support of the Third Amended Plan rely on the assumption that Mr. Luftig will be working for the Debtor as he "did historically"). Moreover, Mr. Luftig is indemnified by the Debtor for liabilities he incurs relating to his involvement in the Debtor's business, and "any judgment enforced against Mr. Luftig will ultimately become a claim against the estate[.]" *See In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *16 (citing *Durr Mechanical*, 604 B.R. 131 at 137; *A.H. Robins Co.*, 788 F.2d at 1008); *see also* Claim No. 2-1 Rider § 1(c). This indemnification relationship between the Debtor and Mr. Luftig would pose further challenges to the Debtor's reorganizational efforts if FCP is permitted to pursue its Judgment claim against Mr. Luftig. Thus, the Court finds that Plaintiff is likely to suffer irreparable harm in the event injunctive relief is not granted.

Further, the Court also finds that the balance of the hardships weighs in the Debtor's favor. Because Mr. Luftig is responsible for the Debtor's revenue-generating projects, any burdens placed upon Mr. Luftig will impair his ability to manage the company and reduce the likelihood of a successful reorganization. *See* Mem. L. at 19 ("Mr. Luftig always has been [] dedicated to ensuring the success of the Debtor … [but his] ability to continue those efforts will be thwarted if

31

he is distracted by judgment enforcement efforts by FCP, and his reputation in the industry as a fundraiser could be tarnished.")  Mr. Luftig's work on various productions, reputation in the industry and business contacts are the basis for the company's reorganization. *Id.* at 5–6.  As such, potential Judgment collection efforts from FCP against Mr. Luftig will likely undermine the Debtor's ability to reorganize.  In contrast, since the Luftig Stay Extension does not provide for permanent relief, the hardship posed by it poses to FCP is minimal.  Unlike the Luftig Release proposed by the Initial Plan, FCP's rights to collect the Judgment from Mr. Luftig will not be extinguished under the Luftig Stay Extension.  Once the Third Amended Plan is complete, FCP will be able to pursue its claim against Mr. Luftig.  The balance of the harms here clearly weighs in the Debtor's favor.

Lastly, granting the Luftig Stay Extension is not adverse to the public interest.  Indeed, as the Court noted in the Luftig Stay Ruling, "courts have found that removing obstacles to plan formation and promoting a successful bankruptcy reorganization benefit the public interest."  *In re Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *17 (citing *In re Johns-Manville Corp.*, 26 B.R. 420, 428 (Bankr. S.D.N.Y. 1983); *In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009)).  In examining the other factors above, the Court's analysis has already shown that FCP's Judgment enforcement efforts against Mr. Luftig would create a significant obstacle to confirmation of a plan and a successful reorganization.  The Court finds that granting the Luftig Stay Extension would not be adverse to the public interest.

Accordingly, the Court finds that the extraordinary circumstance of this case satisfies the four-factor test for preliminary injunctive relief, and that the Luftig Stay Extension should be approved.

**4.** **The Luftig Stay Extension Does Not Render The Third Amended Plan "Unfair and Inequitable"**

Having found that the Luftig Stay Extension satisfies the test for preliminary injunctive relief pursuant to Bankruptcy Code §§ 105 & 362(a), the Court will now address FCP's argument that the Luftig Stay Extension renders the Third Amended Plan "unfair and inequitable." FCP first argued that the Luftig Stay Extension is prohibited under the Supreme Court's ruling in *Purdue Pharma*. *See* Final Obj'n. at 4–5, Docket No. 190. According to FCP, the Supreme Court held in *Purdue Pharma* that "an injunction against [] recovering a debt against a debtor that accompanies a confirmed plan operates only for the benefit of the debtor against its creditors and does not affect the liability of any other entity." *Id.* (quoting *Purdue Pharma*, 603 U.S. at 215) (internal quotation marks omitted) (also citing *Intl. Petroleum*, 115 F.4th at 1216). Relatedly, FCP also argued that the Supreme Court in *Purdue Pharma* rejected "the ability of a bankruptcy court to extend to nondebtors the benefits of a Chapter 11 discharge usually reserved for debtors." *Id.* at 5 (quoting *Purdue Pharma*, 603 U.S. at 215). Accordingly, FCP asserts that the Luftig Stay Extension offends the concepts of fairness and equity because it "essentially amounts to a discharge over the life of the plan….". *Id.*

First, the Court disagrees with FCP's analysis of the Supreme Court's *Purdue Pharma* ruling. Indeed, the Supreme Court explicitly noted that it was ruling on the narrow question of whether a bankruptcy court may effectively extend to non-debtors the benefits of a Chapter 11 discharge:

> Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, *effectively seeks to discharge claims against a nondebtor* without the consent of affected claimants.

33

*Purdue Pharma*, 603 U.S. at 227 (emphasis added); *see also id.* at 215 (noting that the question before the Court was "whether a court in bankruptcy may effectively extend to nondebtors the benefits of a Chapter 11 discharge usually reserved for debtors") (emphasis in original omitted). Thus, FCP's argument that *Purdue Pharma* prohibits bankruptcy courts from, as part of a plan, temporarily enjoining creditors' collection efforts against non-debtors is without merit.

Second, regarding FCP's reliance on the Ninth Circuit's decision in *Intl. Petroleum*, the situation here is also distinguishable.  In *Intl. Petroleum*, the Ninth Circuit examined the issues of (i) whether the automatic stay, under Code § 1520, could be retroactively triggered, and (ii) whether such stay could be extended to the foreign debtor's sole owners for certain alter ego claims.  *See Intl. Petroleum*, 115 F.4th at 1206.  Only the second question is relevant here.  On that issue, the Ninth Circuit held that the automatic stay under Code § 1520 does not extend to the foreign debtor's sole owners with respect to "a creditor's garden-variety alter ego claim against [such] sole owners[.]"  *See id.*  In the portion of the opinion declining the non-debtor's request to recognize an exception to the general rule that the automatic stay only applies to the debtor, the Ninth Circuit noted that its decision was based on the laws of that Circuit.  *See id.* at 1217 ("We have declined to adopt the Fourth Circuit's unusual situation exception on several occasions … [T]he vitality of the Fourth Circuit's unusual situation exception has, in this Circuit, remained unclear.") (internal quotation marks and citations omitted); *see also id.* ("[T]his case is not in the correct procedural posture for us to decide whether to adopt *A.H. Robins* as the law in this Circuit.").  This is not the law within the Second Circuit.  As noted *supra*, Part (IV)(B)(1), the Second Circuit has adopted the Fourth Circuit's reasoning in *A.H. Robins*, and recognized that the automatic stay may be extended to non-debtors in certain circumstances.  *See also In re Hal Luftig*

34

*Co.*, 2023 Bankr. LEXIS 19, at *1. Hence, the Ninth Circuit's ruling in *Intl. Petroleum* does not affect the Court's analysis above.

Lastly, the Court also disagrees with FCP's assertion that the Luftig Stay Extension "amounts to a discharge" over the life of the Third Amended Plan. A discharge under Bankruptcy Code § 1141(d)(1)(A) — as incorporated by Code § 1192 for Subchapter V cases — "void[s] any past or future judgments on the discharged debt [and] operat[es] as an injunction ... prohibit[ing] creditors from attempting to collect or to recover the debt." *Purdue Pharma*, 603 U.S. at 215 (quoting *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004)); *see also* 11 U.S.C. § 1141(d)(1)(A). Here, the Luftig Stay Extension does not seek to extinguish FCP's claim against Mr. Luftig, but only to enjoin FCP from enforcing the Judgment against Mr. Luftig for 5 years — the Third Amended Plan's life. The Luftig Stay Extension does not leave FCP without recourse. Indeed, at all times, FCP's Judgment claim against Mr. Luftig will remain valid. Further, once the Debtor completes its payments under the Third Amended Plan and obtains a discharge, FCP will be free to pursue its claim against Mr. Luftig. Since the Luftig Stay Extension maximizes recovery for unsecured creditors — including FCP — and is necessary for the Debtor's successful reorganization, the Court rejects the argument that such relief "goes against all concepts of fairness and equity."

Therefore, the Court also finds that the Third Amended Plan's inclusion of the Luftig Stay Extension does not render the plan "unfair and inequitable."

## C.  FCP'S OTHER ARGUMENTS CONCERNING THE THIRD AMENDED PLAN'S FAIRNESS AND EQUITABILITY

FCP also argued that the Third Amended Plan is "unfair and inequitable" because (i) the plan does not provide appropriate remedies to the interested parties in scenarios where the Debtor

fails to make its plan payments, and (ii) FCP — the Debtor's largest creditor "by a substantial margin" — voted to reject the Third Amended Plan.  *See* Final Obj'n. at 5, Docket No. 190.

First, the Court disagrees with FCP's argument that the Third Amended Plan does not satisfy Code § 1191(c)(3)(B)(ii), or that the plan provides no appropriate remedies to protect claimholders in a hypothetical plan payment default by the Debtor.  The Court previously addressed this issue in the Initial Confirmation Opinion by noting that, "[g]iven that the Debtor's profitability has apparently been volatile in the past, the Court finds that the Back-Stop Commitment is necessary to satisfy 11 U.S.C. § 1191(c)(2)(B)."  *In re Hal Luftig Company, Inc.*, 655 B.R. at 526 (internal citation omitted).  Consistent with the Court's prior ruling, the Third Amended Plan here explicitly provides for the Back-Stop Commitment[31] "in the event the Debtor cannot make the payments requirement by the Third [Amended] Plan."  Third Am. Plan at 9, 16, Docket No. 172.  Further, as a condition precedent to the Third Amended Plan's effective date, the Debtor must confirm the availability of the Back-Stop Commitment.  *Id.* at 14.  FCP did not dispute the Court's finding in the Initial Confirmation Opinion that the Back-Stop Commitment is an appropriate remedy to protect the interested parties from a plan payment default, and does not do so here.  Therefore, the Court finds FCP's argument that the Third Amended Plan fails to satisfy Code § 1191(c)(3)(B) unconvincing.

Second, the Court also disagrees with FCP's contention that, as the Debtor's largest unsecured creditor, FCP's vote to reject the Third Amended Plan rendered the plan "unfair and inequitable," as such argument conflicts with the plain text of Bankruptcy Code § 1191(b).  As the Court already discussed *supra*, Part (IV)(A), Code § 1191(b) permits small business debtors to

---

[31]     As noted *supra*, Parts (III)(B), the Back-Stop Commitment requires Mr. Luftig "to contribute up to an aggregate of $100,000.00" to fund the Third Amended Plan if the Debtor defaults on its plan payments.  *See* Third Am. Plan at 9, 16, Docket No. 172.

confirm a plan over the objections of its unsecured creditors if certain conditions are met. *See* 11 U.S.C. § 1191(b). Notably, nothing in Code § 1191(b) and the applicable Code § 1129(a) requirements suggests that an unsecured creditor's vote to reject a plan would automatically render the plan "unfair and inequitable."

Moreover, to the extent that FCP is urging the Court to impose additional requirements to the "fair and equitable" standard pursuant to Code § 1191(c), and to thus consider FCP's status as the Debtor's largest unsecured creditor, the Court also declines to do so here. The Court agrees that Code § 1191(c)'s permissive language provides bankruptcy courts with discretion to consider additional factors related to the "fair and equitable" requirements. However, FCP did not present any compelling reasons to warrant a requirement that the Third Amended Plan must be supported by the Debtor's largest unsecured creditor. In fact, the Court finds it inappropriate to impose any requirement that would effectively allow an objecting unsecured creditor to derail an otherwise confirmable plan — as FCP seeks to do here — solely because that creditor holds the largest unsecured claim against the estate.

Thus, the Court also finds FCP's remaining "unfair and inequitable" arguments unconvincing. Having rejected each of FCP's arguments that the Third Amended Plan is unconfirmable because it does not satisfy Code § 1191(b)'s "fair and equitable" requirement, the Court also finds that FCP's Final Objection should be overruled.

37

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Debtor has satisfied its burden with respect to the statutory requirements set forth in 11 U.S.C. § 1191 to confirm the Third Amended Plan.   Accordingly, FCP's Final Objection is OVERRULED, and the Third Amended Plan is CONFIRMED.   The Debtor shall submit a proposed order in accordance with Local Bankruptcy Rule 9074-1.

**IT IS SO ORDERED.**

Dated: February 24, 2025
     New York, New York

/s/ John P. Mastando III
THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

38